

1 | HOWARTH & SMITH
DON HOWARTH, State Bar No. 53783
2 |   dhowarth@howarth-smith.com
SUZELLE M. SMITH, State Bar No. 113992
3 |   ssmith@howarth-smith.com
LEE CRAWFORD-BOYD, State Bar No. 189946
4 |   lboyd@howarth-smith.com
523 West Sixth Street, Suite 728
5 | Los Angeles, California 90014
Telephone: (213) 955-9400
6 | Facsimile: (213) 622-0791

7 | Attorneys for Plaintiff
LAWRENCE B. LOCKWOOD
8 |

FILED

2009 JUL 15 PM 4: 03

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

9 | UNITED STATES DISTRICT COURT

10 | FOR THE CENTRAL DISTRICT OF CALIFORNIA

11 |

12 | LAWRENCE B. LOCKWOOD, PANIP, LLC,

13 | Plaintiffs,

14 | v.

15 |

16 | SHEPPARD, MULLIN, RICHTER &HAMPTON, LLP, JONATHAN

17 | HANGARTNER, STEVE P. HASSID,

18 | Defendants.

CASE NO. **CV09-5157** **JFW**
**(AGRx)**

**COMPLAINT FOR:**

1) **MALICIOUS PROSECUTION IN CONNECTION WITH UNITED STATES PATENTS**
2) **INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
3) **FRAUD**
4) **VIOLATION OF 18 U.S.C. §§ 1962, 1964**

**DEMAND FOR JURY TRIAL**

21 | / / /
22 | / / /
23 | / / /
24 | / / /
25 | / / /
26 | / / /
27 | / / /
28 | / / /

COMPLAINT

1 | **Introduction**

2 |     1.    Plaintiff Lawrence B. Lockwood is part of a vanishing tradition

3 | of small, individual, pioneer inventors in the field of electronic commerce. Working

4 | on his own, since 1979, Mr. Lockwood has been granted a dozen United States and

5 | Canadian patents in the fields of multimedia computer networking, database search

6 | and electronic commerce technologies. Between 1985 and 1989, long before the

7 | Internet explosion, Mr. Lockwood was a featured speaker at eight national,

8 | multimedia and banking conferences, and had thirty multimedia technology and

9 | electronic commerce articles published. Several of his patents teach cutting-edge

10 | technology, as demonstrated by the fact that the United States Patent and Trademark

11 | Office ("USPTO") has cited the Lockwood patent family in 750 subsequently issued

12 | U.S. patents. In addition, his patents are highly cited by foreign patent offices, such

13 | as the European Patent Office. Mr. Lockwood's patents are so integral to modern

14 | electronic commerce that they are tempting targets for infringement by larger, better-

15 | funded commercial entities. For example, in 1991, Mr. Lockwood enforced several

16 | of his patents against American Airlines, Inc.

17 |     2.    After they issued in 1996 and 2001, two of Mr. Lockwood's patents,

18 | Patent No. 5,576,951 ("Patent '951") and No. 6,289,319 ("Patent '319") (the

19 | "Patents"), were being infringed and their technologies stolen by numerous

20 | companies using Mr. Lockwood's patented computerized sales systems technology

21 | to do business on the Internet. Of course, Mr. Lockwood had a right to enforce his

22 | Patents by offering licenses to the infringers or filing infringement suits in U.S.

23 | courts. In 2002, to further his property rights, Mr. Lockwood formed Plaintiff PanIP,

24 | LLC ("PanIP"), and exclusively licensed his patent portfolio to PanIP. PanIP

25 | successfully licensed the Patents as a result of an expensive and well-researched

26 | enforcement program that included PanIP filing an infringement action in the federal

27 | district court for the Southern District of California (the "Enforcement Program").

28 | By mid-May 2003, Plaintiff Lockwood and PanIP (collectively, "Plaintiffs") had

1

1  entered into licensing relationships with over twenty-five companies, headquartered

2  in fifteen different states, and were in negotiations with many other companies.

3      3.    Defendant Jonathan Hangartner represented several of the parties sued

4  in the federal infringement action, and he joined Defendant Sheppard, Mullin,

5  Richter & Hampton ("Sheppard Mullin"), where Defendant Steve P. Hassid was also

6  a patent attorney (collectively, "Defendants").  Sheppard Mullin, Hangartner and

7  Hassid, together, as a part of a strategy to deny Plaintiffs the use of the Patents,

8  intentionally abused the patent process established by the USPTO and by Congress

9  by filing fraudulent and malicious Requests for Reexamination of the Patents (the

10  "Fraudulent Requests"), knowing that there was no probable cause for challenging

11  the validity of the Patents.  Defendants knowingly made false and deceptive

12  representations in their Fraudulent Requests regarding whether a certain confidential

13  proprietary document qualified as prior art, and misrepresented what was shown in

14  other prior art references, for the purpose of convincing the USPTO to initiate

15  reexamination of the Patents.  Lengthy and expensive reexamination of a patent, after

16  an individual inventor has gone through the costly and arduous process of obtaining

17  the patent in the first place, can be the death knell for the inventor, as Defendants

18  knew well.

19      4.    In order to gain leverage in the pending infringement litigation,

20  Defendants took the unlawful step of filing the Fraudulent Requests based on

21  misleading statements in complete disregard of the strict duty of candor required for

22  attorneys licensed to practice before the USPTO.  To continue profiting from their

23  representation, using a publicity campaign to gain more clients, and to put Mr.

24  Lockwood and PanIP out of business during the period in which the Patents would

25  be in reexamination proceedings in which the rights under the Patents would be

26  severely limited, Defendants conspired to wage a campaign against Plaintiffs and to

27  solicit more funding and clients through an enterprise established solely for this

28  purpose, PanIP Group Defense Fund, Inc. ("PGDF").  In addition, in order to solicit

2

1    funding to further its illicit purposes, which included putting Plaintiffs out of

2    business through unlawful means, PGDF established a website, *YouMayBeNext.com*,

3    to falsely attack the validity of Lockwood's and PanIP's licensing business, and of

4    the Patents themselves, and to defraud the USPTO.  The website stated that the

5    purpose of PGDF was to "Stop PanIP."  Defendant Hangartner stated in the press as

6    early as 2002 that Defendants wanted to "put this guy [Lockwood] out of business,"

7    and the Defendants and PGDF used the Fraudulent Requests as a means for doing so.

8    Defendants Sheppard Mullin and Hangartner were prominently featured on the

9    PGDF website.

10    5.    Defendants' strategy worked, and the filing of the Fraudulent Requests,

11    coupled with the PGDF campaign, did in fact render Plaintiffs' Patents valueless for

12    the more than four years that the reexamination process lasted, virtually bankrupting

13    Mr. Lockwood and destroying the business of PanIP.  With no income or resources

14    from his life's work, Mr. Lockwood was financially coerced into dropping the

15    Enforcement Program.

16    6.    By the end of the reexamination process in 2007 and 2008, Plaintiffs

17    were vindicated and the Patents were confirmed in all respects by the USPTO,

18    further exposing the unlawful nature of the Fraudulent Requests.  However, the

19    Defendants' conduct had wreaked havoc on Plaintiffs' limited timeframe in which to

20    use and benefit from the lawful and valid Patents, and Mr. Lockwood suffered

21    tremendous damages during those four years of sham reexamination proceedings by

22    having to expend significant time and money defending the Patents rather than being

23    able to benefit from them.  Since the termination of the USPTO's reexamination of

24    Plaintiffs' Patents resolved entirely in Plaintiffs' favor, Plaintiff Lockwood has

25    restarted his enforcement program and has reached very valuable licensing

26    agreements on his patented technology.  Defendants' actions have caused Plaintiffs

27    to lose millions of dollars in revenues over the four years it took to undo the fraud

28    committed on the Patent Office.

3

7.   This suit is brought against Defendants for their intentionally wrongful conduct, in connection with United States patents, which wrongful conduct is prohibited under the federal rules and regulations of the USPTO, under California state law prohibiting malicious prosecution, intentional interference with prospective economic advantage, and fraudulent misrepresentation, as well as by 18 U.S.C. § 1962 (c), and (d), the Racketeer and Influenced Corrupt Organizations Act ("RICO").

## PARTIES

8.   Plaintiff Lawrence B. Lockwood is a California inventor who, during the past three decades, has obtained a dozen patents in the fields of multimedia search systems, interactive video computing terminals, as well as electronic commerce and computerized financial services.  Plaintiff Lockwood actively continues to develop and file new applications in the same technology fields.  He is the named inventor in, and at all relevant times has been, the owner of U.S. Patent Nos. 5,576,951 and 6,289,319 ("the Patents").

9.   Plaintiff PanIP is a California Limited Liability Company doing business in California.  Plaintiff Lockwood's patent portfolio was exclusively licensed to PanIP in 2002.  Prior to Defendants' wrongful conduct, Mr. Lockwood was the managing member of PanIP and it had several employees.  PanIP also had conducted business with law firms, accounting firms and other businesses that it employed.  Prior to Defendants' wrongful conduct, PanIP had an Internet website and registered its trademark "PanIP" with the USPTO.

10.   Defendant Sheppard Mullin is on information and belief a law firm which was formed as a California Limited Liability Partnership, having its principal place of business in Los Angeles County.

11.   Defendant Jonathan Hangartner is on information and belief an attorney licensed to practice law in the State of California, and during times relevant to this complaint, was an associate, partner or otherwise employed by Sheppard Mullin; and / / /

4

1  was acting within the course and scope of that affiliation with Sheppard Mullin with

2  respect to the matters hereinafter alleged.

3    12.    Defendant Steve P. Hassid is on information and belief an attorney

4  licensed to practice law in the State of California, and during times relevant to the

5  complaint, was an associate attorney employed by Sheppard Mullin and registered to

6  practice before the USPTO; and was acting within the course and scope of that

7  affiliation with Sheppard Mullin with respect to the matters hereinafter alleged.

8    13.    Defendants agreed among themselves to use a USPTO procedure

9  entitled "Request for Ex Parte Reexamination" to defraud the USPTO and to nullify

10  Plaintiffs' property interests in the Patents for long enough that Plaintiffs would not

11  be able to move forward on the Patents and potentially go bankrupt. As practitioners

12  registered to practice before the USPTO, Defendants knew and understood that the

13  USPTO relied on the required strict duty of candor for all practitioners before the

14  USPTO in employing the reexamination process.

15    14.    PanIP Group Defense Fund, Inc. ("PGDF") was an Indiana corporate

16  entity and/or association-in-fact masterminded by Defendant Hangartner on October

17  29, 2002, and commissioned, operated and managed by Defendant Sheppard Mullin,

18  from November 29, 2002 to December 5, 2006, doing business as an unlawful

19  "enterprise" as defined under 18 U.S.C. § 1962(c), designed solely to defraud the

20  USPTO and to deprive Plaintiffs of their rightful ownership of the Patents by

21  violating U.S. statutes, including but not limited to 18 U.S.C. §§ 1343, 1344, and to

22  redirect benefits to itself and to Defendants which rightfully belonged to Plaintiffs.

23    15.    At all times mentioned herein, each Defendant was the agent of each of

24  the other Defendants, and was acting within the course and scope of said agency.

25                    **JURISDICTION AND VENUE**

26    16.    This court has subject matter jurisdiction over this matter because the

27  state claims for malicious prosecution, fraudulent misrepresentation, and interference

28  with prospective economic advantage, arise under federal patent law and are subject

5

1   to the exclusive jurisdiction of the federal courts pursuant to 28 U.S.C. § 1338.  The

2   California Court of Appeal has held, regarding this dispute, that Plaintiff

3   Lockwood's complaint for malicious prosecution, interference with prospective

4   economic advantage and fraud "requires resolution of substantial issues of patent

5   law, and [the complaint] is subject to the exclusive jurisdiction of the federal courts."

6   *Lockwood v. Sheppard, Mullin, Richter & Hampton*, 173 Cal. App. 4th 675, 686-687

7   (2009).  Jurisdiction is also proper under 28 U.S.C. § 1331 for claims arising under

8   18 U.S.C. §§ 1962  (c), (d), and 1964 (c).

9        17.    Venue is proper in the Central District of California because Defendants

10   Sheppard Mullin and Hassid reside in Los Angeles, California, all Defendants reside

11   in California, and a substantial part of the events or omissions giving rise to

12   Plaintiffs' claims occurred in this district.

13        18.    This Court has both specific and general personal jurisdiction over each

14   of the named Defendants because they are domiciled within the State of California

15   and all claims arise from actions occurring within the State of California.

16                **Facts Common to all Counts**

17   **Background of the Patents**

18        19.    In 1980, Lawrence B. Lockwood filed his first patent application, Self-

19   Service Terminal, which issued as U.S. Patent No. 4,359,631 in 1982.  In 1984, Mr.

20   Lockwood filed his patent application for Automatic Information, Goods and

21   Services Dispensing System that issued as U.S. Patent No. 4,567,359 in 1986.  That

22   patent was the grandparent patent of the two patents for which Defendants requested

23   ex parte reexamination in May of 2003.

24        20.    Plaintiff Lockwood's Patent No. 5,576,951 ("Patent '951"), as originally

25   issued by the USPTO, teaches a computer search system for retrieving information

26   using textual and graphical entry paths.  The patent also teaches a computerized

27   system for selecting and ordering a variety of information, goods and services.  The

28   scope of the invention is defined by its claims.

6

1      21.    Plaintiff's Patent No. 6,289,319 ("Patent '319") teaches an automatic

2   data processing system for processing business and financial transactions between

3   entities from remote sites.  The scope of the invention is defined by its claims.

4      22.    Plaintiff applied for Patent '951 and Patent '319 in 1994, as

5   continuations-in-part of patent application Serial No. 613,525, filed May 24, 1984;

6   the '951 Patent issued in 1996 and the '319 Patent issued in 2001.

7      23.    In 1999, Mr. Lockwood employed Pricewaterhouse Coopers ("PWC")

8   to conduct a patent licensing analysis of the computer industry to determine the most

9   effective licensing program for the patent portfolio and a valuation thereof.

10  Concurrent with this study, Mr. Lockwood employed the law firm of Luce, Forward,

11  Hamilton and Scripps' ("LFHS") intellectual property licensing group to formulate

12  an enforcement strategy.  When these studies concluded in 2001, Mr. Lockwood was

13  ready to implement PWC and LFHS's professional licensing strategies.

14     24.    In 2002, Mr. Lockwood formed PanIP, and the Lockwood patent

15  portfolio was exclusively licensed to PanIP.  Mr. Lockwood was the managing

16  member of PanIP.  PanIP was registered with the California Secretary of State and

17  had several employees in California.  PanIP conducted business with law firms,

18  accounting firms and other businesses that it employed.   PanIP had an Internet

19  website and registered its trademark, "PanIP," with the USPTO.

20     25.    Prior to May 5, 2003, PanIP was successful in reaching over twenty-five

21  agreements to license its patented technology, with companies that conducted

22  electronic commerce and were based in fifteen different states.

23  **The Enforcement Program**

24     26.    The Patents were infringed by many computerized Business To

25  Business ("B2B") and Business To Consumer ("B2C") systems in the fields of

26  multimedia computer networking, database search and electronic commerce

27  technologies.

28  / / /

7

1    27.    In the Spring of 2002, after the assistance of accounting and legal

2  professionals, and at a substantial expense, Plaintiffs implemented a patent

3  enforcement program through PanIP, whereby companies infringing one, or the

4  other, or both of the Patents were offered a license for a reasonable fee while other

5  infringing companies were named in a complaint and litigation commenced (the

6  "Enforcement Program"). The Enforcement Program was initially successful and by

7  mid-May 2003, PanIP had entered into licensing relationships with over twenty-five

8  companies, headquartered in fifteen different states, and was in negotiations with

9  several other companies.

10    28.    In March 2002, pursuant to its Enforcement Program, Plaintiff PanIP

11  filed a complaint in federal court for patent infringement. Defendant Hangartner

12  represented four defendants in the action. The four defendants in the action

13  eventually obtained licenses from PanIP in October 2002.

14    29.    In September 2002, pursuant to the Enforcement Program, Plaintiff

15  PanIP filed additional patent infringement complaints. Defendants Sheppard Mullin

16  and Hangartner represented sixteen of the defendant companies.

17  **Establishment of the PGDF Enterprise**

18    30.    In April of 2002, Defendant Hangartner was an attorney at the law firm

19  of Liu & Liu in San Diego, California. In March of 2002, Plaintiff PanIP filed

20  patent infringement complaints against ten e-commerce companies. Hangartner

21  represented four of the defendants: Snow Country Ski Shop, Inc., Peekay

22  Corporation, Dickson Supply Co., and Backcountry Experience, Inc. Defendant

23  Hangartner organized the defendants into an enterprise with a website entitled "Panip

24  Defendants", at URL *www.PanipCase.Homeip.net*, and were responsible false and

25  misleading articles in newspapers and magazines about the scope and validity of the

26  Patents. Defendant Hangartner's four clients licensed the PanIP patent portfolio on

27  October 28, 2002. The website was in operation between May 25, 2002 and

28  / / /

8

1    September 23, 2002. Defendant Hangartner's picture and his contact information at

2    Liu & Liu were prominently featured under the "Defendants" link.

3        31.    PanIP filed patent infringement complaints against several e-commerce

4    companies on September 11, 2002. Hangartner contacted several of these defendants

5    and organized them into the PGDF enterprise following the same pattern of the

6    earlier "Panip Defendants" website, by creating a replica website with the URL

7    *www.YouMayBeNext.com*.

8        32.    In October 2002, Hangartner left the Liu & Liu law firm and joined

9    Defendant Sheppard Mullin with an agreement or understanding that Defendant

10    Sheppard Mullin would commission and support the scheme to defraud the USPTO

11    through PGDF's instigation of malicious and fraudulent reexamination proceedings.

12    Between November 29, 2002 and December 5, 2006, Defendant Hangartner's

13    picture and contact information at Sheppard Mullin was prominently featured on the

14    PGDF website. Defendant Hangartner was promoted to partner at Sheppard Mullin

15    by February 8, 2005.

16        33.    Defendant Hangartner and Sheppard Mullin commissioned PGDF to do

17    whatever it took to overcome Plaintiffs' valid patent rights and solicit more fee-

18    paying clients for themselves. These efforts successfully attracted American Science

19    and Surplus, Arcade Electronics, Inc., Aseptico, Inc., Burrage Music Co., Inc.,

20    Cherry Republic, Inc., CR Magnetics, Inc., DeBrand Fine Chocolates, Delasco

21    Dermatologic Lab & Supply, Denver Fabrics, Eagles Wings, Inc., Katco Industries,

22    Kreg Tool Co., Little Pie Company, Rock Valley Tractor Parts, Soldan's Feeds and

23    Pet Supplies, and Three Dog Bakery. Part of the PGDF strategy employed an

24    Internet website entitled *YouMayBeNext.com*. The PGDF website and their

25    statements in the press explicitly stated that the PGDF purpose was to put Plaintiffs

26    out of business and to stop the licensing program. Defendant Hangartner was

27    prominently featured on the website with a color picture and his contact information

28    at the law firm of Sheppard Mullin.

9

34.     Defendants used the PGDF enterprise and website to support their scheme to defraud and to harm Plaintiffs' property interests in the Patents by deceiving and defrauding the USPTO through the instigation of sham reexamination proceedings.  The scheme was funded through money solicited on the *YouMayBeNext.com* website.  The Defendants exhorted visitors to their PGDF website to "make payments to them with PayPal – It's fast, free and secure!" and stated that "checks may be sent to PanIP Group Defense Fund, Inc, 101 Auburn Park Drive, Fort Wayne, IN 46825 – Please make check payable to:  PanIP Group Defense Fund, Inc."

35.     With knowledge that the statements were false, the website as well as press articles instigated by Defendants and PGDF stated that Plaintiff was "running a scam," "going to sting hundreds of other businesses," committing "blackmail," and committing "extortion."  Defendants made specific published statements that their goal was to "Stop PanIP," and "We want to put this guy [Lockwood and PanIP] out of business," and later published that they "…have successfully stopped PanIP's strategy."  Defendant Hangartner and the PGDF made the following false statements about Plaintiffs' Patents and the validity enforcement of the Patents, among others, on their PGDF website and in the press in order to generate more business for themselves and to further their fraudulent scheme:

    a.     *San Diego Business Journal* – "Smaller Firms Become Targets in Patent Litigation" – December 2, 2002 – "Any Web site with text, graphics and the ability to collect financial information from consumers qualifies as an infringer, Hangartner said."

    b.     *The Green Sheet Online* – "Nightmare on E-commerce Street" – June 2, 2002 – "We believe this is a frivolous case… There are no merits to this case.   We believe the patent does not cover any form of e-commerce… I believe all companies who do business on the Internet are vulnerable to this type of frivolous litigation.   Anybody

10

1    with a Web site is vulnerable to being sued by PanIP, but not what is

2    in this particular complaint... If they prevail, they very well could

3    go after everyone in the e-commerce chain... This guy [Lockwood]

4    would be entitled to set up licensing agreements with every e-

5    commerce provider in the world who offers their business in the

6    United States," said Hangartner.

7    c.    *YouMayBeNext.com* – "They claim that if you use graphical and

8    textual information on a video screen for purposes of making a sale,

9    then you are infringing on their patent. US Patent No 5,576,951.

10    And if you accept information to conduct automatic financial

11    transactions via a telephone line & video screen, you're infringing on

12    their patent. US Patent No. 6,289,319."

13    d.    *Internet Retailer.com* – "E-Retailing's Latest Hazard: Patent

14    Lawsuits" – November 2002 – "Hangartner says the claim covers any

15    web site that contains texts and graphics and that is capable of

16    obtaining financial information, whether in an automated format or

17    not."

18    36.    The PGDF website also stated that, "We've been greatly encouraged by

19    all who are sending in contributions. Obviously it increases our resources to have

20    others contributing to our fight, but is also gives us a mental boost to know that

21    people appreciate the stand we are taking. We sincerely thank you for supporting our

22    efforts to stop PanIP from suing other e-commerce site owners."

23    37.    The fraudulent Internet scheme was used to finance and support PGDF's

24    enterprise which intended to defraud the USPTO regarding the valid Patents in order

25    to harm Plaintiffs' property interests in the Patents and to economically ruin Plaintiff

26    Lockwood and PanIP's business reputation.

27    / / /

28    / / /

11

**Scheme to Defraud through Fraudulent Requests for Reexamination**

38.    Defendants agreed among themselves to use a USPTO procedure entitled "Request for Ex Parte Reexamination" to defraud the USPTO and to nullify Plaintiffs' property interests in the Patents to prevent him from being able to benefit from his patents and potentially to drive him into bankruptcy. As practitioners registered to practice before the USPTO, Defendants knew and understood that the USPTO relied on the required strict duty of candor for all practitioners before the USPTO in employing the reexamination process.

39.    In furtherance of the agreement to enter into a scheme to defraud the USPTO, Defendant Hassid signed the Fraudulent Requests and Defendants mailed the Fraudulent Requests by U.S. Mail on May 5, 2003 in violation of 18 U.S.C. § 1341.

40.    Defendant Hangartner stated in the press that he had hired Nuvocom, a leading prior art research firm that specialized in electronic commerce industry history, to locate examples of early electronic sales systems in order to demonstrate that the Lockwood Patents had been improvidently granted by the USPTO. Nuvocom, however, was unable to find any prior art patents to invalidate the Patents. Nevertheless, without disclosing to the Patent Office the inability of Nuvocom or themselves to locate any prior art which would have formed a legitimate basis for a patent reexamination, the Defendants, knowing there was no probable cause to file a reexamination request proceeded anyway. Part of the integrity of the USPTO process is the requirement that attorneys practicing before the Office only make statements based on a very stringent duty of candor. This strict duty of candor is set forth in 37 C.F.R. § 1.555 and 37 C.F.R. §10.23, among other places. In short, when an attorney makes a statement or files a paper with the USPTO, the Office relies on the fact that such statement must be true and can be relied on as true. *See Lipman v.*

/ / /

/ / /

12

1 │ *Dickinson*, 174 F.3d 1363, 1371 (Fed. Cir. 1999), citing *Kingsland v. Dorsey*, 338

2 │ U.S. 318, 319 (1949).

3 │     41.    Fully aware of this requirement under patent bar standards, Defendants

4 │ maliciously filed the Fraudulent Requests knowing there was no basis for such

5 │ reexaminations. Defendants knew they had no probable cause to challenge the

6 │ validity of the Patents, based on their own experts' failure to locate any relevant prior

7 │ art. Defendants filed so-called supporting material with the USPTO that consisted of

8 │ newspaper or magazine articles which did not invalidate the Patents under any

9 │ objective standard. Defendants submitted this material in order to bulk up their

10 │ filing, to make it appear as something it was not, and submitted it along with false

11 │ and misleading statements and with complex claim charts for the sole purpose of

12 │ deceiving the USPTO and harming Plaintiffs. Defendants knew the presumption is

13 │ that it is the duty of a patent attorney to submit only legitimate and relevant material,

14 │ and to avoid obfuscation and misdirection. One reason this duty is so crucial is that

15 │ the reexamination process can be very time-consuming for both the USPTO and the

16 │ inventor (here, four years) and during that time valid property rights can be rendered

17 │ worthless. Without a strict duty of candor, not only would the USPTO be crippled

18 │ but also inventors would be vulnerable to reexamination proceedings brought for the

19 │ purpose of harassment, and to deny them their rights.

20 │     42.    Nevertheless, on May 5, 2003, Defendants mailed by U.S. Postal

21 │ Service to the USPTO two reexamination requests signed by Defendant Hassid as an

22 │ attorney at Sheppard Mullin, and on behalf of PGDF, which were based on

23 │ fraudulent and misleading representations about claimed prior art references pursuant

24 │ to 35 U.S.C. §§301-303; 37 C.F.R. §1.501. Defendants mailed their Fraudulent

25 │ Requests by two different United States Postal Service Express Mail orders, numbers

26 │ 727,855,784 and 727,855,798.

27 │ ///

28 │ ///

           COMPLAINT

43.    Defendants knew that under the USPTO rules, Plaintiffs could not challenge Defendants' Fraudulent Requests or take any official action with the USPTO until after the USPTO made its determination whether to grant or deny the Fraudulent Requests.  Defendants knew also that once a reexamination request was granted by the USPTO, it would take years to complete the process, and that during this time, the Patents would be under a cloud of unenforceability with virtually no way for Plaintiffs to license or otherwise lawfully benefit; and that the value of such patents is severely limited due to the pendency of reexamination proceedings. Defendants knew that the USPTO presumes that requests to institute reexamination proceedings of the Patents, even if in fact based on deceptive means, are done honestly and in good faith, and that such a reexamination would have the practical effect of placing the Enforcement Program on hold for three to four years or even longer, and might have caused it to end altogether, thereby damaging the Patents and Plaintiffs.

44.    In the Fraudulent Requests before the USPTO, Defendants Hassid and Hangartner, attorneys working for Sheppard Mullin, acting through PGDF (the named requestor)  in utter disregard and violation of their strict duty of candor and duty to investigate factual and legal allegations submitted before the USPTO pursuant to federal law and professional codes of ethics, made false and misleading statements characterizing references as alleged "prior art" that Defendants asserted raised a substantial new question as to patentability of the Patents.  Defendants knew that in fact their own experts had informed them that there was no legitimate prior art.

45.    Defendants knew the USPTO would rely on the duty of candor requiring them to provide only truthful statements or conclusions about prior art references submitted in reexamination requests.  Defendants knew the USPTO routinely grants reexamination for approximately 95% of the requests submitted if such requests appear to meet the form and substance of multiple prior art references, detailed claim

14

1   charts, extensive analysis of the claims and of how the prior art reads on such claims.

2   In order to induce the USPTO to decide that "a substantial new question of

3   patentability" was present, and knowing the level of acceptability the USPTO

4   required, Defendants mailed the Fraudulent Requests consisting of about three

5   hundred and fifty (350) pages designed to give the impression, though false, of the

6   existence of prior art.

7       46.   Defendants knew that the USPTO has a PTOL-2077 form that lists eight

8   items of which a request must meet.  For example, the fourth item requires, "A

9   statement pointing out each substantial new question of patentability based on the

10  cited patents & printed publications, and a detailed explanation of the pertinence and

11  manner of applying the patents and printed publications to every claim for which

12  reexamination is requested."  Defendants knew and agreed among themselves to

13  defraud the USPTO by falsifying the required statements necessary for the granting

14  of the Fraudulent Requests, without which their Fraudulent Requests would have

15  been rejected.

16      47.   Defendants knew that in order to succeed in their scheme to injure

17  Plaintiffs' property rights and to deceive the USPTO into granting the Fraudulent

18  Requests, they had to avoid a rejection of "A Notice of Failure to Comply", PTOL-

19  2077, which requires: "The requester should quote each pertinent teaching in the

20  prior art reference, referencing each quote by page, column and line number, and any

21  relevant figure numbers."  Defendants knew that the purported prior art references

22  they had located did not qualify nor meet these requirements, so they fabricated

23  numerous statements about pages, columns, and line numbers with complex claim

24  charts allegedly indentifying prior art references.  Defendants thereby deceptively

25  gave the appearance of invalidating each claim of the Patents, in order to deceive the

26  USPTO into granting reexamination, for the purpose of depriving Plaintiffs of

27  property rights to use the Patents, to which Plaintiffs were entitled for seventeen

28  years.  See 35 U.S.C. § 154(c).

COMPLAINT

48.    For example, in support of their Fraudulent Requests to the USPTO, Defendants falsely represented that a CompuServe document entitled Electronic Mall described prior art.  However, the Electronic Mall manual printed in 1986, could not have qualified it as prior art as to the '319 Patent given the patent's application date.  To circumvent that problem, Defendants made false and misleading statements in the request for the '319 Patent that the Electronic Mall system described in the 1986 manual was "available…starting in the early 1980s," and that the 1986 manual was a "particular version" implying there was an earlier version published in the "early 1980s", which if true might have arguably qualified as prior art under the laws governing patent reexaminations.  In fact, these statements were not true, and Defendants knew they were false and that they did not have a factual basis to make such representations of material fact.

49.    In addition, Defendants made false statements of material fact with respect to what was supposedly shown in prior art references relied upon by Defendants in the Fraudulent Requests, claiming that other cited prior art references disclosed elements that were not actually present in the prior art references.  All of these misrepresentations of fact were made by Defendants with the specific purpose and intent that the USPTO would rely on them to initiate the reexamination of the Patents.  Defendants knew that, but for their making such false and misleading statements, the USPTO was not likely to find a substantial new question of patentability presented and would not grant the requests for reexamination.

**Specific Examples of Misrepresentations of "Prior Art" Advanced by Defendants in the Request for Reexamination of the '319 Patent** include the following:

50.    Electronic Mall Reference.  Material information bearing on the publication date and public accessibility of the reference was withheld from the USPTO in the request.  The only date given in the request for this document was the year 1986.  Because any document must have a publication or effective date at least

16

1  prior to 24 January 1985 in order to qualify as prior art to the '319 patent under 35

2  U.S.C. §102 (b),  the submitted document  is not "prior art" under 35 U.S.C.

3  § 102(b).  Nor is the Electronic Mall a "printed publication" as required by 35 U.S.C.

4  §102 (b).  The material fact that the Electronic Mall reference is referred to, within

5  its own pages, as a "confidential and proprietary manual" was not brought to the

6  attention of the Examiner in the request.  Instead, Defendants misrepresented that the

7  "*system*" i.e., not the alleged prior art reference itself, was "available to the public."

8  The request used Electronic Mall in a manner designed to obfuscate and deceive the

9  USPTO, asserting that the claims of the '319 patent were anticipated and/or obvious

10  in view of the reference, which was not prior art.

11       51.    IVIS Reference.  The request represented that "these new prior art

12  references provide teachings not provided during prosecution of the Lockwood '319

13  Patent."  This statement was false.  In fact, the IVIS reference had been of record in

14  the file of Lockwood's "grandparent" patent application Serial No. 613,525 ("S/N

15  '525"), now Patent No. 4,567,359 ("'359 Patent") from which the '319 Patent issued

16  as a continuation-in-part.  In an amendment during the application prosecution of the

17  '319 Patent of September 19, 1995, the '359  Patent which included IVIS as part of

18  the preferred embodiment, was provided by Plaintiff Lockwood's attorney who

19  mailed to the USPTO examiner copies of both the '359 Patent and S/N '525.

20  Plaintiff Lockwood himself had provided the IVIS reference to the USPTO during

21  the prosecution of the '359 "grandparent" Patent and IVIS was repeatedly

22  incorporated in the preferred embodiment of that patent.  This information was a

23  matter of public record and known to Defendants, who misrepresented the reference

24  as "new," as evidenced by the USPTO date-stamp on several pages of the IVIS

25  reference, which matches the date it was received from Lockwood by the USPTO

26  during prosecution, as well as by "bates stamp" numbers on each page of the

27  document from the *Lockwood v. American Airlines, Inc.,* litigation in which the

28  "grandparent" patent was involved.

17

52.   Comp-U-Store Reference.  This reference was cited in the request essentially in its entirety and with lack of specificity, as disclosing each and every limitation of claims of the '319 Patent, which in fact it did not disclose.  In the prosecution of this request, the Examiner had to rely on the Defendants' duty of candor in practicing before the USPTO, and accepted what the request asserted as true, but which was not true.  Rather, claim 1 of the '319 Patent indicates to any practitioner before the USPTO how those limitations in claim 1 did not appear in Comp-U-Store, and that Defendants statements in the Fraudulent Requests were false.  A person of ordinary skill in this technical field, after reading the '319 patent and the closest prior art, over which the '319 Patent was found to be patentable by the Board of Patent Appeals and Interferences, would readily realize there was nothing in Comp-U-Store (the entire document being broadly cited) that came within the teaching of at least the claim 1 limitations identified above.  Therefore, stating that all limitations of claim 1 are met by Comp-U-Store was a misrepresentation to the USPTO.

53.   Globecom.  Another purported reference, Globecom, was cited by Defendants, in its entirety and with lack of specificity, as showing each and every limitation of claim 1 of the '319 Patent.  However, this reference did not teach or suggest limitations of claim 1.  A person of ordinary skill in this technical field, after reading the '319 Patent and the closest prior art, over which the '319 Patent was found to be patentable by the Board of Patent Appeals and Interferences, would readily realize there was nothing in Globecom (the entire document being broadly cited), that came within the teaching of at least the claim 1 limitations identified above.  Therefore, stating that all limitations of claim 1 are met by Globecom is a misrepresentation to the USPTO.

54.   Discount Store News ("DSN").  A purported reference entitled Discount Store News was also cited in its entirety and with lack of specificity as showing each and every limitation of claim 1 of the '319 Patent.  However, this reference did not

18

1  teach or suggest limitations of claim 1. A person of ordinary skill in this technical

2  field, after reading the '319 Patent and the closest prior art, over which the '319

3  Patent was found to be patentable by the Board of Patent Appeals and Interferences,

4  would readily realize there was nothing in DSN (the entire document being broadly

5  cited), that came within the teaching of at least the claim 1 limitations identified

6  above. Therefore, stating that all limitations of at least claim 1 are met by DSN was

7  a misrepresentation to the USPTO.

8      55.    Cumulative to Prior Art of Record. In furtherance of their effort to

9  deceive the USPTO into determining that a substantial new question of patentability

10 was presented by the request, Defendants stated that "all of these prior art references

11 are closer to the claimed subject matter of the Lockwood '319 Patent than are the

12 prior art references that were of record in the file of the Lockwood '319 Patent," and

13 that "these new prior art references provide teachings not provided during

14 prosecution of the Lockwood '319 Patent." Defendants knew or should have known

15 these statements were false. In fact, none of the references submitted with

16 Defendants' request rose to the level of the closest prior art of record, for example

17 Lockwood's U.S. Patent No. 4,359,631 ("'631 Patent"), over which the '319 Patent

18 was found to be patentable by the Board of Patent Appeals and Interferences, and

19 which, together with its reissue U.S. Patent No. Re. 32,115, has been cited by 209

20 subsequently issued U.S. patents. Defendants knew or should have known that the

21 references they submitted were merely cumulative to the closest prior art of record,

22 for example, Plaintiff Lockwood's U.S. Patent No. 4,359,631 (" '631 Patent"), and

23 did not raise a substantial new question as to the patentability of the '319 Patent, but

24 they falsely asserted that "all" of their references were superior to the prior art of

25 record and "provid[ed] teachings not provided" in the '319 Patent. A person of

26 ordinary skill in this technical field, after reading the '631 Patent and other prior art

27 of record, would readily realize that the references submitted by Defendants did not

28 even rise to the level of the closest prior art of record in the file of the '319 Patent.

19

1   Therefore, Defendants' statements that the references they submitted are closer to the

2   claimed subject matter of the '319 Patent than the prior art of record and provide

3   teachings not provided by the '319 Patent are misrepresentations to the USPTO and

4   were made for the purpose of deceiving the USPTO in order to harm Plaintiffs.

5   **Specific Examples of Misrepresentations of "Prior Art" Advanced by**

6   **Defendants in the Request for Reexamination of the '951 Patent include the**

7   **following:**

8       56.   Comp-U-Store. This reference was cited in the request, essentially in its

9   entirety and with lack of specificity, as disclosing each and every limitation of claims

10  1-4 and 6-10 of the '951 Patent. A person of ordinary skill in this technical field,

11  after reading the '951 Patent and the closest prior art, over which the '951 Patent was

12  found to be patentable by the USPTO, would readily realize there was nothing in

13  Comp-U-Store (the entire document being broadly cited) that came within the

14  teaching of at least the claim 1 limitations identified above. Therefore, stating that

15  all limitations of claim 1 are met by Comp-U-Store was a misrepresentation to the

16  USPTO.

17      57.   Discount Store News ("DSN"). DSN was also cited in its entirety and

18  with lack of specificity as showing each and every limitation of claim 1 of the '951

19  Patent. A person of ordinary skill in this technical field, after reading the '951 Patent

20  and the closest prior art, over which the '951 Patent was found to be patentable by

21  the USPTO, would readily realize there was nothing in DSN (the entire document

22  being broadly cited), that came within the teaching of at least the claim 1 limitations

23  identified above. Therefore, stating that all limitations of at least claim 1 are met by

24  DSN was a misrepresentation to the USPTO.

25      58.   Forbes. Another purported reference entitled Forbes was also cited in

26  its entirety and with lack of specificity as showing each and every limitation of claim

27  1 of the '951 Patent. However, this reference did not teach or suggest any limitations

28  of claim 1. A person of ordinary skill in this technical field, after reading the '951

20

1  Patent and the closest prior art, over which the '951 Patent was found to be

2  patentable by the USPTO, would readily realize there was nothing in Forbes (the

3  entire document being broadly cited), that came within the teaching of at least the

4  claim 1 limitations identified above. Therefore, stating that all limitations of at least

5  claim 1 are met by Forbes was a misrepresentation to the USPTO.

6      59.  Kleinberg. A reference entitled Kleinberg was also cited in its entirety

7  and with lack of specificity as showing each and every limitation of claim 1 of the

8  '951 Patent. However, this reference did not teach or suggest limitations of claim 1.

9  A person of ordinary skill in this technical field, after reading the '951 Patent and the

10 closest prior art, over which the '951 Patent was found to be patentable by the

11 USPTO, would readily realize there was nothing in Kleinberg (the entire document

12 being broadly cited), that came within the teaching of at least the claim 1 limitations

13 identified above. Therefore, stating that all limitations of at least claim 1 are met by

14 Kleinberg was a misrepresentation to the USPTO.

15     60.  Globecom. This reference was cited in its entirety and with lack of

16 specificity, as showing each and every limitation of claim 1 of the '951 Patent. A

17 person of ordinary skill in this technical field, after reading the '951 Patent and the

18 closest prior art, over which the '951 Patent was found to be patentable by the

19 USPTO, would readily realize there was nothing in Globecom (the entire document

20 being broadly cited) that came within the teaching of at least the claim 1 limitations

21 identified above. Therefore, stating that all limitations of claim 1 are met by

22 Globecom was a misrepresentation to the USPTO.

23     61.  Cumulative to Prior Art of Record. In furtherance of their effort to

24 deceive the USPTO into determining that a substantial new question of patentability

25 was presented by the request, Defendants stated that "all of these prior art references

26 are closer to the claimed subject matter of the Lockwood '951 Patent than are the

27 prior art references that were of record in the file of the Lockwood '951 Patent," and

28 that "these new prior art references provide teachings not provided during

21

1   prosecution of the Lockwood '951 Patent." Defendants knew or should have known

2   that these statements were false. In fact, none of the references submitted with

3   Defendants' request rose to the level of the closest prior art of record, for example

4   Plaintiff Lockwood's '631 Patent, over which the '951 Patent was found to be

5   patentable by the USPTO examiner, and which, together with its reissue U.S. Patent

6   No. Re. 32,115, has been cited by 209 subsequently issued U.S. patents. Defendants

7   knew or should have known that the references they submitted were merely

8   cumulative to the closest prior art of record, e.g., the '631 Patent, and did not raise a

9   substantial new question as to the patentability of the '951 Patent, but they falsely

10   asserted that "all" of their references were superior to the prior art of record and

11   "provid[ed] teachings not provided" in the '951 Patent. A person of ordinary skill in

12   this technical field, after reading the '631 Patent and other prior art of record, would

13   readily realize that the references submitted by Defendants did not even rise to the

14   level of the closest prior art of record in the file of the '951 Patent. Therefore,

15   Defendants' statements that the references they submitted are closer to the claimed

16   subject matter of the '951 Patent than the prior art of record and that they provide

17   teachings not provided by the '951 Patent were misrepresentations to the USPTO and

18   were made for the purpose of deceiving the USPTO and harming Plaintiffs.

19        62.    Because of the easily identifiable application dates for the Patents as

20   well as the nature of the Patents and of the references claimed as "prior art" in the

21   Fraudulent Requests, no reasonable attorney in the same circumstances would have

22   believed that the prior art references submitted in the Fraudulent Requests by

23   Defendants would raise a substantial new question as to patentability or that probable

24   cause existed to bring the Fraudulent Requests for reexamination.

25        63.    Knowing that probable cause was lacking to bring such Fraudulent

26   Requests before the USPTO and knowing that the above assertions were false and

27   misleading, Defendants knowingly and maliciously made misleading

28   characterizations of the claimed prior art and its applicability to the Patents in order

22

1    to deceive the USPTO, by presenting these statements in approximately 350 pages of

2    documentation, replete with charts and repetitive explanations which Defendants

3    were aware the USPTO Examiners would have to review and which were designed to

4    obfuscate the material misrepresentations.

5        64.   Knowing that the USPTO would rely on the Defendants' strict duty of

6    Candor, Defendants also knew that the USPTO would rely on whatever factual

7    statements and assertions made by them in the Fraudulent Requests. Defendants

8    knew as practitioners in the area of patent law, that approximately 95% of requests

9    for reexamination are granted and that the practical effect of the reexamination

10    proceeding is to cast a cloud on the use, enforcement, selling or otherwise receiving

11    compensation from the patent by the patent-holder. Defendants also knew that the

12    practical effect of granting The Fraudulent Requests would be that such cloud would

13    linger over the Patents for the duration of the reexamination, which extend to four

14    years or longer. Defendants had no reasonable good faith belief that there was in fact

15    any substantial new question of patentability or that the reexamination proceedings

16    would ultimately resolve in Defendants' favor. Defendants submitted their two

17    Fraudulent Requests for reexamination through the U.S. Mail for the purpose of

18    causing Plaintiffs economic harm by delaying and disrupting Plaintiffs' Enforcement

19    Program and potentially driving them out of business, regardless of the veracity of

20    the statements made to the USPTO to begin proceedings or their ultimate resolution.

21    **Continuation of Fraudulent Scheme**

22        65.   In support of their scheme to defraud the USPTO and to harm Plaintiffs,

23    Defendant Sheppard Mullin, along with and in conspiracy with Defendants Hassid

24    and Hangartner, on May 5, 2003, after the Fraudulent Requests had been filed, filed a

25    Motion to Stay Litigation in the Enforcement Proceedings before the District Court

26    / / /

27    / / /

28

23

1  | for the Southern District of California. Defendant Hangartner signed a Declaration
2  | in Support thereof in which he stated:

3  |          a.     "The PanIP Group Defense Fund, Inc., a group made up of
4  |                 sixteen defendants in this and three other related patent cases, has
5  |                 identified extensive, published prior art dating to the early 1980's
6  |                 that unequivocally anticipated the alleged inventions in both U.S.
7  |                 Patent Nos. 5,576,951 (the '951 Patent) and 6,289,319 (the '319
8  |                 Patent)."

9  |          b.     "These requests seek reexamination of the '951 and '319 Patents
10 |                 based on prior art references that clearly anticipate and/or render
11 |                 obvious all the elements of independent claims 1 through 10 of the
12 |                 '951 Patent and independent claim 1 of the '319 Patent."

13 |          c.     "In addition, the requests seek reexamination of dependent claims
14 |                 2-4 and 6-9 of the '951 Patent and claims 2-6 of the '319 Patent
15 |                 based on anticipation and/or obviousness."

16 |          d.     "These requests for reexamination are all based on published prior
17 |                 art references that were not considered by the examiner during
18 |                 prosecution of the '951 and '319 Patents."

19 |          e.     "None of this prior art was identified or considered during
20 |                 prosecution of the patents."

21 |          f.     "It is likely that reexamination will result in a determination by
22 |                 the USPTO that the patents-in-suit are invalid."

23 |          g.     "I declare under penalty of perjury under the laws of the United
24 |                 States of America that the foregoing is true and correct to the best of
25 |                 my knowledge."

26 |    66.    In support of their scheme to defraud the USPTO and to harm Plaintiffs,
27 | Defendant Sheppard Mullin, in conspiracy with Defendants Hassid and Hangartner,
28 | on May 6, 2003, after the Fraudulent Requests had been filed, in support of their

24

1    Motion to Stay Litigation, in the Enforcement Proceedings before the District Court

2    for the Southern District of California, mailed a letter to Magistrate Judge James F.

3    Stiven which stated:

4         a.    "PGDF's reexamination requests are based on multiple prior art

5               references that were not in the record during prosecution of these

6               patents.   These references predate the earliest patent applications

7               filed by Mr. Lockwood, and clearly anticipate and/or render obvious

8               the inventions allegedly represented in the '951 and '319 Patents."

9         b.    "Defendants have identified prior art that they firmly believe

10              renders Plaintiff's patents invalid and they have invoked a procedure

11              to test that belief before the U.S. PTO. [sic]"

12              "Further, since the reexamination of the patents will be an ex parte

13              proceeding they have no incentive to settle this case pending a

14              decision on their motion to stay."

15      67.    As a result of Defendants' deceitful statements and reliance on the

16   Fraudulent Requests, the district court granted their Motion to Stay immediately

17   prior to the scheduled Markman hearing which would have allowed the infringement

18   to be adjudicated on the merits, and the Enforcement Proceedings were stayed

19   pending the resolution of the sham reexamination of the Patents unlawfully

20   instigated by Defendants.  The stay had the intended effect of shutting down

21   Plaintiffs' ability to use or derive any benefit from the valid Patents.

22      68.    To continue and to support their scheme to defraud, Defendants, through

23   the website of PGDF, *YouMayBeNext.com,* fraudulently stated that it "had identified

24   extensive, published prior art dating to the early 1980's that unequivocally

25   anticipated the alleged inventions in both U.S. Patent Nos. 5,576,951 (the '951

26   Patent) and 6,289,319 (the '319 Patent)."   Defendants made these statements

27   knowing they were false with the intent that they would be relied upon by the federal

28   court and the public and to solicit funds in which to invest back into PGDF, which

25

1   was designed and operated by Defendants solely to harm Plaintiffs' Patents and to

2   put Plaintiffs out of business.

3        69.    On May 16, 2003, Defendants' intention to deprive Plaintiffs, through

4   fraud on the USPTO, of the opportunity to enforce the valid property rights in the

5   Patents was further evidenced by their statements in a letter sent to the Magistrate

6   Judge James F. Stiven of the U.S. District Court for the Southern District of

7   California: "Here, both patents have been challenged based on anticipation under 35

8   U.S.C. § 102(b) and obviousness under 35 U.S.C. § 103.  The requests are based on

9   numerous prior art references dating to the early 1980's, before the filing date of the

10  earliest patents in the family of patents that includes the patents in suit.  U.S. Patent

11  No. 6,289,319 (the '319 Patent) is challenged *based on ten separate references*, none

12  of which was in the record during examination of the '319 Patent.  U.S. Patent No.

13  5,576,951 (the '951 Patent) is *challenged based on five separate references*, none of

14  which was in the record during examination of the '951 Patent.  These reference [sic]

15  clearly anticipate every element of the claimed inventions in both the '319 and '951

16  Patents." [Italics in original].  This evidenced Defendants' knowledge of the prior

17  art and their intent to deceive the USPTO and to deprive Lockwood of this property

18  rights.  None of the Defendants' so called prior art references were relevant to or

19  affected the validity of the Patents and Defendants knew this at the time the

20  statements were made.

21       70.    In reliance on the deceptive mischaracterization of alleged pieces of

22  prior art submitted by Defendants in their Fraudulent Requests for reexamination, the

23  USPTO did grant the Fraudulent Requests, which had the intended effect of stopping

24  Plaintiffs' Enforcement Program, causing great economic loss and the loss of

25  business relationships in the form of targeted licensors and the use of their Patents

26  for over four years of the seventeen-year life of the Patents.

27  / / /

28  / / /

26

71. The Defendants continued their fraudulent scheme to "put this guy [Lockwood and PanIP] out of business" through the continued use of the PGDF website by making fraudulent statements on their Internet website, *YouMayBeNext.com,* regarding the enforceability of the Patents and to obtain money from the general public to finance their scheme.

72. The granting of the Fraudulent Requests for reexamination had the intended effect of proximately causing Plaintiffs severe economic harm in having to defend the Patents before the USPTO and has rendered Plaintiffs unable to use, enforce, sell, or license the Patents for several years over the life of the Patents.

73. Despite knowing the fraudulent, misleading and malicious content of the Fraudulent Requests, from May 2003 through December 5, 2006, Defendants continued to perpetrate the fraud through the PGDF enterprise and website, continued to solicit funds from the general public, and continued to make false statements therein. Defendants boasted in *YouMayBeNext.com*: "First, through the support of the public and the help of a private prior art search firm, we have found substantial evidence undermining the Patents. In May we used this evidence to file requests with the U.S. Patent and Trademark Office ("PTO") to reexamine and invalidate both of them. At the same time we moved to stay PanIP's lawsuits, and in June the federal court in San Diego issued an order staying the cases to allow our reexamination requests to be considered. In July, we received notice that the PTO has accepted our request for reexamination and agrees that we have raised "a substantial new question of patentability" as to the claims of the first of PanIP's patents. Second, we have obtained an award of attorney's fees against PanIP for approximately $19,000.00 related to the defense of PanIP's unsupported lawsuit alleging defamation and trademark infringement against the PanIP Group Defense Fund... Third, we have successfully stopped PanIP's strategy...".

/ / /

/ / /

27

COMPLAINT

74.     Further, on or about March 19, 2004, Defendants used the existence of the false and Fraudulent Requests and Plaintiffs' severely injured economic situation to coerce Plaintiffs into dismissing the Enforcement Proceedings and execute a Covenant Not to Sue and Release Agreement with PGDF and the defendants, thereby effectively shutting down the Enforcement Program.

75.     Prior to May 5, 2003, PanIP developed a patent licensing program for the benefit of tax-exempt, non-profit organizations, e.g., museums and youth organizations.  Plaintiffs were preparing to submit PanIP's request to the IRS for a "private letter ruling," which is a written statement issued to the taxpayer by the IRS in which interpretations of the tax law are made and applied to a specific set of facts. This licensing opportunity and the future licensing benefit to PanIp to be derived therefrom was lost due to the conduct of the Defendants' fraudulent and unlawful conduct.

76.     PanIP was actively working with the Motion Picture Association of America (the "MPAA") and the Recording Industry Association of America (the "RIAA") to assist in terminating or limiting their multi-billion dollar loss from piracy of their motion pictures and music over the Internet by enforcement of the PanIP patents.  Internet piracy utilized peer-to-peer technology that infringed the PanIP patent portfolio.  During 2004, Mr. Lockwood with PanIP's V.P. of Legal Affairs met with MPAA executives and their attorneys at the MPAA offices in Los Angeles to develop a business strategy.  However, because of the Defendants' unlawful conduct in filing the malicious Fraudulent Requests, the MPAA and RIAA postponed further discussion until the patents emerged from reexamination.  This multi-million dollar licensing relationship, as well as other business relationships based on the Patents, was lost due to the conduct of Defendants' fraudulent and unlawful conduct.

/ / /

/ / /

28

**Patent Office Vindicates Lockwood Patents After Four Years**

77. Over four years after the reexamination proceedings instigated by Defendants began on May 5, 2003 these proceedings were resolved completely in Plaintiffs' favor. The USPTO reconfirmed the patentability of the inventions disclosed and claimed therein, without material change in the scope or breadth of their coverage, thus effectively confirming that none of the Defendants' representations in their Fraudulent Requests about the validity of the inventions disclosed and claimed in the Patents were accurate or constituted bases for probable cause to create a substantial new question of patentability.

78. On July 17, 2007, the USPTO issued Ex Parte Reexamination Certificate U.S. 6,289,310 C1, confirming all claims.

79. On January 29, 2008, the USPTO issued Ex Parte Reexamination Certificate US 5,576,951 C1, confirming all claims.

80. For a period of over four and one-half years, Defendants have demonstrated their total disregard for abiding by USPTO rules and regulations and the termination of their fraud. Defendants were mailed all correspondence between the USPTO and Plaintiffs' attorneys, which made manifest their fraud, yet Defendants ignored their duty to inform the USPTO. The responsibility of compliance with 37 CFR 1.555 rested with Defendants, and any fraud practiced or attempted on the Office or any violation of the duty of disclosure through bad faith or intentional misconduct by any such individual results in noncompliance with 37 CFR 1.555(a). This duty of disclosure is consistent with the duty placed on patent applicants by 37 CFR 1.56. All such individuals who fail to comply with 37 CFR 1.555(a) do so at the risk of diminishing the quality and reliability of the reexamination certificate issuing from the proceeding.

81. Defendants met with an attorney for Plaintiffs on December 17, 2006 and were informed in detail regarding the extent of their fraud. Defendants again ignored their responsibilities in connection with having submitted the two Fraudulent

29

1   Requests for reexamination, and they failed to abide by the rules and regulations of

2   the USPTO and their duty of candor.  *See Precision Instrument Mfg. Co. v.*

3   *Automotive Maintenance Mach. Co.* , 324 U.S. 806, 818 (1945)( "Those…who are

4   parties to Patent Office proceedings have an uncompromising duty to report to it all

5   facts concerning possible fraud or inequitableness…Public interest demands that all

6   facts relevant to such matters be submitted formally or informally to the Patent

7   Office").

8       82.    The Patents are under a continuing threat of a similar fraud being

9   perpetrated, given that the U.S. patent laws and the USPTO rules and regulations

10  allow multiple requests for reexaminations even based on the same prior art

11  references, and given that Defendants through PGDF have repeatedly made

12  statements that their goal is to put Plaintiffs out of business.  Under the rules and

13  regulations of the USPTO, Defendants, at any time, may instigate deceptive

14  reexamination proceedings in order to prevent Plaintiff s from ever enforcing their

15  Patents.  Requesters can submit multiple requests while a patent is in reexamination,

16  delaying endlessly the final decision to issue a certificate or to amend claims.

17      83.    Due to Defendants' misconduct and due to their deceptive and malicious

18  instigation of USPTO proceedings, from the time of the submission of the Fraudulent

19  Requests, Defendants' violations and fraudulent concealment were continuing, as

20  was the injury to Plaintiffs.  Plaintiffs did not know and had no reason to know the

21  full extent of the wrongful nature of Defendants' conduct before expending extensive

22  time and effort defending the Patents in the reexamination proceedings.  Plaintiffs,

23  like the USPTO, initially relied on the Defendants' duty of candor, and due to the

24  deceitful and misleading nature of the Fraudulent Requests, Plaintiffs were prevented

25  from discovering or realizing the full extent of Defendant's fraudulent use of the

26  reexamination proceedings for improper purposes until approximately three years

27  after the Fraudulent Requests were filed.

28  / / /

30

1    84.    After Plaintiffs and their attorneys met with Defendant Sheppard,

2    Mullin, on January 5, 2007, Plaintiffs and Defendant Sheppard Mullin, signed a

3    Tolling Agreement that provided the period from the date of signing to April 5, 2007

4    (i.e. 90 days) shall not be included in determining the applicability of any statute of

5    limitations, laches, or any other defense based on the lapse of time in any action or

6    proceeding brought by either party against the other arising from Defendant

7    Sheppard Mullin's representation of its clients pursuant to the Enforcement Program.

8    A sixty-day extension was signed, terminating on June 5, 2007.

9    **Procedural History of this Action**

10    85.    On June 4, 2007, Plaintiff filed an in pro per complaint in the Los

11    Angeles Superior Court against Defendants Sheppard Mullin and Hangartner based

12    upon the same facts alleged herein that the Defendants made false representations in

13    the Fraudulent Requests for reexamination. Defendants filed a demurrer and a

14    special motion to strike the complaint under California's Anti-SLAPP statute, Cal.

15    Code. Civ. Proc. § 425.16. On September 10, 2007, Plaintiff retained counsel and

16    filed an amended complaint alleging causes of action for malicious prosecution,

17    intentional interference with prospective economic relations, and fraudulent

18    misrepresentations, all of which were based upon the same facts alleged in the

19    original complaint. The Defendants filed a second motion to strike the amended

20    complaint on November 20, 2007. The Superior Court granted Defendants' motion

21    to strike the complaint (specifically not referencing the amended complaint) and

22    entered judgment against Plaintiff on January 18, 2008. *See Lockwood v. Sheppard,*

23    *Mullin, Richter & Hampton,* 173 Cal. App. 4th 675, 680 (2009).

24    86.    Plaintiff Lockwood filed timely notices of appeal on December 14, 2007

25    and February 7, 2008 from the orders granting each motion to strike the original and

26    amended complaints and the California Court of Appeal, Second District

27    consolidated his appeal. On April 30, 2009, the Court of Appeal vacated the

28    judgments of the trial court on the basis that Plaintiff's claims arose under the U.S.

31

1 | patent laws and were therefore subject to the exclusive jurisdiction of the federal

2 | courts pursuant to 28 U.S.C. § 1338(a). *See Lockwood v. Sheppard, Mullin, Richter*

3 | *& Hampton*, 173 Cal. App. 4th 675 (2009). The California Court of Appeal held that

4 | although the causes of action were based in state law (and plaintiff would have to

5 | prove for example: (1) that the prior art references Defendants cited in their request

6 | for reexamination did not qualify as prior art and /or did not disclose what

7 | Defendants asserted; (2) that Defendants knew or should have known that their

8 | representations were incorrect or misleading; and (3) that without Defendants

9 | misrepresentations, the USPTO would not have initiated a reexamination), in order to

10 | make the necessary legal determinations at issue, findings regarding substantial

11 | questions of federal patent law including the workings of the U.S. Patent office

12 | would be integral to the claims. *Id.* at 686-687. Therefore, Plaintiffs' state causes of

13 | action must exclusively be brought in federal court. *See id.*

## FIRST CAUSE OF ACTION

### Malicious Prosecution

### (Against All Defendants)

17 | 87.    Paragraphs 1 through 86 are incorporated herein.

18 | 88.    Defendants wrongfully used the reexamination proceedings before the

19 | USPTO in submitting fraudulent, misleading Fraudulent Requests for reexamination

20 | of Plaintiffs' Patents in violation of federal law by engaging in conduct involving

21 | dishonesty, fraud, deceit, or misrepresentation and engaging in conduct that is

22 | prejudicial to the administration of justice. See, e.g., 37 C.F.R.§ 1.555; §10.23 (b);

23 | Cal. Bus. Prof. Code § 6068 (d), (g).

24 | 89.    Among other things, the prior art references Defendants cited in their

25 | Fraudulent Requests of the Patents did not qualify as prior art under the governing

26 | patent law and/or did not disclose or state what Defendants represented to the

27 | USPTO. Defendants knew or should have known that their representations

28 | regarding, for example, prior art, were incorrect or misleading and without

32

1  Defendants' misrepresentations the USPTO would not have initiated a reexamination
2  of Plaintiffs' Patents.  At the end of a four year process, the USPTO necessarily
3  determined that Defendants' representations regarding among other things, the prior
4  art, were without probable cause and false in that these references submitted by
5  Defendants did not disclose, teach or suggest the patented Lockwood inventions.

6       90.    The reexamination proceedings resolved in Plaintiffs' favor when all
7  claims of the Patents were confirmed in entirety on July 17, 2007 and on January 29,
8  2008.

9       91.    Defendants submitted the Fraudulent Requests without probable cause
10 in that no reasonable attorney would have found the Fraudulent Requests legally
11 tenable under the patent laws after prudent investigation of the alleged pieces of prior
12 art and the law governing patent reexamination.

13      92.    Defendants acted primarily for a purpose other than succeeding on the
14 merits of the claim, i.e., for the purpose of defrauding the USPTO into sham
15 reexaminations based on The Fraudulent Requests in order to injure Plaintiffs by
16 derailing the successful enforcement of the Patents and for the purpose of causing
17 economic harm to Plaintiffs, as expressed by Defendants in their public statements.

18      93.    But for Defendants' deceptive Fraudulent Requests before the USPTO
19 that violated their duty of candor and duty to investigate, reexamination would not
20 have been granted, thereby placing a cloud upon Plaintiffs' right to the use of or
21 enforcement of the Patents, requiring Plaintiffs to expend exorbitant amounts of
22 money and time to defend the Patents during the reexamination process that lasted
23 over four years.

24      94.    Defendants' conduct proximately caused serious financial harm to
25 Plaintiffs including, but not limited to, the loss of the use of their Patents, including
26 through their licensing and Enforcement Program, the loss of business reputation,
27 and collateral economic harm associated with the loss of the use of property rights, as
28 / / /

1  well as expenses, attorneys fees and costs incurred.  Defendants' conduct was willful,

2  malicious, fraudulent and oppressive, justifying an award of punitive damages.

3  ### SECOND CAUSE OF ACTION

4  ### Intentional Interference with Prospective Economic Relations

5  ### (Against All Defendants)

6  95.  Paragraphs 1 through 94 are incorporated herein.

7  96.  Defendants' conduct was wrongful, and constituted willful and

8  negligent interference with plaintiff's economic and prospective economic

9  advantages in that Defendants knew that Plaintiffs' Enforcement Program was

10  resulting in licenses from business/licensors that were using Plaintiffs' patented

11  technologies.

12  97.  When Defendants filed the Fraudulent Requests, they were aware of the

13  economic advantage and prospective economic advantage that Plaintiffs had and

14  reasonably expected to obtain.

15  98.  Defendants were also aware that if the Fraudulent Requests were

16  successful in causing the USPTO to initiate reexamination proceedings, the

17  Enforcement Program would be stopped during the several year pendency of the

18  proceedings, and that Plaintiffs would need to expend resources to defend the

19  reexamination, which resources would thus be diverted from and not available for

20  reinstitution of the Enforcement Program, should the Patents emerge intact.

21  99.  Defendants intended to disrupt these licensing relationships by

22  maliciously and in bad faith instigating sham reexamination proceedings before the

23  USPTO for the purpose of derailing Plaintiffs' licensing efforts and Enforcement

24  Program through the use of deception and wrongful conduct in violation of federal

25  and state law and rules of professional ethics.

26  100.  Defendants have proximately caused financial and economic harm to

27  Plaintiffs, including but not limited to loss of the use of their valid Patents through

28  licensing relationships, out of pocket expenses related to the Enforcement Program,

34

1  attorneys' fees, and lost profits from the Enforcement Program which would have
2  continued but for Defendants' wrongful conduct.

3      101.  Defendants' conduct was willful, malicious, fraudulent and oppressive,
4  justifying an award of punitive damages.

5  ## THIRD CAUSE OF ACTION

6  ### Fraudulent Misrepresentation

7  ### (Against All Defendants)

8      102.  Paragraphs 1 to101 are incorporated herein.

9      103.  The Defendants knowingly made false and misleading representations
10  without regard to their veracity to the USPTO regarding the applicability of so called
11  prior art and the enforceability of Plaintiffs' Patents to create the impression that
12  there were questions of the Patents' validity that Defendants knew did not exist.

13      104.  Specifically, the prior art references cited in the Fraudulent Requests did
14  not qualify as prior art under the patent laws and/or did not disclose what Defendants
15  said they disclosed.

16      105.  Defendants presented to the USPTO Fraudulent Requests for
17  reexamination in a deceptive manner based on half-truths regarding application of
18  purported prior art to Plaintiffs' Patents which were calculated to deceive and used to
19  create an impression that was substantially and materially false.

20      106.  Defendants knew or should have known that their representations
21  regarding the purported prior art references were incorrect or misleading.

22      107.  Defendants made such misleading representations in the Fraudulent
23  Requests for reexamination with the intent that the USPTO and Plaintiffs and their
24  attorneys would rely on the veracity of the representations, e.g., by submitting large
25  amounts of irrelevant material including detailed charts with the Fraudulent Requests
26  to give an appearance that did not accord with reality.

27  ///
28  ///

35

COMPLAINT

108.   But for Defendants' misrepresentations, the USPTO would not have granted the Fraudulent Requests for reexamination.

109.   The USPTO did reasonably rely on the Defendants' proper comportment with professional ethics and statutory duty of candor in requesting reexamination, and as a result the Fraudulent Requests were granted with consequent harm to Plaintiffs, including but not limited to loss of the use of the valid Patents through licensing relationships, out of pocket expenses related to the Enforcement Program, attorneys' fees, and lost profits from licensing of the Patents, royalties and profits from the Enforcement Program which would have continued but for Defendants' wrongful conduct.

110.   But for the fraudulent misrepresentations made by Defendants, the Plaintiffs would not have suffered such harm.

## FOURTH CAUSE OF ACTION

**Violation of Racketeer Influenced Corrupt Organization Act, 18 U.S.C. §1962(c)**

**(Against Sheppard Mullin Only)**

111.   Paragraphs 1 to 110 are incorporated herein.

112.   Defendant Sheppard Mullin commissioned, associated with, conducted and operated the activities of the enterprise of PGDF and its website, *YouMayBeNext.com*, which was created for the sole purpose of engaging in a pattern of racketeering intended to defraud the USPTO and to cause harm to Plaintiffs' business relationships and property interests in the Patents.

113.   For example, in support of its Fraudulent Requests to the USPTO, Defendants falsely represented that a CompuServe document entitled Electronic Mall described prior art.  However, the Electronic Mall manual printed in 1986, could not have qualified it as prior art as to the '319 Patent given its application date.  However, to circumvent that problem, Defendants made false and misleading statements in the Request for the '319 Patent that the Electronic Mall system described in the 1986 manual was "available...starting in the early 1980s," and that

36

1   the 1986 manual was a "particular version" implying there was an earlier version

2   published in the "early 1980s", which if true might have qualified as prior art under

3   the laws governing patent reexaminations.  In fact, these statements were not true,

4   and Defendants knew they were false and that they did not have a factual basis to

5   make such representations of material fact.

6       114.   Defendants made false statements of material fact with respect to what

7   was supposedly shown in the purported prior art references relied upon by

8   Defendants in the Requests, claiming that other cited prior art references disclosed

9   elements that were not actually present in the so-called prior art references.  All of

10  these misrepresentations of fact were made by Defendants with the specific purpose

11  and intent that the USPTO would rely on them to initiate the reexamination of the

12  Patents.  Defendants knew that, but for their making such false and misleading

13  statements, the USPTO likely would not find a substantial new question of

14  patentability presented and would not grant the requests for reexamination.

15      115.   On May 5, 2003, in furtherance of the scheme to defraud the USPTO,

16  and in violation of 18 U.S.C. § 1341, Defendant Sheppard Mullin mailed to the

17  USPTO a fraudulent request for reexamination of the '951 Patent, in the name of the

18  PGDF enterprise and signed by Defendant Hassid.  The request contained numerous

19  deceptive and fraudulent misrepresentations, including but not limited to:

20      116.   Comp-U-Store.  This reference was cited in the request, essentially in its

21  entirety and with lack of specificity, as disclosing each and every limitation of claims

22  1-4 and 6-10 of the '951 Patent.  A person of ordinary skill in this technical field,

23  after reading the '951 Patent and the closest prior art, over which the '951 Patent was

24  found to be patentable by the USPTO, would readily realize there was nothing in

25  Comp-U-Store (the entire document being broadly cited) that came within the

26  teaching of at least the claim 1 limitations identified above.  Therefore, stating that

27  all limitations of claim 1 are met by Comp-U-Store is a misrepresentation to the

28  USPTO.

37

117.  Discount Store News ("DSN"). DSN was also cited in its entirety and with lack of specificity as showing each and every limitation of claim 1 of the '951 Patent. A person of ordinary skill in this technical field, after reading the '951 Patent and the closest prior art, over which the '951 Patent was found to be patentable by the USPTO, would readily realize there was nothing in DSN (the entire document being broadly cited), that came within the teaching of at least the claim 1 limitations identified above. Therefore, stating that all limitations of at least claim 1 are met by DSN is a misrepresentation to the USPTO.

118.  Forbes. Another purported reference entitled Forbes, was also cited in its entirety and with lack of specificity as showing each and every limitation of claim 1 of the '951 Patent. However, this reference did not teach or suggest any limitations of claim 1. A person of ordinary skill in this technical field, after reading the '951 Patent and the closest prior art, over which the '951 Patent was found to be patentable by the USPTO, would readily realize there was nothing in Forbes (the entire document being broadly cited), that came within the teaching of at least the claim 1 limitations identified above. Therefore, stating that all limitations of at least claim 1 are met by Forbes is a misrepresentation to the USPTO.

119.  Kleinberg. A reference entitled Kleinberg was also cited in its entirety and with lack of specificity as showing each and every limitation of claim 1 of the '951 Patent. However, this reference did not teach or suggest limitations of claim 1. A person of ordinary skill in this technical field, after reading the '951 Patent and the closest prior art, over which the '951 Patent was found to be patentable by the USPTO, would readily realize there was nothing in Kleinberg (the entire document being broadly cited), that came within the teaching of at least the claim 1 limitations identified above. Therefore, stating that all limitations of at least claim 1 are met by Kleinberg was a misrepresentation to the USPTO.

120.  Globecom. This reference was cited in its entirety and with lack of specificity, as showing each and every limitation of claim 1 of the '951

1 ‖ Patent. A person of ordinary skill in this technical field, after reading the '951 Patent

2 ‖ and the closest prior art, over which the '951 Patent was found to be patentable by

3 ‖ the USPTO, would readily realize there was nothing in Globecom (the entire

4 ‖ document being broadly cited), that came within the teaching of at least the claim 1

5 ‖ limitations identified above. Therefore, stating that all limitations of claim 1 are met

6 ‖ by Globecom is a misrepresentation to the USPTO.

7 ‖         121. Cumulative to Prior Art of Record. In furtherance of their effort to

8 ‖ deceive the USPTO into determining that a substantial new question of patentability

9 ‖ was presented by the request, Defendants stated that "all of these prior art references

10 ‖ are closer to the claimed subject matter of the Lockwood '951 Patent than are the

11 ‖ prior art references that were of record in the file of the Lockwood '951 Patent," and

12 ‖ that "these new prior art references provide teachings not provided during

13 ‖ prosecution of the Lockwood '951 Patent." Defendants knew or should have known

14 ‖ that these statements were false. In fact, none of the references submitted with

15 ‖ Defendants' request rose to the level of the closest prior art of record, for example

16 ‖ Plaintiff Lockwood's '631 Patent, over which the '951 Patent was found to be

17 ‖ patentable by the USPTO examiner, and which, together with its reissue U.S. Patent

18 ‖ No. Re. 32,115, has been cited by 209 subsequently issued U.S. patents. Defendants

19 ‖ knew or should have known that the references they submitted were merely

20 ‖ cumulative to the closest prior art of record, e.g., the '631 Patent, and did not raise a

21 ‖ substantial new question as to the patentability of the '951 Patent, but they falsely

22 ‖ asserted that "all" of their references were superior to the prior art of record and

23 ‖ "provid[ed] teachings not provided" in the '951 Patent. A person of ordinary skill in

24 ‖ this technical field, after reading the '631 Patent and other prior art of record, would

25 ‖ readily realize that the references submitted by Defendants did not even rise to the

26 ‖ level of the closest prior art of record in the file of the '951 Patent. Therefore,

27 ‖ Defendants' statements that the references they submitted are closer to the claimed

28 ‖ subject matter of the '951 Patent than the prior art of record and provide teachings

39

1  not provided by the '951 Patent are misrepresentations to the USPTO and made for

2  the purpose of deceiving the USPTO and harming Plaintiffs.

3       122.   Because of the easily identifiable application dates for the Patents as

4  well as the nature of the Patents and of the references claimed as "prior art" in the

5  Fraudulent Requests, no reasonable attorney in the same circumstances would have

6  believed that the prior art references submitted in the Fraudulent Requests by

7  defendants would raise a substantial new question as to patentability or that probable

8  cause existed to bring the Fraudulent Requests for reexamination.

9       123.   Knowing that there was no truth to the statements made in the Request

10  for the '951 Patent, Defendants knowingly and maliciously made misleading

11  characterizations of the claimed prior art and its applicability to the Patents in order

12  to deceive the USPTO, by presenting these statements in about three hundred and

13  fifty (350) pages of documentation, replete with charts and repetitive explanations

14  which Defendants were aware the USPTO Examiners would have to review and

15  which were designed to obfuscate the material misrepresentations.

16       124.   On May 5, 2003, in furtherance of the scheme to defraud the USPTO,

17  and in violation of 18 U.S.C. § 1341, Defendant Sheppard Mullin, mailed to the

18  USPTO a fraudulent request for reexamination of the '319 Patent, in the name of

19  PGDF.  The request contained numerous deceptive and fraudulent

20  misrepresentations, including but not limited to:

21       125.   Electronic Mall Reference.  Material information bearing on the

22  publication date and public accessibility of the reference was withheld from the

23  USPTO in the request.  The only date given in the request for this document is the

24  year 1986.  Because any document must have a publication or effective date at least

25  prior to 24 January, 1985 in order to qualify as prior art to the '319 Patent under 35

26  U.S.C. §102 (b), the submitted document is not "prior art" under 35 U.S.C. § 102(b).

27  Nor is the Electronic Mall a "printed publication" as required by 35 U.S.C. §102 (b).

28  The material fact that the Electronic Mall reference is referred to, within its own

1  pages, as a "confidential and proprietary manual" was not brought to the attention of

2  the Examiner in the request.  Instead, Defendants misrepresented that the *"system"*

3  i.e., not the alleged prior art reference itself, was "available to the public."  The

4  request used Electronic Mall in a manner designed to obfuscate and deceive the

5  USPTO, asserting that the claims of the '319 Patent were anticipated and/or obvious

6  in view of the reference, which was not prior art.

7      126.  IVIS Reference.  The request represented that "these new prior art

8  references provide teachings not provided during prosecution of the Lockwood '319

9  Patent."  This statement was false.  In fact, the IVIS reference had been of record in

10  the file of Plaintiff Lockwood's "grandparent" patent application Serial No. 613,525

11  ("S/N '524"), now Patent No. 4,567,359 ("'359 Patent") from which the '319 Patent

12  issued as a continuation-in-part.  In an amendment during the application prosecution

13  of the '319 Patent of September 19, 1995, the '359  Patent which included IVIS as

14  part of the preferred embodiment, was provided by Plaintiff Lockwood's attorney

15  who mailed to the USPTO examiner copies of both the '359 Patent and S/N '525.

16  Plaintiff Lockwood himself had provided the IVIS reference to the USPTO during

17  the prosecution of the '359 "grandparent" Patent and IVIS was repeatedly

18  incorporated in the preferred embodiment of that patent.  This information was a

19  matter of public record and known to Defendants, who misrepresented the reference

20  as "new," as evidenced by the USPTO date-stamp on several pages of the IVIS

21  reference, which matches the date it was received from Plaintiff Lockwood by the

22  USPTO during prosecution, as well as by "bates stamp" numbers on each page of the

23  document from the *Lockwood v. American Airlines, Inc.,* litigation in which the

24  "grandparent" patent was involved.

25      127.  Comp-U-Store Reference.  This reference was cited in the request

26  essentially in its entirety and with lack of specificity, as disclosing each and every

27  limitation of claims of the '319 Patent, which in fact it did not disclose.  In the

28  prosecution of this request, the Examiner relied on the Defendants' duty of candor in

41

1   practicing before the USPTO, and accepted what the request asserted as true, but

2   which was not true. Rather, claim 1 of the '319 Patent indicates to any practitioner

3   before the USPTO how those limitations in claim 1 did not appear in Comp-U-Store,

4   and that Defendants statements in the Fraudulent Requests were false. A person of

5   ordinary skill in this technical field, after reading the '319 Patent and the closest

6   prior art, over which the '319 Patent was found to be patentable by the Board of

7   Patent Appeals and Interferences, would readily realize there was nothing in Comp-

8   U-Store (the entire document being broadly cited) that came within the teaching of at

9   least the claim 1 limitations identified above. Therefore, stating that all limitations

10  of claim 1 are met by Comp-U-Store is a misrepresentation to the USPTO.

11      128.   Globecom. Another purported reference, Globecom, was cited by

12  Defendants, in its entirety and with lack of specificity, as showing each and every

13  limitation of claim 1 of the '319 Patent. However, this reference did not teach or

14  suggest limitations of claim 1. A person of ordinary skill in this technical field, after

15  reading the '319 Patent and the closest prior art, over which the '319 Patent was

16  found to be patentable by the Board of Patent Appeals and Interferences, would

17  readily realize there was nothing in Globecom (the entire document being broadly

18  cited) that came within the teaching of at least the claim 1 limitations identified

19  above. Therefore, stating that all limitations of claim 1 are met by Globecom is a

20  misrepresentation to the USPTO.

21      129.   Discount Store News ("DSN"). A purported reference entitled Discount

22  Store News was also cited in its entirety and with lack of specificity as showing each

23  and every limitation of claim 1 of the '319 Patent. However, this reference did not

24  teach or suggest limitations of claim 1. A person of ordinary skill in this technical

25  field, after reading the '319 Patent and the closest prior art, over which the '319

26  Patent was found to be patentable by the Board of Patent Appeals and Interferences,

27  would readily realize there was nothing in DSN (the entire document being broadly

28  cited), that came within the teaching of at least the claim 1 limitations identified

42

1  above.  Therefore, stating that all limitations of at least claim 1 are met by DSN is a

2  misrepresentation to the USPTO.

3       130.  <u>Cumulative to Prior Art of Record</u>.  In furtherance of their effort to

4  deceive the USPTO into determining that a substantial new question of patentability

5  was presented by the request, Defendants stated that "all of these prior art references

6  are closer to the claimed subject matter of the Lockwood '319 Patent than are the

7  prior art references that were of record in the file of the Lockwood '319 Patent," and

8  that "these new prior art references provide teachings not provided during

9  prosecution of the Lockwood '319 Patent."  Defendants knew or should have known

10 these statements were false.  In fact, none of the references submitted with

11 Defendants' request rose to the level of the closest prior art of record, for example

12 Lockwood's U.S. Patent No. 4,359,631 ("'631 Patent"), over which the '319 Patent

13 was found to be patentable by the Board of Patent Appeals and Interferences, and

14 which, together with its reissue U.S. Patent No. Re. 32,115, has been cited by 209

15 subsequently issued U.S. patents.  Defendants knew or should have known that the

16 references they submitted were merely cumulative to the closest prior art of record,

17 for example, the '631 Patent, and did not raise a substantial new question as to the

18 patentability of the '319 Patent, but they falsely asserted that "all" of their references

19 were superior to the prior art of record and "provid[ed] teachings not provided" in

20 the '319 Patent.  A person of ordinary skill in this technical field, after reading the

21 '631 Patent and other prior art of record, would readily realize that the references

22 submitted by Defendants did not even rise to the level of the closest prior art of

23 record in the file of the '319 Patent.  Therefore, Defendants' statements that the

24 references they submitted are closer to the claimed subject matter of the '319 Patent

25 than the prior art of record and provide teachings not provided by the '319 Patent are

26 misrepresentations to the USPTO and were made for the purpose of deceiving the

27 USPTO in order to harm Plaintiffs.

28 / / /

COMPLAINT

131.   On May 5, 2003, further continuing and supporting their scheme to defraud the USPTO and to harm the property rights of Plaintiffs, Defendant Sheppard Mullin filed a Motion to Stay the Enforcement Proceeding in the District Court of the Southern District of California by mailing fraudulent papers, in violation of 18 U.S.C. § 1341, to the Court stating:

   a.   "The PanIP Group Defense Fund, Inc., a group made up of sixteen defendants in this and three other related patent cases, has identified extensive, published prior art dating to the early 1980's that unequivocally anticipated the alleged inventions in both U.S. Patent Nos. 5,576,951 (the '951 Patent) and 6,289,319 (the '319 Patent)."

   b.   "These requests seek reexamination of the '951 and '319 Patents based on prior art references that clearly anticipate and/or render obvious all the elements of independent claims 1 through 10 of the '951 Patent and independent claim 1 of the '319 Patent."

   c.   "In addition, the requests seek reexamination of dependent claims 2-4 and 6-9 of the '951 Patent and claims 2-6 of the '319 Patent based on anticipation and/or obviousness."

   d.   "These requests for reexamination are all based on published prior art references that were not considered by the examiner during prosecution of the '951 and '319 Patents."

   e.   "None of this prior art was identified or considered during prosecution of the patents."

   f.   "It is likely that reexamination will result in a determination by the USPTO that the patents-in-suit are invalid."

   g.   "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge."

44

1        132.   On May 6, 2003, further continuing and supporting their scheme to

2 defraud the USPTO and to harm the property rights of Plaintiffs, Defendant

3 Sheppard Mullin, to delay court proceedings in the District Court of the Southern

4 District of California, mailed fraudulent papers, in violation of 18 U.S.C. §1341, to

5 the Court stating:

6               h.    "PGDF's reexamination requests are based on multiple prior art

7                    references that were not in the record during prosecution of these

8                    patents.   These references predate the earliest patent applications

9                    filed by Mr. Lockwood, and clearly anticipate and/or render obvious

10                    the inventions allegedly represented in the '951 and '319 Patents."

11               i.    "Defendants have identified prior art that they firmly believe

12                    renders Plaintiff's [Lockwood's] patents invalid and they have

13                    invoked a procedure to test that belief before the U.S PTO."

14               j.    "Further, since the reexamination of the patents will be an ex

15                    parte proceeding they have no incentive to settle this case pending a

16                    decision on their motion to stay."

17        133.   On May 16, 2003, Defendants' intention to deprive Plaintiffs, through

18 fraud on the USPTO, of the opportunity to enforce the valid property rights in the

19 Patents was further evidenced by their fraudulent statements in a letter mailed to the

20 Magistrate Judge James F. Stiven of the U.S. District Court for the Southern District

21 of California, in violation of 18 U.S.C. 1341, stating:

22               k.    "Here, both patents have been challenged based on anticipation

23                    under 35 U.S.C. § 102(b) and obviousness under 35 U.S.C. § 103.

24                    The requests are based on numerous prior art references dating to the

25                    early 1980's, before the filing date of the earliest patents in the

26                    family of patents that includes the patents in suit.  U.S. Patent No.

27                    6,289,319 (the '319 Patent) is challenged *based on ten separate*

28                    *references*, none of which was in the record during examination of

45

                                    COMPLAINT

1  the '319 Patent.  U.S. Patent No. 5,576,951 (the '951 Patent) is

2  *challenged based on five separate references*, none of which was in

3  the record during examination of the '951 Patent.  These reference

4  [sic] clearly anticipate every element of the claimed inventions in

5  both the '319 and '951 Patents."  [Italics in original].

6     l.     "Both requests for reexamination are based on numerous, clearly

7           applicable, published prior art references.   As a result, it is extremely

8           likely that both patents will be ordered into reexamination."

9     134.   In reliance on the deceptive statements of Defendants based upon the

10 Fraudulent Requests, the district court stayed the Enforcement Program pending

11 resolution of the reexamination of the Patents.

12    135.   As a result of Defendants' deceitful statements and reliance on the

13 Fraudulent Requests, the district court granted their Motion to Stay immediately

14 prior to the scheduled Markman hearing which would have adjudicated the

15 infringement of the Patents on the merits, and the Enforcement Proceedings were

16 stayed pending the resolution of the sham reexamination of the Patents unlawfully

17 instigated by Defendants.  This stay had the intended effect of stopping Plaintiffs'

18 Enforcement Program, causing great economic loss and the loss of business

19 relationships in the form of targeted licensing agreements and the use of their Patents

20 for over four years of the seventeen-year life of the Patents.

21    136.   From May 5, 2003 through December 5, 2006,  the Defendants

22 continued their fraudulent scheme to "put this guy [Lockwood and PanIP] out of

23 business" through the continued use of PGDF website by making fraudulent

24 statements on their Internet website, *YouMayBeNext.com,* regarding the

25 enforceability of the Patents and to obtain money from the general public to continue

26 to finance their scheme, in violation of 18 U.S.C. § 1343.

27    137.   To continue and to support of their scheme to defraud, in violation of 18

28 / / /

138.   U.S.C. § 1343, Defendant Sheppard Mullin through the website of the PGDF, *YouMayBeNext.com,* fraudulently stated that it "had identified extensive, published prior art dating to the early 1980's that unequivocally anticipated the alleged inventions in both U.S. Patent Nos. 5,576,951 (the '951 Patent) and 6,289,319 (the '319 Patent)."   Defendant Sheppard Mullin made these statements knowing they were false with the intent that they would be relied upon and to solicit funds in which to invest back into PGDF, which was commissioned, designed, co-managed, overseen and operated by Sheppard Mullin solely to harm Plaintiffs' Patents.

139.   The granting of the Fraudulent Requests for reexamination had the intended effect of proximately causing Plaintiffs severe economic harm in having to defend the Patents before the USPTO and has rendered Plaintiffs unable to use, enforce, sell, or license their Patents for several years over the life of the Patents.

140.   Further, on or about March 19, 2004, Defendants used the existence of the false and Fraudulent Requests and Plaintiffs' severely injured economic situation to coerce Plaintiffs into dismissing the Enforcement Proceedings and execute a Covenant Not to Sue and Release Agreement with PGDF and the defendants, thereby effectively shutting down the Enforcement Program.

141.   The Patents are under a continuing threat of a similar fraud being perpetrated, given that patent laws and the USPTO rules and regulations allow multiple requests for reexaminations even based on the same prior art references, and given that Defendants through PGDF have repeatedly made statements that their goal is to put Plaintiffs out of business.   Under the rules and regulations of the USPTO, Defendants, at any time, may instigate deceptive reexamination proceedings in order to prevent Plaintiffs from ever enforcing their Patents.   Requesters can submit multiple requests while a patent is in reexamination, delaying endlessly the final decision to issue a certificate or to amend claims.   Since May 5, 2003 the Patents have remained under a continuing threat of a repeated fraud being perpetrated, in that

47

1    Defendants have made statements that they intended to put Plaintiff out of business

2    and because the USPTO rules and regulations allow multiple requests for

3    reexamination even using the same purported prior art references.  See 35 U.S.C.A. §

4    303(a) (2002).

5       142.   Under Defendants' threat and under the cloud of reexamination,

6    Plaintiffs were caused the loss of over four years of licensing and royalty revenues

7    from presumptively valid Patents during strong years in the economy.  Many

8    companies refused to license, stating that their reason was because of the

9    reexamination.

10      143.   Over four years after the sham reexamination proceedings were

11   instigated by Defendants, the reexamination proceedings for the Patents resolved

12   completely in Plaintiff's favor, on July 17, 2007 and on January 29, 2008.  The

13   USPTO reconfirmed the patentability of the inventions disclosed and claimed

14   therein, without material change in the scope or breadth of their coverage, thus

15   effectively confirming that none of the Defendants' representations in the Fraudulent

16   Requests about the validity of the inventions disclosed and claimed in the Patents

17   were accurate or created a substantial new question of patentability.

18      144.   As a proximate cause of Defendants' malicious and fraudulent conduct,

19   Plaintiffs have suffered a loss of business reputation and business opportunities.

20      145.   As a proximate cause of Defendants' malicious and fraudulent conduct,

21   Plaintiffs suffered devaluation, loss of profits and other economic loss on the use of

22   the valid Patents in the approximate amount of $35,000,000.

23      146.   As a proximate cause of Defendants' fraudulent and malicious conduct,

24   Plaintiffs have suffered injury to property by being required to expend vast amounts

25   of attorneys' costs and fees to defend valid Patents during the reexamination process

26   which was fraudulently and unlawfully instigated by Defendants.

27   / / /

28   / / /

48

COMPLAINT

# FIFTH CAUSE OF ACTION

## Conspiracy to Violate the Racketeer Influenced Corrupt Organization Act,

## 18 U.S.C. §1962(d)

### (Against All Defendants)

147.   Paragraphs 1 to 146 are incorporated herein.

148.   In April of 2002, Defendant Hangartner was an attorney at the law firm of Liu & Liu in San Diego, California.  In March of 2002, Plaintiff PanIP filed patent infringement complaints against ten electronic commerce.  Defendant Hangartner represented four of the defendants:  Snow Country Ski Shop, Inc., Peekay Corporation, Dickson Supply Co., and Backcountry Experience, Inc.  Defendant Hangartner organized the defendants into an enterprise with a website entitled "Panip Defendants", at URL *www.PanipCase.Homeip.net*, and was responsible for false and misleading articles in newspapers and magazines about the scope and validity of the Patents.  Hangartner's four clients licensed the PanIP patent portfolio on October 28, 2002.  The website was in operation between May 25, 2002 and September 23, 2002. Hangartner's picture and his contact information at Liu & Liu were prominently featured under the "Defendants" link.

149.   PanIP filed patent infringement complaints against several electronic commerce companies on September 11, 2002.  Defendant Hangartner contacted several of these defendants and organized them into the PGDF enterprise following the same pattern of the earlier "Panip Defendants" website, by creating a replica website with the URL *www.YouMayBeNext.com*.

150.   In October 2002, Hangartner left the Liu & Liu law firm and joined Sheppard Mullin with an agreement that Defendant Sheppard Mullin would commission and support the scheme to defraud the USPTO through PGDF's instigation of malicious and fraudulent reexamination proceedings.  Between November 29, 2002 and December 5, 2006, Defendant Hangartner's picture and contact information at Sheppard Mullin were prominently featured on the PGDF

49

1 | website. Defendant Hangartner was promoted to partner at Sheppard Mullin by
2 | February 8, 2005.

3 | 151. In furtherance of the agreement to enter into a scheme to defraud the
4 | USPTO, Defendant Hassid signed the Fraudulent Requests and Defendants mailed
5 | the Fraudulent Requests by U.S. Mail on May 5, 2003 in violation of 18 U.S.C. §
6 | 1341.

7 | 152. On May 5, 2003, further continuing and supporting their scheme to
8 | defraud the USPTO and to harm the property rights of Plaintiffs, Defendant
9 | Sheppard Mullin filed a Motion to Stay the Enforcement Proceeding in the District
10 | Court of the Southern District of California by mailing fraudulent papers, in violation
11 | of 18 U.S.C. § 1341 relying on the malicious reexamination based on the Fraudulent
12 | Requests and making several false statements regarding the validity of the Patents.

13 | 153. On May 6, 2003, further continuing and supporting their scheme to
14 | defraud the USPTO and to harm the property rights of Plaintiffs, Defendant
15 | Sheppard Mullin, to delay court proceedings in the District Court of the Southern
16 | District of California, mailed fraudulent and deceptive statements, in violation of 18
17 | U.S.C. §1341, to the Court.

18 | 154. On May 16, 2003, Defendants' intention to deprive Plaintiffs, through
19 | fraud on the USPTO, of the opportunity to enforce the valid property rights in the
20 | Patents was further evidenced by their fraudulent statements in a letter mailed to the
21 | Magistrate Judge James F. Stiven of the U.S. District Court for the Southern District
22 | of California, in violation of 18 U.S.C. §1341.

23 | 155. As a result of Defendants' deceitful statements and reliance on the
24 | Fraudulent Requests, the district court granted their Motion to Stay immediately
25 | prior to the scheduled "Markman" hearing which would have adjudicated the
26 | infringement on the merits, and the Enforcement Proceedings were stayed pending
27 | the resolution of the sham reexamination of the Patents unlawfully instigated by
28 |

1    Defendants. This stay had the intended effect of shutting down the Plaintiffs' ability

2    to use in any way or to derive benefits from the valid Patents.

3        156. In reliance on the deceptive mischaracterization of alleged pieces of

4    prior art submitted by Defendants in their Fraudulent Requests for reexamination, the

5    USPTO did grant the Fraudulent Requests, which had the intended effect of stopping

6    Plaintiffs' Enforcement Program, causing great economic loss and the loss of

7    business relationships in the form of targeted licensors and the use of their Patents

8    for over four years of the seventeen-year life of the Patents.

9        157. From May 5, 2003 to December 5, 2006, the Defendants continued and

10    supported their fraudulent scheme to "put this guy [Lockwood and PanIP] out of

11    business" and to harm the rights to the Patents through the continued use of PGDF

12    website by making fraudulent statements on their Internet website,

13    *YouMayBeNext.com,* regarding the enforceability of the Patents and to obtain money

14    from the general public to continue to finance their scheme.

15        158. To continue and to support of their scheme to defraud, in violation of 18

16    U.S.C. §1343, Defendant Sheppard Mullin through the website of the PGDF,

17    *YouMayBeNext.com,* fraudulently stated that it "had identified extensive, published

18    prior art dating to the early 1980's that unequivocally anticipated the alleged

19    inventions in both U.S. Patent Nos. 5,576,951 (the '951 Patent) and 6,289,319 (the

20    '319 Patent)." Defendant Sheppard Mullin made these statements knowing they

21    were false with the intent that they would be relied upon and to solicit funds in which

22    to invest back into PGDF, which was commissioned, designed, co-managed,

23    overseen and operated by Sheppard Mullin solely to harm Plaintiffs' Patents.

24        159. The granting of the Fraudulent Requests for reexamination had the

25    intended effect of proximately causing Plaintiffs severe economic harm in having to

26    defend the Patents before the USPTO and has rendered Plaintiffs unable to use,

27    enforce, sell, or license their Patents for several years over the life of the Patents.

28    / / /

160.   Further, on or about March 19, 2004, Defendants used the existence of the false and Fraudulent Requests and Plaintiffs' severely injured economic situation to intimidate Plaintiffs into dismissing the Enforcement Proceedings and execute a Covenant Not to Sue and Release Agreement with PGDF and the defendants, thereby effectively shutting down the Enforcement Program.

161.   Further, under the rules and regulations of the USPTO, Defendants at any time may instigate reexamination proceedings in order to prevent Plaintiff from ever enforcing his Patents, which is the stated intent of the Defendants.

162.   Under Defendants' threat and under the cloud of reexamination, Plaintiffs were caused the loss of over four years of licensing and royalty revenues from presumptively valid Patents during strong years in the economy.  Many companies refused to license, stating that their reason was because of the reexaminations.

163.   For over a four and one-half year period, Defendants have agreed to perpetrate their fraud by demonstrating a total disregard for abiding by federal law governing the duty of candor, USPTO rules and regulations and the termination of their fraud. Defendant Sheppard Mullin was mailed all correspondence between the USPTO and Plaintiffs' attorney, which described their fraud, but Defendants ignored their duty to inform the USPTO.  Defendants ignored their responsibilities arising from having submitted the two Fraudulent Requests for reexamination and failed to abide by the rules and regulations of the USPTO and their duty of candor.

164.   Since May 5, 2003 the Patents have remained under a continuing threat of a repeated fraud being perpetrated, in that Defendants have made statements that they intended to put Plaintiffs out of business and because the USPTO rules and regulations allow multiple requests for reexaminations even using the same purported prior art references.  See 35 U.S.C.A. § 303(a) (2002).

165.   As a proximate cause of Defendants' malicious and fraudulent conduct, Plaintiffs have suffered a loss of business reputation and business opportunities.

52

166.   As a proximate cause of Defendants' malicious and fraudulent conduct, Plaintiffs suffered devaluation, loss of profits and other economic loss on the use of the valid Patents in the approximate amount of $35,000,000.

167.   As a proximate cause of Defendants' fraudulent and malicious conduct, Plaintiffs have suffered injury to property by being required to expend vast amounts of attorneys' costs and fees to defend the valid Patents during the reexamination process which was fraudulently and unlawfully instigated by Defendants.

168.   After the December 17, 2006 meeting between Plaintiffs' attorneys and Defendant Sheppard Mullin, any trace, listing, or contact information for Mr. Hangartner was removed from the Sheppard Mullin website between December 23, 2006 and January 2, 2007 and he was no longer employed by the firm.   He is currently a sole-practitioner working in San Diego, California, as an intellectual property attorney.

169.   Steve P. Hassid was an associate attorney at Sheppard, Mullin, Richter & Hampton's Los Angeles office in 2002 and left the firm around February of 2006.

WHEREFORE, Plaintiffs pray for relief:

1.   For compensatory damages, including but not limited to lost profits, licensing revenues, royalties, loss of business reputation, expenses, according to proof, but believed by Plaintiffs to be not less than $35,000,000;

2.   For Plaintiffs' attorneys' fees and costs in defending against the sham reexamination proceedings instigated by Defendants;

3.   For treble damages under 18 U.S.C. 1964(c);

4.   For a finding that Defendants' conduct has been willful and/or malicious;

/ / /

/ / /

/ / /

53

5.    For punitive and enhanced damages;

6.    For Plaintiffs' attorneys' fees and costs in prosecuting this action;

7.    For such other and further relief as the circumstances and proof at trial warrant.


Dated:  July 15, 2009                    Respectfully Submitted,

                                         HOWARTH & SMITH
                                         DON HOWARTH
                                         SUZELLE M. SMITH
                                         LEE CRAWFORD-BOYD


                                         By: _____
                                                   Lee Crawford-Boyd

                                         Attorneys for Plaintiff
                                         LAWRENCE B. LOCKWOOD


                        **DEMAND FOR JURY TRIAL**

        Plaintiffs hereby demand a trial by jury.


Dated:  July 15, 2009                    Respectfully Submitted,

                                         HOWARTH & SMITH
                                         DON HOWARTH
                                         SUZELLE M. SMITH
                                         LEE CRAWFORD-BOYD


                                         By: _____
                                                   Lee Crawford-Boyd

                                         Attorneys for Plaintiff
                                         LAWRENCE B. LOCKWOOD


                                   54

09:P2233332.doc                                        COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John F. Walter and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV09- 5157 JFW (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [_] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [_] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE B. LOCKWOOD, PANIP, LLC, <br><br> PLAINTIFF(S) <br><br> v. <br><br> SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP, JONATHAN HANGARTNER; STEVE P. HASSID, <br><br> DEFENDANT(S). | CASE NUMBER <br><br> **CV09-5157 JFW (AGRx)** <br><br><br> **SUMMONS** |

TO:     DEFENDANT(S):     _____

   A lawsuit has been filed against you.

   Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Howarth & Smith _____ , whose address is  523 West Sixth Street, Suite 728, Los Angeles, California  90014 _____ .  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __JUL 1 5 2009__

By: _Natalie Hungaria_
     Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| LAWRENCE B. LOCKWOOD, PANIP, LLC | SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP., JONATHAN HANGARTNER; STEVE P. HASSID |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| HOWARTH & SMITH    (213) 955-9400<br>523 West Sixth Street, Suite 728<br>Los Angeles, California 90014 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff      ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes    ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No       ☑ **MONEY DEMANDED IN COMPLAINT: $** According to proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Action brought for claims arising under U.S. patent laws subject to 28 U.S.C. section 1338(a) and claims arising under 18 U.S.C. section 1964(c).

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 370 Other Fraud | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☑ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | ☐ 690 Other | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | ☐ 440 Other Civil Rights | | |

**FOR OFFICE USE ONLY:    Case Number:** CV09-5157

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                              ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Lawrence B. Lockwood - San Diego, California<br>PanIP, LLC - San Diego, California |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Sheppard, Mullin, Richter & Hampton, LLP - Los Angeles, California<br>Steve P. Hassid - Los Angeles, California | Jonathan Hangartner - San Diego, California |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, California - All claims |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  July 15, 2009

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |