GREGORY A. LONG, Cal. Bar No. 57642
glong@sheppardmullin.com
GARY A. CLARK, Cal. Bar No. 65455
gclark@sheppardmullin.com
DARREN M. FRANKLIN, Cal. Bar No. 210939
dfranklin@sheppardmullin.com
DENNIS J. SMITH, Cal. Bar No. 233842
djsmith@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
333 South Hope Street, 43rd Floor
Los Angeles, California  90071-1422
Telephone:  (213) 620-1780
Facsimile:  (213) 620-1398

Attorneys for Defendants
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP,
JONATHAN HANGARTNER and STEVE P. HASSID

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LAWRENCE B. LOCKWOOD, PANIP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP, JONATHAN HANGARTNER, STEVE P. HASSID,<br><br>Defendants. | Case No. CV 09-5157 JFW (AGRx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT (REDACTED VERSION)**<br><br>[**FED. R. CIV. P.** 12(b)(6)]<br><br><u>Hearing</u><br>Date:  November 9, 2009<br>Time:  1:30 p.m.<br>Ctrm:  16 - Spring, Hon. John F. Walter |

## REDACTED VERSION FOR PUBLIC VIEWING

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ....................................................................................2

      A.   Plaintiffs' "Enforcement Program" and Patent Infringement
           Lawsuits ......................................................................................3

      B.   The Requests for Reexamination Filed in the PTO ...................4

      C.   The Stipulation to Stay Litigation and Settlement Signed by
           Plaintiffs .....................................................................................5

      D.   The State Court Lawsuit .............................................................6

III.  DISCUSSION .......................................................................................6

      A.   The Court Should Dismiss Plaintiffs' RICO Claims .................6

           1.   RICO was not designed to stop law firms from doing legal
                work. ...................................................................................6

           2.   Plaintiffs' RICO claims are time-barred. ...........................7

           3.   Plaintiffs fail to state a pattern of racketeering activity ....9

           4.   The PTO's duty to conduct an independent investigation
                and the stipulated stay signed by PanIP negate proximate
                cause ..................................................................................12

      B.   The Court Should Dismiss Plaintiffs' Malicious Prosecution Claim ......14

           1.   The malicious prosecution claim is time-barred. ............14

           2.   Lockwood's malicious prosecution claim fails because of
                the independent investigation doctrine. ..........................16

           3.   Plaintiffs' malicious prosecution claim is preempted by
                federal law ........................................................................18

      C.   The Court Should Dismiss Plaintiffs' Claim for Interference with
           Prospective Economic Advantage .............................................22

-i-

       1.     Defendants' actions were covered by CAL. CIV. CODE § 47(b)..........................................................................22

       2.     Plaintiffs' claim for interference with prospective economic advantage is time-barred.........................................24

D.    The Court Should Dismiss Plaintiffs' Claim for Fraud ...........................24

       1.     Defendants' actions were covered by CAL. CIV. CODE § 47(b)..........................................................................24

       2.     Plaintiffs' fraud claim is preempted by federal law. ....................25

       3.     Defendants' actions did not constitute fraud. ...............................25

       4.     Plaintiffs' fraud claim is time-barred..............................................25

IV.    CONCLUSION ..............................................................................................25

W02-WEST:1DAF1\402093571.9

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS

TABLE OF AUTHORITIES

Cases                                                                    Page

Abbott Labs. v. Brennan,
    952 F.2d 1346 (Fed. Cir. 1991) ...................................................21

Agency Holding Corp. v. Malley-Duff & Assocs.,
    483 U.S. 143 (1987) .....................................................................7

Akzo N.V. v. United States Int'l Trade Comm'n,
    808 F.2d 1471 (Fed. Cir. 1986) ...................................................7

American Airlines, Inc. v. Lockwood,
    515 U.S. 1121 (1995) ...................................................................3

Aronson v. Quick Point Pencil Co.,
    440 U.S. 257 (1979) ............................................................. 18, 19

Auburn Med. Ctr., Inc. v. Andrus,
    9 F. Supp. 2d 1291 (M.D. Ala. 1998) ........................................7

Auersperg v. von Bulow,
    657 F. Supp. 1134 (S.D.N.Y. 1987) ...........................................7

Augusta v. United Serv. Auto. Ass'n,
    13 Cal. App. 4th 4 (1993) ...........................................................24

Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,
    489 U.S. 141 (1989) ...................................................................18

Buckman Co. v. Plaintiffs' Legal Committee,
    531 U.S. 341 (2001) ................................................ 1, 7, 18, 20

Butterworth v. United States ex rel. Hoe,
    112 U.S. 50 (1884) .....................................................................23

Canyon County v. Syngenta Seeds, Inc.,
    519 F.3d 969 (9th Cir. 2008) .....................................................12

Zamos v. Stroud,
    32 Cal. 4th 958 (2004) ...............................................................15

ComputerXpress, v. Jackson
    93 Cal. App. 4th 993 (2001) .......................................................22

Conroy v. Regents of Univ. of Cal.,
    45 Cal. 4th 1244 (2009) .............................................................25

Dow Chemical Co. v. Exxon Corp.,
    139 F.3d 1470 (Fed. Cir. 1998) .................................................21

Grimmett v. Brown,
    75 F.3d 506 (9th Cir. 1996) ..................................................9, 10

-iii-

H.J., Inc. v. Northwestern Bell Tel.,
    492 U.S. 229 (1989) ............................................................................ 10, 11

Holmes v. Sec. Investor Prot. Corp.,
    503 U.S. 258 (1992) ................................................................................. 12

Hunter Douglas, Inc. v. Harmonic Design, Inc.,
    153 F.3d 1318 (Fed. Cir. 1998) ............................................................... 18

In re Opprecht,
    868 F.2d 1264 (Fed. Cir. 1989) ............................................................... 23

In re Recreative Techs. Corp.,
    83 F.3d 1394 (Fed. Cir. 1996) ................................................................. 19

In re Swanson,
    540 F.3d 1368 (Fed. Cir. 2008) ............................................................... 19

Kewanee Oil Co. v. Bicron Corp.,
    416 U.S. 470 (1974) ................................................................................. 18

Knievel v. ESPN,
    393 F.3d 1068 (9th Cir. 2005) ................................................................ 2, 9

Living Designs, Inc. v. E.I. Dupont De Nemours & Co.,
    431 F.3d 353 (9th Cir. 2005) ..................................................................... 8

Lockwood v. American Airlines, Inc.,
    107 F.3d 1565 (Fed. Cir. 1997) ................................................................. 3

Lockwood v. Sheppard, Mullin, Richter & Hampton,
    173 Cal. App. 4th 675 (2009) .................................................................... 6

Markman v. Westview Instruments, Inc.,
    52 F.3d 967 (Fed. Cir. 1995) .............................................................. 9, 23

Meier v. Musburger,
    588 F. Supp. 2d 883 (N.D. Ill. 2008) ......................................................... 6

Midwest Indus., Inc. v. Karavan Trailers, Inc.,
    175 F.3d 1356 (Fed. Cir. 1999) ............................................................... 18

Morrow v. Blessing,
    No. 04-1161, 2004 WL 2223311 (E.D. Pa. Sept. 29, 2004) ............... 6, 7

Nathan Kimmel, Inc. v. DowElanco,
    275 F.3d 1199 (9th Cir. 2002) ................................................................. 21

Norgart v. Upjohn Co.,
    21 Cal. 4th 383 (1999) ......................................................................... 14, 24

PanIP LLC and Lawrence Lockwood v. PanIP Group Defense Fund, Inc. et al.,
    Case No. 3:02-cv-02173-B-JFS (S.D. Cal.) ........................................... 5, 9

-iv-

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Patlex Corp. v. Mossinghoff,
    758 F.2d 594 (Fed. Cir. 1985) ................................................................19

Patlex Corp. v. Mossinghoff,
    771 F.2d 480 (Fed. Cir. 1985) .............................................. 12, 13, 17, 20

Picton v. Anderson Union High Sch. Dist.,
    50 Cal. App. 4th 726 (1996) .................................................................22

Rothman v. Target Corp.,
    556 F.3d 1310 (Fed. Cir. 2009) ..............................................................7

Rusheen v. Cohen,
    37 Cal. 4th 1048 (2006) ........................................................................22

Rutherford v. Johnson,
    250 Cal. App. 2d 316 (1967) .................................................................15

Sole Energy Co. v. Petrominerals Corp.,
    128 Cal. App. 4th 212 (2005) ................................................................24

Spitler v. Children's Institute Int'l,
    11 Cal. App. 4th 432 (1992) .................................................................22

Stanwyck v. Horne,
    146 Cal. App. 3d 450 (1983) ........................................................... 17, 18

Stavropoulos v. Superior Court,
    141 Cal. App. 4th 190 (2006) ................................................................14

Stolz v. Wong Communications Ltd.,
    25 Cal. App. 4th 1811 (1994) ................................................................15

Syntex (U.S.A.), Inc. v. U.S. Patent & Trademark Office,
    882 F.2d 1570 (Fed. Cir. 1989) ............................................................24

Ultra-Precision Mfg., Ltd. v. Ford Motor Co.,
    411 F.3d 1369 (Fed. Cir. 2005) ...................................................... 18, 19

United States v. American Bell Tel. Co.,
    128 U.S. 315 (1888) ..............................................................................23

Werner v. Hearst Publ., Inc.,
    65 Cal. App. 2d 667 (1944) ........................................................ 16, 17, 18

Western Elec. Co. v. Piezo Tech., Inc.,
    860 F.2d 428 (Fed. Cir. 1988) ..............................................................23

Young v. Lumenis, Inc.,
    492 F.3d 1336 (Fed. Cir. 2007) ..............................................................7

Statutes                                                               Page

18 U.S.C. § 1961(5) ....................................................................................10

-v-

18 U.S.C. § 1962 ................................................................................................12

18 U.S.C. § 1962(c) ...........................................................................................10

18 U.S.C. § 1964(c) ......................................................................................10, 12

35 U.S.C. § 301 ..................................................................................................7

35 U.S.C. §§ 301-307 .........................................................................................4

35 U.S.C. § 302 ................................................................................7, 11, 19, 23

35 U.S.C. § 303 ................................................................................................19

35 U.S.C. § 303(a) ..................................................................................12, 17, 18

35 U.S.C. § 303(b) ..............................................................................................8

35 U.S.C. § 304 ................................................................................................19

Cal. Civ. Code § 47(b) ..................................................................................22, 24

Cal. Civ. Proc. Code § 335.1 .............................................................................14

Cal. Civ. Proc. Code § 338(d) ...........................................................................25

Cal. Civ. Proc. Code § 339(1) ...........................................................................24

<u>Regulations</u>                                                                                    Page

37 C.F.R. § 1.515(a) ..........................................................................................17

37 C.F.R. § 1.530(a) ..........................................................................................15

37 C.F.R. § 1.550(g) ..........................................................................................24

<u>Other</u>                                                                                          Page

Fed. R. Civ. P. 9(b) ...........................................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-vi-

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## I.   **INTRODUCTION**

Plaintiffs' complaint is a rehash of state law claims already found to be meritless and/or time barred in Los Angeles Superior Court, onto which Plaintiffs have now tacked similarly meritless and time-barred RICO claims.  The case is here only because, after losing in Superior Court, Plaintiff Lawrence B. Lockwood prevailed on the California Court of Appeal to dismiss his own complaint for lack of jurisdiction on the ground that it raised substantial issues of patent law.  Plaintiffs' claims have not improved by re-pleading them here in federal court.

The gravamen of Plaintiffs' complaint is this:  Seven years ago, Plaintiff PanIP, LLC filed patent infringement lawsuits against twenty small businesses. Defendants Sheppard Mullin and Jonathan Hangartner allegedly formed those businesses into a joint defense group and allegedly established a website to recruit others and to solicit funding to fight Plaintiffs.  The businesses retained Sheppard Mullin and Hangartner to defend against PanIP's infringement claims.  Sheppard Mullin then allegedly filed fraudulent requests asking the U.S. Patent and Trademark Office ("PTO") to reexamine Plaintiffs' patents.  The alleged "fraud" was in mischaracterizing the prior art in the reexamination requests.  Sheppard Mullin thereafter allegedly induced the district court to grant a motion to stay Plaintiffs' infringement lawsuits based upon the fraudulent reexamination requests.  This allegedly prevented Plaintiffs from enforcing the patents.

Plaintiffs' allegations are recklessly false, but even taking those allegations at face value, Plaintiffs' claims are fatally defective.  There simply is no private cause of action for such alleged fraud.  Plaintiffs' state law claims are "fraud-on-the-agency claims" of the type found preempted by federal law in *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001) (holding fraud-on-the-FDA claims preempted by federal law).  And, even if Plaintiffs could plead fraud, Defendants' alleged misconduct in requesting reexamination was not fraudulent.  Reexamination, by law, is based *solely* on the information contained *within the four corners* of the

-1-

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1  patents and printed publications relied on as prior art by the requester, *not* the

2  requester's characterizations of them, and the PTO *independently* assesses the prior

3  art *before* granting reexamination.  The requester's arguments cannot constitute fraud.

4         For these and other reasons discussed herein — including that Plaintiffs'

5  state law claims are barred by applicable statutes of limitation and litigation privilege

6  — the state law claims should be dismissed.[1]

7         Plaintiffs' RICO claims fare no better.  Not only was there no fraud on

8  the PTO, but other facts the Court can consider under the incorporation-by-reference

9  doctrine[2] are fatal to Plaintiffs' claims.  For example, the reexamination requests

10  were both filed *on the same day*, and that was the end of it; Defendants were

11  prohibited from any further filings.  Also, Defendants did *not* mail the motion to stay

12  Plaintiffs' infringement lawsuits to the district court, and the district court did *not*

13  grant the motion — *Plaintiffs stipulated to the stay*.

14

15                          REDACTED

16         In addition to being barred by the statute of limitations, the RICO claims

17  fail to state an actionable pattern of racketeering activity; fail to show standing,

18  reliance, and proximate cause in light of the PTO's independent investigation

19  requirement and the stipulated stay of the litigation; and fail to show how Plaintiffs

20  can maintain their RICO claims in view of the settlement and release.

21         **II.    BACKGROUND**

22         Plaintiff Lockwood owns U.S. Patent Nos. 5,576,951 and 6,289,319 (the

23  "Patents").  The Patents generally pertain to interactive, searchable computerized

---

24  [1] Defendants are concurrently filing a companion brief in support of their special
25  motion to strike Plaintiffs' state law claims under California's Anti-SLAPP Law.
    That brief makes additional arguments supporting Defendants' Motion to Dismiss.

26  [2] The incorporation-by-reference doctrine applies "to situations in which the plaintiff's
    claim depends on the contents of a document, the defendant attaches the document to
27  its motion to dismiss, and the parties do not dispute the authenticity of the document,
    even though the plaintiff does not explicitly allege the contents of that document in
28  the complaint."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

MEMORANDUM OF POINTS AND AUTHORITIES IN
                                     SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1 systems for selecting and ordering information, goods, and services.  (*Id.* ¶¶ 20-21.)

2 **A.     Plaintiffs' "Enforcement Program" and Patent Infringement Lawsuits**

3          Lockwood is a sophisticated litigant and had ample experience with the

4 federal courts prior to the proceedings at issue in the Complaint.  In 1991, he sued

5 American Airlines, Inc. for infringement of other patents.  (Compl. ¶ 1.)  Lockwood

6 litigated all the way to the U.S. Supreme Court, *see American Airlines, Inc. v.*

7 *Lockwood*, 515 U.S. 1121 (1995), though he ultimately lost the case hands down, *see*

8 *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565 (Fed. Cir. 1997).

9          Having taken on big business and lost, Lockwood adopted a strategy

10 through his company, PanIP, of going after smaller fish.  (*See* Compl. ¶ 27.)  The

11 strategy was to find companies — generally "mom and pop" businesses — that had

12 enough money to pay a "license fee" of a few thousand dollars, but not enough to

13 contest the infringement claims, much less litigate a patent infringement case in a

14 distant forum.  During 2002, PanIP sued at least twenty businesses in the Southern

15 District of California for allegedly infringing the Patents.[3]

16          One of the companies that PanIP sued was Debrand Fine Chocolates of

17 Indiana.  Debrand, though only a small business, decided to fight what its owners

18 thought were suspect patents being promoted by a patent troll.  The present Complaint

19 generally alleges that Defendants Sheppard Mullin and Hangartner, then a Sheppard

20 Mullin attorney, contacted Debrand and other PanIP defendants, eventually

21 establishing a website at www.YouMayBeNext.com.  Through the website, Sheppard

22 Mullin and Hangartner allegedly brought together a group of PanIP defendants and

23 formed the PanIP Group Defense Fund, Inc. ("PGDF").  (Compl. ¶¶ 4, 31-33.)

24 Debrand and other PanIP defendants also hired Sheppard Mullin and Hangartner as

25 their counsel to defend them against PanIP's allegations of infringement.  (*Id.* ¶¶ 28-

26

27 [3] Defendants request that the Court take judicial notice of the public U.S. District
   Court papers and docket reports attached as Exhibits A-D to the Request for Judicial
28 Notice ("RJN").

-3-

1   29.)  By May 2003, Sheppard Mullin and Hangartner had been involved in defending

2   twenty clients against patent infringement claims brought by PanIP in four separate

3   federal cases.  (*Id.* ¶¶ 28-29; RJN, Exhs. A-D.)

4   **B.      The Requests for Reexamination Filed in the PTO**

5           As was their right, Sheppard Mullin on behalf of its clients filed requests

6   for reexamination of the Patents on May 5, 2003, while many of PanIP's lawsuits

7   were pending.  Defendant Hassid, then a Sheppard Mullin associate, signed the

8   requests.  (Compl. ¶¶ 38, 39.)  The same day, Sheppard Mullin filed a motion to stay

9   the lawsuits that PanIP and Lockwood had brought in the Southern District of

10  California, citing the reexamination requests.  (*Id.* ¶ 65.)  The motion was *hand-*

11  *delivered* to the Court, *not mailed*, as evidenced by the fact that the Court file-

12  stamped the motion the same day as Sheppard Mullin signed it.  (RJN, Exh. A.)

13          "Reexamination" is a quasi-judicial process by which any person may

14  (1) cite prior patents and publications as prior art to the PTO concerning the validity

15  of the claims of an issued patent, and (2) ask that the PTO reexamine the claims of the

16  issued patent in light of that prior art.  Upon such a request, the PTO independently

17  reviews the prior art and determines whether the request raises a substantial new

18  question of patentability.  If the PTO determines that such a new question exists, then

19  the patent claims are reexamined according to the procedures for initial examination.

20  The patentee may appeal any adverse determination to the Board of Patent Appeals

21  and Interferences within the PTO and to the federal courts.  35 U.S.C. §§ 301-307.

22          The Complaint challenges Sheppard Mullin's characterization of the

23  patents and publications submitted to the PTO.  For example, it alleges that Sheppard

24  Mullin represented to the PTO that a system described in a 1986 manual titled

25  "Electronic Mall" was "available to the public" but did not note that the manual itself

26  is marked "confidential and proprietary."  (Compl. ¶ 50.)  It also alleges that Sheppard

27  Mullin represented that a patent (the "Ivis" reference) contained "teachings not

28  provided during prosecution of the Lockwood '319 Patent" but did not note that the

-4-

1    Ivis reference had been of record in the file of the "grandparent" patent application to

2    the '319 patent.  (*Id.* ¶ 51.)

3    **C.**    **The Stipulation to Stay Litigation and Settlement Signed by Plaintiffs**

4             On June 2, 2003, while the motion to stay was pending, PanIP *stipulated*

5    to stay the lawsuits in the Southern District of California.  The court approved the

6    stipulation on June 5, 2003.  (RJN, Exhs. A-D.)  The PTO followed by granting the

7    reexamination requests for the '951 patent on July 7, 2003, and for the '319 patent on

8    July 29, 2003.  (Compl. ¶ 70.)[4]  On August 26, 2003, Judge Brewster denied without

9    prejudice all pending motions in light of the fact that "the parties agreed to a

10   Stipulation and Order staying all proceedings in this litigation pending the PTO's

11   resolution of a request to reexamine the '951 and '319 Patents."  (RJN, Exhs. A-D.)

12   Reexamination proceedings ensued in the PTO on the issue of patentability.

13   Lockwood allegedly prevailed.  (*Id.* ¶¶ 77-79.)

14            In the meantime, on November 4, 2002, Lockwood and PanIP sued

15   PGDF, Debrand, Debrand's founder/president, and Debrand's secretary/treasurer in

16   *PanIP LLC and Lawrence Lockwood v. PanIP Group Defense Fund, Inc. et al.*, Case

17   No. 3:02-cv-02173-B-JFS (S.D. Cal.), alleging trademark infringement, unfair

18   competition, and defamation on the PGDF website.  (RJN, Exh. E.)  Sheppard Mullin

19   represented the defendants in those actions and prevailed in part on an Anti-SLAPP

20   motion on grounds of immunity under the Communications Decency Act among other

21   things, leading to dismissal of the trademark infringement, unfair competition, and

22   defamation claims and a net award of $19,073.43 in attorneys' fees and costs.  (*Id.*)

23            On March 19, 2004, Lockwood and PanIP settled with all of Sheppard

24   Mullin's clients.

25                                      REDACTED

26

27   _____

     [4] Defendants request that the Court take judicial notice of the public orders granting
28     the reexamination requests, attached as Exhs. H and I to the RJN.

MEMORANDUM OF POINTS AND AUTHORITIES IN
                                                   SUPPORT OF DEFENDANTS' MOTION TO DISMISS

REDACTED

**D.     The State Court Lawsuit**

On June 4, 2007, Lockwood sued Sheppard Mullin and Hangartner in Los Angeles Superior Court for interference with prospective economic advantage. In response, Sheppard Mullin and Hangartner filed an Anti-SLAPP motion, prompting Lockwood to file a first amended complaint adding claims for malicious prosecution and fraud, which in turn elicited a second Anti-SLAPP motion. The motions argued the California litigation privilege and statutes of limitation, among other things. The court found Lockwood's claims meritless and/or time-barred, and entered judgment against Lockwood. (RJN, Exhs. L & M.) However, Lockwood convinced the Court of Appeal to vacate the judgment on jurisdictional grounds. *Lockwood v. Sheppard, Mullin, Richter & Hampton*, 173 Cal. App. 4th 675 (2009).

**III.     DISCUSSION**

**A.     The Court Should Dismiss Plaintiffs' RICO Claims**

**1.     RICO was not designed to stop law firms from doing legal work.**

Plaintiffs' Complaint boils down to the assertion that Defendants, a law firm and two of its attorneys, breached their duty of candor to the PTO and to the courts while representing their clients in a dispute against Plaintiffs. This conduct does not constitute mail fraud and does not rise to the level of organized criminal activity that RICO was designed to remedy. "[A] scheme or artifice to defraud under the mail or wire fraud statutes is not satisfied by merely alleging unethical conduct by a lawyer." *Meier v. Musburger*, 588 F. Supp. 2d 883, 902 (N.D. Ill. 2008); *see also Morrow v. Blessing*, No. 04-1161, 2004 WL 2223311, at *4 (E.D. Pa. Sept. 29, 2004) ("[S]uch conduct [attaching allegedly false letters to legal documents in state court custody proceedings] by a lawyer in the context of representing clients in litigation simply cannot constitute mail fraud under RICO and, therefore, cannot constitute a

-6-

1  RICO predicate act.").

2          For attorney conduct to give rise to RICO liability, the attorneys must go

3  "well beyond their capacities as legal representatives." *Morrow*, 2004 WL 2223311,

4  at *5. Here, there is no allegation that Defendants suborned perjury or falsified

5  evidence. *See id.* The reexamination statutes, 35 U.S.C. §§ 301, 302, state that *only*

6  "patents or printed publications" may form the basis of reexamination. Plaintiffs

7  concede that the publications and patents Defendants submitted in requesting

8  reexamination were authentic, but allege that Defendants misconstrued them to the

9  PTO. There is no fraud or other impropriety in attorney argument interpreting what

10  the prior art discloses, particularly when the PTO has the prior art and is free to reach

11  its own conclusion. *See Rothman v. Target Corp.*, 556 F.3d 1310, 1329 (Fed. Cir.

12  2009); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1348 (Fed. Cir. 2007); *Akzo N.V. v.*

13  *United States Int'l Trade Comm'n*, 808 F.2d 1471 (Fed. Cir. 1986).

14          Plaintiffs are simply trying to shoehorn their time-barred malicious

15  prosecution claim into the RICO statute. It is well established that this is improper.

16  "[T]he actions underlying claims for malicious prosecution, or analogous actions in

17  the litigation context, will not support a RICO action." *Auburn Med. Ctr., Inc. v.*

18  *Andrus*, 9 F. Supp. 2d 1291, 1298 (M.D. Ala. 1998) (citing a dozen other cases for the

19  same point). This is because, "[t]o recognize malicious prosecution as a RICO

20  predicate would severely undermine the settled state policy of discouraging such

21  actions." *Id.* at 1299 (quoting *Auersperg v. von Bulow*, 657 F. Supp. 1134, 1144

22  (S.D.N.Y. 1987)). Likewise, if a lawyer files a reexamination request in bad faith, it

23  is not the province of RICO to provide a remedy. Under the above cases, Plaintiffs

24  cannot recast their barred "fraud-on-the-agency" claims as RICO claims to avoid the

25  holding of *Buckman*.

26      **2.**    **Plaintiffs' RICO claims are time-barred.**

27          Plaintiffs' RICO claims are barred by a four-year statute of limitations.

28  *See Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987). "The

-7-

1  limitations period for civil RICO actions begins to run when a plaintiff knows or

2  should know of the injury which is the basis for the action." *Living Designs, Inc. v.*

3  *E.I. Dupont De Nemours & Co.*, 431 F.3d 353, 365 (9th Cir. 2005). Thus, a RICO

4  claim accrues when the plaintiff has "actual or constructive knowledge of [the

5  defendant's] fraud." *Id.* "The plaintiff is deemed to have had constructive knowledge

6  if it had enough information to warrant an investigation which, if reasonably diligent,

7  would have led to discovery of the fraud." *Id.* (quotation omitted).

8          Plaintiffs knew of the alleged fraud and their alleged injuries by July

9  2003. Sheppard Mullin mailed the reexamination requests on May 5, 2003. (Compl.

10  ¶¶ 115, 124, 151.) On May 5 and 7, Sheppard Mullin filed motions to stay

11  proceedings in the Southern District of California. The motions cited the

12  reexamination requests. (*Id.* ¶¶ 131, 152; RJN, Exhs. A-D.) On May 6, 2003 and

13  May 16, 2003, Sheppard Mullin filed additional, allegedly fraudulent papers in the

14  Southern District. (Compl. ¶¶ 132, 133.) On June 2, 2003, PanIP signed the

15  stipulation to stay the lawsuits in the Southern District. Judge Brewster approved the

16  stipulation on June 5, 2003. (RJN, Exhs. A-D.) On July 7, 2003, the PTO granted the

17  reexamination request for the '951 patent, and on July 29, 2003, the PTO granted the

18  request for the '319 patent. (RJN, Exhs. H & I.) Plaintiffs knew about all of these

19  events because they received service copies of everything and signed the stipulation

20  to stay the litigation. They certainly knew about the granting of the requests because

21  the PTO was required to give Lockwood prompt notice of its determination, *see* 35

22  U.S.C. § 303(b), and they knew about Judge Brewster's order dated August 26, 2003

23  referencing the PTO matters because the court sent them a copy.

24          Plaintiffs allege that their injuries began in June 2003 when "the district

25  court granted [Defendants'] Motion to Stay immediately prior to the scheduled

26  Markman hearing which would have adjudicated the infringement of the Patents on

27  the merits." (Compl. ¶ 135.) Aside from the facts that this allegation is false (Judge

28  Brewster did not grant the stay motion but rather approved a stipulation *signed by*

-8-

1   *PanIP*, see RJN, Exhs. A-D) and that a court does not adjudicate infringement at a
2   *Markman* hearing, it is clear that Plaintiffs knew about these alleged injuries more
3   than six years before they filed suit.  Thus, the RICO claims are time-barred.

4          To avoid this result, Plaintiffs claim that "[f]rom May 5, 2003 through
5   December 5, 2006, the Defendants continued their fraudulent scheme . . . through the
6   continued use of the PGDF website . . . " (Compl. ¶ 136.)  The alleged "continued
7   use" of the PGDF website does not restart the statute of limitations.  To restart the
8   statute, Plaintiffs must show a *new and independent injury*.  *See Grimmett v. Brown*,
9   75 F.3d 506, 511 (9th Cir. 1996) Two elements characterize an overt act that will
10  restart the statute of limitations:  "1) It must be a new and independent act that is not
11  merely a reaffirmation of a previous act; and 2) It must inflict new and accumulating
12  injury on the plaintiff."  *Grimmett* 75 F.3d at 513

13         The alleged "continued use" of the website through December 5, 2006
14  was at most a reaffirmation of a previous act, and there is no allegation that this
15  "continued use" inflicted a new injury on Plaintiffs.  Moreover, Plaintiffs allege that
16  they settled their claims (Compl. ¶ 140).

17                              REDACTED

18

19  **3.      Plaintiffs fail to state a pattern of racketeering activity.**

20         Plaintiffs' RICO claims also fail because the Complaint does not allege a
21  "pattern" of racketeering activity.  The elements of a civil RICO claim are:
22  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity

23  _____
    5
24                              REDACTED
    '
25  ')          In March 2004, PGDF removed the website that Plaintiffs
26  found objectionable and replaced it with a completely innocuous website.  (RJN,
    Exh. O.)  The Court may consider the replacement website under the "incorporation
27  by reference" doctrine because Plaintiffs' RICO claims reference the contents of the
28  website. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

MEMORANDUM OF POINTS AND AUTHORITIES IN
                                    SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1  (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or

2  property.'" *Grimmett*, 75 F.3d at 510 (citing 18 U.S.C. §§ 1964(c), 1962(c)).

3        A "pattern" requires (1) two predicate acts within ten years of each other;

4  (2) a relationship between those two acts; and (3) a threat of continued activity.  18

5  U.S.C. § 1961(5); *H.J., Inc. v. Northwestern Bell Tel.*, 492 U.S. 229, 239 (1989);

6  *Grimmett*, 75 F.3d at 512.  The Supreme Court has held that "'[c]ontinuity' is both a

7  closed- and open-ended concept, referring either to a closed period of repeated conduct,

8  or to past conduct that by its nature projects into the future with a threat of repetition":

9        A party alleging a RICO violation may demonstrate continuity

10        over a closed period by proving a series of related predicates

11        extending over a substantial period of time.  Predicate acts

12        extending over a few weeks or months and threatening no

13        future criminal conduct do not satisfy this requirement:

14        Congress was concerned in RICO with *longterm* criminal

15        conduct.  Often a RICO action will be brought before continuity

16        can be established in this way.  In such cases, liability depends

17        on whether the threat of continuity is demonstrated.

18  *H.J.*, 492 U.S. at 241-42 (emphasis added).  Continuity usually requires that the

19  scheme have been in existence *for at least one year.  See Grimmett*, 75 F.3d at 512.

20        Here, Plaintiffs have alleged only six predicate acts, five of which

21  completely occurred during a *twelve-day period* in May 2003.  These alleged

22  predicate acts are (1) mailing the reexamination request for the '951 patent on May 5,

23  2003; (2) mailing the reexamination request for the '319 patent on May 5, 2003;

24  (3) allegedly mailing[6] the motion to stay on May 5, 2003; (4) mailing allegedly

25  fraudulent papers to the Southern District of California on May 6, 2003; and

26  (5) mailing allegedly fraudulent papers to the Southern District on May 16, 2003.

27

28  

---

[6] The May 5 motion to stay the lawsuits in the Southern District could not have constituted mail fraud because, as noted, *it was not mailed.*  (RJN, Exh. A.)

1   This is not a pattern of continuous racketeering activity.  The alleged mail fraud

2   continued for only twelve days and completely ceased after that.

3          The sixth alleged predicate act, the posting of allegedly fraudulent

4   statements on the PDGF website (Compl. ¶¶ 136-138), is not a predicate act because

5   the alleged fraud was perpetrated on *third parties*, not Plaintiffs.  Moreover, the

6   Complaint fails to say when the allegedly fraudulent statements were made, other than

7   a vague allegation that they were posted sometime between May 5, 2003 and

8   December 5, 2006.  (*Id.* ¶ 136.)  The RICO sections of the Complaint specifically

9   recite only one allegedly fraudulent statement (*id.* ¶ 138), leaving Defendants and the

10  Court to guess when it was allegedly made.  Given the lack of specificity, the Court

11  should disregard the sixth alleged predicate act as being in violation of the pleading

12  requirements of FED. R. CIV. P. 9(b).  Further, regardless of when the allegedly

13  fraudulent statement was made, it is clear that it was no longer on the website as of

14  March 22, 2004, when PGDF changed its website.  (RJN, Exh. O.)

15         Plaintiffs simply cannot show a pattern of continuous racketeering

16  activity through five alleged predicate acts during a twelve-day period in May 2003.

17  Recognizing this, Plaintiffs claim that "[t]he Patents are under a continuing threat of a

18  similar fraud being perpetrated, given that patent laws and the USPTO rules and

19  regulations allow multiple requests . . . , and given that Defendants through PGDF

20  have repeatedly made statements that their goal is to put Plaintiffs out of business."

21  (Compl. ¶ 141.)  These allegations fail to demonstrate a "threat of continuity."  *H.J.*,

22  492 U.S. at 241-42.  There is no assertion that Defendants have represented any party

23  adverse to Plaintiffs in patent suits *in the past five years*.  Plaintiffs cannot use the

24  reexamination statutes, which allow "[a]ny person at any time" to file a reexamination

25  request (35 U.S.C. § 302), to transform Sheppard Mullin's two reexamination

26  requests in May 2003 into an open-ended pattern of racketeering activity.  As for

27  Defendants' alleged statements through PGDF, they are undated, unspecific, and have

28  never been acted on (even despite Lockwood's state court lawsuit in 2007).

-11-

1  **4.  The PTO's duty to conduct an independent investigation and the**
2          **stipulated stay signed by PanIP negate proximate cause.**

3            A "showing that the defendant violated § 1962, the plaintiff was injured,
4  and the defendant's violation was a 'but for' cause of plaintiffs injury" is insufficient
5  to meet the requirement in 18 U.S.C. § 1964(c) that the plaintiff's injury be "by
6  reason of the RICO violation." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258,
7  265-66 (1992).  Rather, a plaintiff must also show that the defendant's RICO violation
8  proximately caused his injury. *See id.* at 268.  Proximate cause requires "some direct
9  relation between the injury asserted and the injurious conduct alleged." *Id. See*
10 *generally Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 981 (9th Cir. 2008).

11            Here, the PTO's duty to conduct an independent investigation into the
12 merits of Sheppard Mullin's reexamination requests negated any proximate cause.
13 The Patent Act states that "[w]ithin three months following the filing of a request for
14 reexamination . . . , the Director [of the PTO] will determine whether a substantial
15 new question of patentability affecting any claim of the patent concerned is raised by
16 the request with or without consideration of other patents or printed publications."
17 35 U.S.C. § 303(a).  The Manual of Patent Examining Procedure makes clear that the
18 PTO Director "has the authority to order reexamination only in those cases which
19 raise a substantial new question of patentability.  The substantial new question of
20 patentability requirement protects patentees from having to respond to, or participate
21 in unjustified reexaminations." MANUAL OF PATENT EXAMINING PROCEDURE (8th ed.
22 Aug. 2001, rev. July 2008) ("MPEP") § 2244 (RJN, Exh. N).

23            A reexamination request thus prompts a preliminary investigation into
24 whether there is a substantial new question of patentability affecting any claim of the
25 patent at issue.  This preliminary investigation results in an "independent
26 determination" by the PTO, as the Federal Circuit made clear in *Patlex Corp. v.*
27 *Mossinghoff*, 771 F.2d 480 (Fed. Cir. 1985):
28            In assessing the risk that an erroneous deprivation will

-12-

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1    ensue, we take notice that *a patent examiner is charged with the*

2    *experience appropriate to making independent determinations*.

3    PTO expertise is a factor to be given weight in considering the risk

4    of error at this stage. . . . The PTO . . . carries a heavy

5    responsibility to be exercised with disinterestedness and restraint.

6    *Id.* at 485 (quotations omitted; emphasis added).  The PTO thus bears a "heavy

7    responsibility" to conduct an "independent determination" into whether there is a

8    substantial new question of patentability, a determination the PTO must make even if

9    the requester tries to withdraw the request.  *See* MPEP § 2210 ("After the request for

10   reexamination . . . is received in the Office, no abandonment, withdrawal, or striking

11   of the request is possible, regardless of who requests the same.") (RJN, Exh. N).

12          Plaintiffs' Complaint is thus based upon a formal reexamination

13   proceeding instituted not by Defendants, but by the PTO after conducting its own

14   independent investigation of the issues concerning Lockwood's patents.  This negates

15   any claim that Defendants' acts proximately caused Plaintiffs' alleged injuries.

16          The stipulation to stay proceedings and settlement signed by Plaintiffs

17   also negate proximate cause.  Plaintiffs claim that "[a]s a result of Defendants'

18   deceitful statements and reliance on the Fraudulent Requests, the district court granted

19   their Motion to Stay . . . This stay had the intended effect of stopping Plaintiffs'

20   Enforcement Program, causing great economic loss . . . " (Compl. ¶ 135.)  This

21   allegation is false because Judge Brewster did not grant the stay motion but rather

22   approved the stipulation signed by PanIP.  (RJN, Exhs. A-D.)  PanIP's signing of the

23   stipulation negates any claim that Defendants' motion proximately caused Plaintiffs'

24   alleged injuries.  And, the notion that the stay and reexamination requests caused

25   Plaintiffs such "severe economic harm" that they were "coerced" into signing the

26   2004 settlement is simply too remote and speculative to meet the proximate cause

27   requirement.  (Compl. ¶¶ 139-40.)  There is no way to know whether and to what

28   extent Plaintiffs' "severely injured economic situation" was caused by Defendants'

-13-

1   conduct as opposed to other factors.  (*Id.* ¶ 140.)  Simply put, Plaintiffs voluntarily

2   agreed in 2004 to release PGDF and dismiss the underlying cases.  If Plaintiffs regret

3   that decision, it is not Defendants' fault.

4   **B.**      **The Court Should Dismiss Plaintiffs' Malicious Prosecution Claim**

5             **1.      The malicious prosecution claim is time-barred.**

6             Plaintiffs allege malicious prosecution, not with regard to the federal

7   court proceedings, but with regard to the patent reexamination requests before the

8   PTO.  Defendants believe that any such tort is barred by reason of preemption under

9   federal law, but insofar as a state law claim could possibly lie, it is clearly barred by a

10   two-year statute of limitations and by the independent investigation doctrine, as

11   discussed below.  The Superior Court dismissed the malicious prosecution claim on

12   the ground of statute of limitations, so Defendants will first address that issue.

13             Plaintiffs' malicious prosecution claim must be dismissed under the

14   statute of limitations.  Because the requests for reexamination were granted in

15   July 2003, Plaintiffs' claim for malicious prosecution is barred by the two-year statute

16   of limitations of CAL. CIV. PROC. CODE § 335.1.  *See Stavropoulos v. Superior Court*,

17   141 Cal. App. 4th 190, 197 (2006).  The Los Angeles Superior Court already found

18   the malicious prosecution claim time-barred.  (RJN, Exh. M.)

19             For tort claims like malicious prosecution, the statute of limitations

20   begins to run on the occurrence of the last element essential to the claim.  *See Norgart*

21   *v. Upjohn Co.*, 21 Cal. 4th 383, 389, 397 (1999).  The last element essential to

22   Plaintiffs' claim occurred in July 2003, when the requests were granted.

23             According to Plaintiffs' Complaint, all of the elements for a claim of

24   malicious prosecution in the *ex parte* administrative proceeding context had occurred

25   by July 2003.  First, Plaintiffs allege that "on May 5, 2003, Defendants mailed by

26   U.S. Postal Service to the PTO two reexamination requests . . . " (Compl. ¶ 42.)

27   Second, when Sheppard Mullin filed the reexamination requests on May 5, 2003, it

28   allegedly acted (1) without probable cause to believe that the reexamination requests

-14-

1   were well founded, and (2) primarily for a purpose other than that of securing

2   appropriate action by the PTO.  (*Id.* ¶¶ 91-92.)  Third, the granting of the

3   reexamination requests in July 2003 (*see* RJN, Exhs. H & I) constituted the beginning

4   of the damages that Plaintiffs have allegedly suffered.  (Compl. ¶ 23.)

5          Unlike the rule for a contested proceeding, a malicious prosecution

6   plaintiff does not have to show a favorable termination if the proceeding was an *ex*

7   *parte* administrative proceeding.  *See Stolz v. Wong Communications Ltd.*, 25 Cal.

8   App. 4th 1811, 1820 (1994) (quoting REST. 2D TORTS § 680 on the elements of a

9   malicious prosecution claim in the administrative proceeding context:  " . . . except

10  where they are *ex parte*, the proceedings have terminated in favor of the person

11  against whom they are brought").  *Cf. Zamos v. Stroud*, 32 Cal. 4th 958, 967 n.6

12  (2004) (quoting REST. 2D TORTS § 674 on the elements of a malicious prosecution

13  claim in the civil proceeding context:  " . . . except when they are *ex parte*, the

14  proceedings have terminated in favor of the person against whom they are brought");

15  *accord Rutherford v. Johnson*, 250 Cal. App. 2d 316, 319 (1967).

16         Defendants' reexamination requests were completely *ex parte*.  (Compl.

17  ¶ 19 ("Defendants requested *ex parte* reexamination in May of 2003."); *see also id.*

18  ¶¶ 13, 38, 78, 79.)  Moreover, comment k to the Restatement (Second) of Torts § 674

19  states that "[p]roceedings are *ex parte* when relief is granted without an opportunity

20  for the person against whom the relief is sought to be heard."  Here, the PTO granted

21  the requests without giving Plaintiffs an opportunity to be heard.  This is a

22  consequence of 37 C.F.R. § 1.530(a), and Plaintiffs concede this fact in the

23  Complaint.  (Compl. ¶ 43.)  Because the requests were *ex parte*, the statute of

24  limitations has run.  The malicious prosecution claim should be dismissed.

25         Plaintiffs cannot excuse their tardiness by claiming that, "due to the

26  deceitful and misleading nature of the Fraudulent Requests, Plaintiffs were prevented

27  from discovering or realizing the full extent of Defendant's [sic] fraudulent use of the

28  reexamination proceedings for improper purposes until approximately three years

-15-

1   after the Fraudulent Requests were filed." (Compl. ¶ 83.)  That excuse fails because

2   there can be no dispute that Plaintiffs received copies of the requests in May 2003 and

3   that the stipulation to stay the lawsuits, signed by Plaintiffs' then-counsel on June 2,

4   2003, cited the requests.  Plaintiffs were not prevented from discovering or realizing

5   anything.  They had the requests.

6          In sum, because the requests for reexamination were granted in

7   July 2003, Lockwood's claim for malicious prosecution is barred by the two-year

8   statute of limitations and should be dismissed, just as it was in state court.

9   **2.   Lockwood's malicious prosecution claim fails because of the**

10  **independent investigation doctrine.**

11         The malicious prosecution claim also fails because of the independent

12  investigation doctrine.  A party may not sue for malicious prosecution where the

13  proceeding at issue was initiated after an independent investigation of the defendant's

14  charges by the responsible authorities.  *See Werner v. Hearst Publ., Inc.*,

15  65 Cal.App.2d 667, 672 (1944) (affirming judgment of dismissal).

16         In *Werner*, the plaintiff claimed that the defendants, without probable

17  cause and with malice, instigated a disbarment proceeding against him before a State

18  Bar committee by sending a letter to its special investigator.  He alleged that the

19  committee "was actuated and influenced to issue the said 'Order to Show Cause' by

20  the letter of August 14, 1941, and that The State Bar relied upon said statements in

21  said letter and issued the said order in substantially the same language as the language

22  used in said letter." 65 Cal. App. 2d at 672.  The Court of Appeal held that "[t]hose

23  allegations do not bear the interpretation that the notice or 'order' to show cause was

24  issued by reason of the committee's reliance upon the statements in the letter," instead

25  of the independent investigation prescribed in the Rules of Procedure of The State

26  Bar.  *Id.*  The Court reasoned that "it is to be presumed, upon consideration of the

27  demurrer, *in the absence of an allegation to the contrary*, that the investigation was

28  relied upon by the committee." *Id.* at 672 (emphasis added).  The Court concluded

-16-

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1   that "even though said complaint alleges that the committee relied upon the letter that

2   does not eliminate the preliminary investigation prescribed by rule 10 as a basis upon

3   which the committee might have relied." *Id.* at 673.

4           The *Werner* case was subsequently reaffirmed in *Stanwyck v. Horne*,

5   146 Cal. App. 3d 450 (1983), wherein the California Court of Appeal clearly stated,

6   "*Absent an allegation in appellant's complaint that an investigation did not in fact*

7   *occur*, we must presume as did *Werner*, that one did occur." *Id.* at 459 (holding,

8   under the "independent investigation" doctrine, that "appellant failed to allege the

9   elements required to establish an action in malicious prosecution").

10          Here, the statutes and regulations governing reexamination proceedings

11  in the PTO confirm that the independent investigation doctrine applies to the present

12  case. *See* 35 U.S.C. § 303(a); 37 C.F.R. § 1.515(a); MPEP §§ 2240, 2244 (RJN,

13  Exh. N); *Patlex Corp. v. Mossinghoff*, 771 F.2d 480, 485 (Fed. Cir. 1985) (discussing

14  reexamination requests: "In assessing the risk that an erroneous deprivation will

15  ensue, we take notice that *a patent examiner is charged with the experience*

16  *appropriate to making independent determinations*") (emphasis added). As in

17  *Werner*, 65 Cal. App. 2d at 672, it is presumed that the PTO followed these

18  procedures and conducted an independent investigation before proceeding with the

19  reexamination proceedings. [7]

20          Plaintiffs' Complaint does not allege that the PTO failed to conduct the

21  required investigation. The Complaint alleges only that "[i]n reliance on the deceptive

22  mischaracterization of alleged pieces of prior art submitted by Defendants in their

23  Fraudulent Requests for reexamination, the USPTO did grant the Requests . . . "

24  (Compl. ¶ 70.) As in *Werner*, these "are not sufficient allegations to exclude the

25

26  [7] In this case, the presumption is conclusive as a practical matter because the PTO
    rules do not permit examiners to testify about (a) their reliance on particular facts or
27  arguments, (b) the manner or extent of their consideration of material, or (c) the
    bases, reasons, mental processes, analyses, or conclusions they reached in
28  performing their functions. *See* MPEP § 1701.01 (RJN, Exh. N).

-17-

1   independent investigation as a part, at least, of the information" upon which the PTO

2   relied in instituting formal reexamination proceedings.  65 Cal. App. 2d at 672.  Under

3   *Werner* and *Stanwyck*, it is irrelevant whether any arguments in the requests colored

4   the PTO's review.  It is also irrelevant that the "substantial new question of

5   patentability" test in 35 U.S.C. § 303(a) presents a low threshold.  This case is based

6   on formal proceedings instituted by the PTO, not by Defendants, and the malicious

7   prosecution claim should be dismissed.

8       **3.     Plaintiffs' malicious prosecution claim is preempted by federal law.**

9               Plaintiffs' malicious prosecution claim also fails because it is preempted.

10  When Congress established the reexamination procedures, it did not establish a

11  remedy for malicious prosecution or alleged fraud on the PTO.  Any such claim

12  based on state law, including state law "fraud-on-the-agency claims," are barred.  *See*

13  *Buckman*, discussed below.

14              Under the Supremacy Clause, state law that conflicts with federal law is

15  without effect.  *See* U.S. CONST. art. VI, cl. 2; *Bonito Boats, Inc. v. Thunder Craft*

16  *Boats, Inc.*, 489 U.S. 141, 168 (1989); *Hunter Douglas, Inc. v. Harmonic Design,*

17  *Inc.*, 153 F.3d 1318, 1331 (Fed. Cir. 1998), *overruled in part on other grounds*,

18  *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1361 (Fed. Cir. 1999).

19  Preemption can be any of three types:  explicit, field, or conflict.  *See Hunter*

20  *Douglas*, 153 F.3d at 1332.  Conflict preemption occurs when state law "stands as an

21  obstacle to the accomplishment and execution of the full purposes and objectives of

22  Congress."  *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 266 (1979); *see also*

23  *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1377 (Fed. Cir. 2005).

24              Federal patent law reflects the objectives of Congress, which include

25  promoting "the stringent requirements for patent protection . . . to assure that ideas in

26  the public domain remain there for the free use of the public."  *Aronson*, 440 U.S. at

27  262 (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480-81 (1974).  A state

28  cause of action that frustrates this objective is preempted and must be dismissed.  *See*

-18-

MEMORANDUM OF POINTS AND AUTHORITIES IN
                                                          SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1   *Aronson*, 440 U.S. at 262; *Ultra-Precision*, 411 F.3d at 1378.

2         If allowed to proceed, Plaintiffs' malicious prosecution claim would

3   frustrate the objectives of Congress in passing the patent reexamination statutes.  The

4   reexamination statutes state that "*[a]ny person at any time* may file a request for

5   reexamination by the Office of any claim of a patent on the basis of *any prior art*

6   cited under the provisions of section 301 of this title." 35 U.S.C. § 302 (emphasis

7   added).  Congress intended reexaminations "to provide an important 'quality check'

8   on patents that would allow the government to remove defective and erroneously

9   granted patents." *In re Swanson*, 540 F.3d 1368, 1375 (Fed. Cir. 2008) (citing H.R.

10  Rep. No. 107-120 (2002)); *see also In re Recreative Techs. Corp.*, 83 F.3d 1394,

11  1396-97 (Fed. Cir. 1996) ("The reexamination statute's purpose is to correct errors

12  made by the government . . . and if need be to remove patents that never should have

13  been granted.") (citing *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 604 (Fed. Cir.

14  1985)).  To advance this objective, Congress established a lenient standard requiring

15  only a "substantial new question of patentability" to grant a reexamination request

16  and initiate formal reexamination proceedings.  35 U.S.C. §§ 303-304.

17        In Plaintiffs' view, federal patent law allegedly foresees the use of

18  California tort law to enforce PTO practice rules and prevent harassment of patentees.

19  But the Federal Circuit has clearly held that it is "[t]he 'substantial new question of

20  patentability' requirement [that] prevents potential harassment of patentees by

21  'act[ing] to bar reconsideration of any argument already decided by the [PTO],

22  whether during the original examination or an earlier reexamination.'" *In re*

23  *Swanson*, 540 F.3d at 1375 (quoting H.R. Rep. No. 96-1307(1) (1980), U.S. Code

24  Cong. & Admin. News 1980, pp. 6460, 6466).  Crucially, Congress itself stated, in

25  the House Report accompanying the 2002 amendments to the reexamination statutes:

26              As part of the original 1980 reexamination statute, *Congress*

27              *struck a balance* between curing allegedly defective patents

28              and preventing the harassment of patentees.  It adopted a

-19-

1                 standard requiring a request for reexamination to raise a

2                 "substantial new question of patentability."

3    H.R. Rep. No. 107-120 (emphasis added); *see also Patlex Corp. v. Mossinghoff*,

4    771 F.2d 480, 483 (Fed. Cir. 1985) (holding that "the threshold determination whether

5    or not to reexamine" made by the PTO "carefully protects patent owners from

6    reexamination proceedings brought for harassment or spite") (quotations omitted).

7          Lockwood's attempt to use California tort law to enforce PTO practice

8    rules upsets the careful "balance" that Congress struck.  Congress provided the

9    "substantial new question of patentability" standard and preliminary determination

10   thereunder to safeguard patentees, rather than providing for a tort claim.  If the PTO

11   believes that a reexamination request meets the standard, then the PTO may initiate

12   formal reexamination proceedings.  Otherwise, the PTO denies the request and the

13   process ends.  Congress specifically noted that "the courts should judiciously interpret

14   the 'substantial new question' standard to prevent cases of abusive tactics and

15   harassment of patentees through reexamination," H.R. Rep. No. 107-120, but vested

16   the execution of this protective function with the PTO, "the proper agency with the

17   necessary expertise to take a 'second look' at a patent's validity." *Id.*  Simply put,

18   allowing Plaintiffs' malicious prosecution claim would seriously disturb the careful

19   scheme established by Congress, which "encourages third parties to pursue

20   reexamination as an efficient way of settling patent disputes." *Id.*

21          The present case is analogous to *Buckman*, wherein the Supreme Court

22   held that "state-law fraud-on-the-FDA claims conflict with, and are therefore impliedly

23   pre-empted by federal law." 531 U.S. at 348.  The Court noted that "[p]olicing fraud

24   against federal agencies is hardly a field which the States have traditionally occupied,

25   such as to warrant a presumption against finding federal pre-emption of a state-law

26   cause of action." *Id.* at 347 (quotation and citation omitted).  The Court reasoned that

27   "[s]tate-law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility

28   to police fraud consistently with the Agency's judgment and objectives." *Id.* at 350.

1    Likewise, Plaintiffs' state-law fraud-on-the-PTO claims inevitably conflict with the

2    PTO's responsibility to police fraud under the regulatory scheme for investigations and

3    disciplinary proceedings established in 37 C.F.R. § 10.130 et seq. *See also Nathan*

4    *Kimmel, Inc. v. DowElanco*, 275 F.3d 1199 (9th Cir. 2002) (finding fraud-on-the-EPA

5    claim preempted).

6            Plaintiffs' state malicious prosecution claim is closely analogous to the

7    state abuse of process counterclaim held to be preempted in *Abbott Labs. v. Brennan*,

8    952 F.2d 1346 (Fed. Cir. 1991).  In *Abbott*, a patent applicant had backdated a request

9    for an extension of time and falsely averred that the request had been timely made.

10   The Federal Circuit concluded that "the federal administrative process of examining

11   and issuing patents, including proceedings before the PTO's boards, is not subject to

12   collateral review in terms of the common law tort of abuse of process." *Id.* at 1357.

13           Thereafter, in *Dow Chemical Co. v. Exxon Corp.*, 139 F.3d 1470 (Fed.

14   Cir. 1998), the Federal Circuit held that the state law claim of intentional interference

15   with actual and prospective contractual relationships was not preempted by federal

16   patent law, even though the claim was based partly upon acts of alleged inequitable

17   conduct before the PTO.  The Federal Circuit reasoned that, because the state claim

18   also included elements found in the marketplace against inhabitants of the state, the

19   state tort as applied did not conflict with federal patent law. *See id.* at 1477-78.

20           In the present case, Lockwood's claim for malicious prosecution fails to

21   include elements found in the marketplace.  The federal patent laws thus preempt this

22   claim.  Like the state abuse of process claim in *Abbott*, "the wrong alleged and for

23   which state law tort damages [are] sought [is] no more than bad faith misconduct

24   before the PTO." *Dow*, 139 F.3d at 1477.  An additional state claim predicated so

25   squarely on the alleged acts of inequitable conduct would be "contrary to Congress'

26   preemptive regulation in the area of patent law." *Abbott*, 952 F.2d at 1357.

27

28

-21-

**C.    The Court Should Dismiss Plaintiffs' Claim for Interference with**

**Prospective Economic Advantage**

    **1.    Defendants' actions were covered by CAL. CIV. CODE § 47(b).**

    The "litigation privilege" of CAL. CIV. CODE § 47(b) provides absolute immunity for communications made to administrative agencies in quasi-judicial proceedings. *See Picton v. Anderson Union High Sch. Dist.*, 50 Cal. App. 4th 726, 737 (1996) ("The phrase 'in any other official proceeding authorized by law' embraced in section 47, subdivision 2 [now section 47(b)] has been interpreted to encompass those proceedings which resemble judicial and legislative proceedings, such as transactions of administrative boards and quasi-judicial and quasi-legislative proceedings."). The absolute privilege bars claims for interference with prospective economic advantage and fraud, among other causes of action. *See, e.g., Spitler v. Children's Institute Int'l*, 11 Cal. App. 4th 432, 438 n.4 (1992).

    The California Supreme Court recently reiterated the requirements for the litigation privilege in *Rusheen v. Cohen*, 37 Cal. 4th 1048 (2006): "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Id.* at 1057. Courts have expressly held that CAL. CIV. CODE § 47(b) applies to communications made to a federal agency. *See, e.g., ComputerXpres v. Jackson*, 93 Cal. App. 4th 993, 1015 (2001) (noting that filing of complaint with the U.S. Securities and Exchange Commission "clearly was absolutely privileged under Civil Code section 47, subdivision (b)").

    Under these cases, the requests for reexamination filed by Sheppard Mullin plainly come within the scope of CAL. CIV. CODE § 47(b), as the Superior Court already found. (RJN, Exh. L.) First, reexamination proceedings in the PTO are quasi-judicial proceedings. Patent examiners are quasi-judicial officials that exercise quasi-judicial functions in issuing or withholding patents, and in deciding whether

-22-

1    inventions are patentable in light of prior art. *See United States v. American Bell Tel.*
2    *Co.*, 128 U.S. 315, 363 (1888) ("The patent . . . is the result of a course of proceeding,
3    quasi-judicial in its character."); *Butterworth v. United States ex rel. Hoe*, 112 U.S.
4    50, 67 (1884); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 986 (Fed. Cir.
5    1995) ("Patent applications, unlike contracts, are reviewed by patent examiners,
6    quasi-judicial officials trained in the law and presumed to have some expertise in
7    interpreting the [prior art] references . . . ") (quotation omitted); *Western Elec. Co. v.*
8    *Piezo Tech., Inc.*, 860 F.2d 428, 431 (Fed. Cir. 1988).

9            Second, the requests for reexamination were filed by a participant
10   authorized by law, viz., Sheppard Mullin.  The Patent Act broadly states that "Any
11   person at any time may file a request for reexamination . . ."  35 U.S.C. § 302.
12   Sheppard Mullin and its attorneys plainly come within this provision.

13           Third, Sheppard Mullin filed the requests for reexamination with the
14   PTO to achieve the objects of (1) the reexamination proceedings and (2) the court
15   cases brought by Lockwood's company, PanIP.  On the first point, a request for
16   reexamination initiates reexamination proceedings. *See In re Opprecht*, 868 F.2d
17   1264, 1265 (Fed. Cir. 1989) ("Reexamination of an issued patent may be initiated at
18   the request of the patent owner or any other person.").  On the second point, both the
19   PanIP cases and the requests for reexamination concerned the same issues regarding
20   the patentability of the inventions claimed in the Patents.  Sheppard Mullin thus filed
21   the requests for reexamination to achieve the objects of their clients' patent invalidity
22   defenses in the court cases brought by PanIP.

23           Finally, the requests for reexamination had a connection or logical
24   relation to both the PanIP cases and the reexamination proceedings, as discussed
25   above.  A communication, like the requests for reexamination, that notifies the PTO
26   of possible prior art is plainly related to the enforceability of a patent.  Likewise, the
27   PanIP cases raised the issue of whether the Patents were truly valid and enforceable.
28           Because the requests for reexamination met all four requirements for the

-23-

MEMORANDUM OF POINTS AND AUTHORITIES IN
                                                                 SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1  litigation privilege, the act of filing the requests was absolutely privileged.

2  **2.      Plaintiffs' claim for interference with prospective economic**

3  **advantage is time-barred.**

4  Plaintiffs' claim for interference with prospective economic advantage is

5  barred by a two-year statute of limitations.  *See* CAL. CIV. PROC. CODE § 339(1);

6  *Augusta v. United Serv. Auto. Ass'n*, 13 Cal. App. 4th 4, 10 (1993).

7  For tort claims like interference with prospective economic advantage,

8  the statute of limitations begins to run on the occurrence of the last element essential

9  to the claim.  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 389, 397 (1999).  Here, the last

10  element essential to Plaintiffs' claim occurred in July 2003, when the reexamination

11  requests were granted.  *See generally Sole Energy Co. v. Petrominerals Corp.*,

12  128 Cal. App. 4th 212, 241 (2005) (stating elements of claim for interference with

13  prospective economic advantage).  First, Lockwood, through PanIP, began his patent

14  enforcement program back in 2002.  (Compl. ¶ 27.)  Second, Defendants allegedly

15  knew about the enforcement program by the time they filed the reexamination

16  requests on May 5, 2003.  (*Id.* ¶¶ 96-98.)  Third, the filing of the requests on May 5,

17  2003 constituted the allegedly intentional and wrongful conduct designed to interfere

18  with Plaintiffs' enforcement program.  (*Id.* ¶ 99.)  Fourth, the enforcement program

19  was allegedly interfered with in July 2003, when the PTO granted the requests.  (*Id.*

20  ¶ 70; RJN, Exhs. H, I.)  Finally, the granting of the requests in July 2003 was the start

21  of the economic harm that Plaintiffs allegedly suffered.  (Compl. ¶ 70.)  Once the

22  requests were granted, Defendants had no right to participate since no "patent owner's

23  statement" was filed.  *See* 37 C.F.R. § 1.550(g); *Syntex (U.S.A.), Inc. v. U.S. Patent &*

24  *Trademark Office*, 882 F.2d 1570 (Fed. Cir. 1989).  Thus, the claim is time-barred.

25  **D.      The Court Should Dismiss Plaintiffs' Claim for Fraud**

26  **1.      Defendants' actions were covered by CAL. CIV. CODE § 47(b).**

27  The litigation privilege bars the fraud claim for the same reasons as the

28  claim for interference with prospective economic advantage.  (Section III.C.1, *supra*.)

-24-

1      **2.**    **Plaintiffs' fraud claim is preempted by federal law.**

2         Plaintiffs' fraud claim is preempted by the federal patent statutes for the

3 same reasons as Plaintiffs' malicious prosecution claim.  (Section III.B.3, *supra*.)

4      **3.**    **Defendants' actions did not constitute fraud.**

5         Defendants alleged mischaracterization of the prior art submitted to the

6 PTO in requesting reexamination does not support a fraud claim because the PTO had

7 the prior art and was free to reach its own conclusions.  (Section III.A.1, *supra*.)

8      **4.**    **Plaintiffs' fraud claim is time-barred.**

9         Because the reexamination requests were granted in July 2003, Plaintiffs'

10 fraud claim is barred by a three-year statute of limitations.  *See* Cal. Civ. Proc. Code

11 § 338(d).  The last element essential to Plaintiffs' fraud claim occurred when the

12 reexamination requests were granted.  "The elements of fraud, which give rise to the

13 tort action for deceit, are (1) a misrepresentation, (2) with knowledge of its falsity,

14 (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable

15 reliance, and (5) resulting damage."  *Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th

16 1244, 1255 (2009).  The first three elements allegedly occurred on May 5, 2003, when

17 Sheppard Mullin filed the reexamination requests.  The last two elements allegedly

18 occurred in July 2003, when the PTO granted the requests.

19                   **IV.**   **CONCLUSION**

20         For the foregoing reasons, Plaintiffs' Complaint should be dismissed.

21 Dated:  September 11, 2009

22               SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

23

24               By  _Darren Franklin_

25                   DARREN M. FRANKLIN

26                 Attorneys for Defendants

27         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP,
           JONATHAN HANGARTNER and STEVE P. HASSID

28