1  HOWARTH & SMITH
   DON HOWARTH, State Bar No. 53783
2    dhowarth@howarth-smith.com
   SUZELLE M. SMITH, State Bar No. 113992
3    ssmith@howarth-smith.com
   KATHRYN LEE BOYD, State Bar No. 189496
4    lboyd@howarth-smith.com
   523 West Sixth Street, Suite 728
5  Los Angeles, California 90014
   Telephone: (213) 955-9400
6  Facsimile:  (213) 622-0791

7  Attorneys for Plaintiff
   LAWRENCE B. LOCKWOOD, PANIP, LLC
8

9              UNITED STATES DISTRICT COURT

10        FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12 LAWRENCE B. LOCKWOOD, PANIP,       ) CASE NO. CV09-5157 JFW (AGRx)
   LLC,                               )
13                                    ) The Honorable John F. Walter
            Plaintiffs,               ) Ctrm: 16
14                                    )
                                      )
15      v.                            ) **PLAINTIFFS' OPPOSITION TO**
                                      ) **DEFENDANTS' MOTION TO**
16 SHEPPARD, MULLIN, RICHTER          ) **DISMISS PURSUANT TO FED. R.**
   &HAMPTON, LLP, JONATHAN            ) **CIV. P. RULE 12(b)(6)**
17 HANGARTNER, STEVE P. HASSID,       )
                                      )
18          Defendants.               ) Hearing Date:  November 9, 2009
                                      ) Time:  1:30 p.m.
19                                    ) Ctrm:  16
                                      )
20 _____ )

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES ............................................................................ ii-vii

I.    SUMMARY OF ARGUMENT ........................................................... 1

II.   STATEMENT OF FACTS ................................................................. 3

III.  THE COMPLAINT ALLEGES AND EVIDENCE SUPPORTS A PRIMA FACIE CASE FOR MALICIOUS PROSECUTION ........................... 3

      A.    Plaintiffs' Claim for Malicious Prosecution Is Not Time-Barred ........ 5

      B.    The USPTO's Grant of Reexamination is Dependent Upon the Duty of Candor and the Independent Investigation Doctrine Does Not Apply ................................................................. 6

IV.  PLAINTIFFS' CLAIMS ARE CONSISTENT WITH FEDERAL PATENT LAW AND ARE NOT PREEMPTED UNDER THE SUPREMACY CLAUSE ............................................................ 8

V.   THE COMPLAINT SUFFICIENTLY PLEADS AND EVIDENCE SUPPORTS DEFENDANTS' FRAUD BEFORE THE USPTO ..................... 12

      A.    Plaintiffs' Fraud Claim is Timely ....................................... 14

      B.    The California Litigation Privilege Is Inapplicable to the Fraud Claim Based on Misconduct Before the USPTO ............................... 15

      C.    The Fraud Claim Based on Misconduct Before the USPTO Is Not Preempted by Federal Law ................................................ 15

VI.  THE COMPLAINT SUFFICIENTLY PLEADS AND EVIDENCE SUPPORTS PLAINTIFFS' CLAIM FOR INTERFERENCE ......................... 15

      A.    The California Litigation Privilege Is Inapplicable to the Interference Claim Based on Misconduct Before the USPTO ........... 17

      B.    Plaintiffs Claim for Interference Is Timely ......................... 17

VII.  DEFENDANTS, PATENT PRACTITIONERS, WERE NOT FREE TO MISCHARACTERIZE EVIDENCE PRESENTED TO THE USPTO ......................................................................... 18

VIII.  DEFENDANTS' CLAIM OF ATTORNEY-CLIENT PRIVILEGE DOES NOT IMMUNIZE THEM FROM SUIT ............................... 20

i

IX.   PLAINTIFFS SUFFICIENTLY PLED VIOLATIONS OF THE RICO STATUTE .......................................................................................21

    A.   Attorneys and Law Firms are Accountable to Third Parties for Violations of the RICO Statute ..............................................21

    B.   The RICO Claims Are Timely ..........................................................23

    C.   Defendants' Unlawful Conduct Satisfies the "Pattern of Racketeering Activity" Element ..........................................23

    D.   Defendants Conduct Proximately Caused Plaintiffs' Injury...............25

X.   CONCLUSION ....................................................................................25

1

## TABLE OF AUTHORITIES

**PAGE(S)**

2    <u>CASES</u>

3

4    *Abbott Labs. v. Brennan,*
      952 F.2d 1346 (Fed. Cir. 1992) ..................................................................................11

5    *Advanced Cardiovascular Sys. v. Scimed Life Sys.,*
      63 F. Supp. 2d 1064 (N.D. Cal. 1999) ......................................................................19

6
     *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.,*
7     504 F.3d 1262 (Fed. Cir. 2007) ...............................................................................2, 9

8    *Akron Polymer Corp. v. Exxel Container, Inc.,*
      148 F.3d 1380 (Fed. Cir. 1998) ...................................................................................5

9
     *Ashcroft v. Iqbal,*
10     --- U.S. ---, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) .......................................1, 12

11   *Awabdy v. City of Adelanto,*
      368 F.3d 1062 (9th Cir. 2004) .....................................................................................7

12
     *B.V. Optische Industrie de Oude Delft v. Hologic, Inc.,*
13    909 F. Supp. 162 (S.D.N.Y. 1996) .............................................................................22

14   *Ball v. Xidex Corp.,*
      967 F.2d 1440 (10th Cir. 1992).............................................................................3, 4, 9

15
     *Banco Nacional de Cuba v. Sabbatino,*
16    376 U.S. 398, 84 S. Ct. 923, 11 L.Ed.2d 804 (1964) ..................................................5

17   *Bernson v. Browning-Ferris Industries,*
      7 Cal. 4th 926 (1994)............................................................................................14, 23

18
     *Bristol Myers Squibb Co. v. Ben Venue Labs,*
19    90 F. Supp. 2d 522 (D.N.J. 2000) .............................................................................18

20   *Buckman Co. v. Plaintiffs' Legal Committee,*
      531 U.S. 341, 121 S. Ct. 1012, 148 L.Ed.2d 854 (2001) .......................................2, 11

21
     *Casa Herrera, Inc. v. Beydoun,*
22    32 Cal. 4th 336 (2004) ...............................................................................................17

23   *Charcoal Companion, Inc. v. Target Corp.,*
      slip op, 2009 WL 3046020 (N.D. Cal. 2009)............................................................23

24
     *Cipollone v. Liggett Group, Inc.,*
25    505 U.S. 529, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992) .......................................20

26   *Digital Control Inc. v. Charles Mach. Works,*
      437 F.3d 1309 (Fed.Cir.2006) .....................................................................................3

27

28

*Dow Chemical v. Exxon Corp.*,
   30 F. Supp. 2d 673 (D. Del. 1998),.................................................................9, 22

*Fenters v. Yosemite Chevron*,
   Slip Op., 2006 WL 2016536 (E.D. Cal., July 17, 2006) ............................................7

*Florida Lime & Avocado Growers, Inc. v. Paul*,
   373 U.S. 132 (1963) .................................................................................11

*Gelow v. Central Pacific Mortg. Corp.*,
   2009 WL 2777310 (E.D. Cal., August 28, 2009) ..................................................14

*Graber v. Fuqua*,
   279 S.W.3d 608 (Tex. 2009) .......................................................................10

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966) ...................................................................................13

*Guido v. Koopmans*,
   1 Cal.App.4th 837 (1991) ..........................................................................14

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
   492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) .........................................24

*Handgards, Inc. v. Ethicon, Inc.*,
   601 F.2d 986 (9th Cir.1979)...........................................................................8

*Hatfield v. Halifax*,
   564 F.3d 1177 (9th Cir. 2009)..................................................................14, 23

*Heden v. Hill*,
   937 F. Supp. 1230 (S.D. Tex. 1996) ................................................................22

*Holiday Matinee, Inc. v. Rambus, Inc.*,
   118 Cal. App. 4th 1413 (2004)..............................................................8, 9, 15

*Hunter Douglas, Inc.  v. Harmonic Design, Inc.*,
   153 F.3d 1318 (Fed. Cir. 2008)...................................................................2, 9

*Ikuno v. Yip*,
   912 F.2d 306 (9th Cir.1990)........................................................................24

*Immunocept LLC v. Fulbright & Jaworski, LLP*,
   504 F.3d 1281 (Fed. Cir. 2007)...................................................................2, 9

*In re Grand Jury Investigation*,
   974 F.2d 1068 (9th Cir.1992).......................................................................21

*In re Swanson*,
   540 F. 3d 1368 (Fed. Cir 2008) ....................................................................11

iv

*Kearney v. Foley & Lardner,*
  566 F.3d 826 (9th Cir. 2009) ...................................................................22

*Kingsland v. Dorsey,*
  338 U.S. 318, 70 S.Ct. 123, 94 L. Ed. 2d 123 (1949) .........................6, 13

*KSR v. Teleflex,*
  550 U.S. 398 (2007) ................................................................................13

*Lantzy v.Centex Homes,*
  31 Cal. 4th 363 (2003)........................................................................14, 23

*Lipman v. Dickinson,*
  174 F.3d 1363 (Fed. Cir. 1999) .........................................................6, 13

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,*
  431 F. 3d 353 (9th Cir. 2005) ..................................................................21

*Lockwood v. Sheppard Mullin Richter & Hampton,*
  173 Cal. App. 4th 675 (2009) .....................................................2, 3, 4, 14

*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps,*
  99 Cal. App. 4th 1179 (2002)......................................................................9

*McKesson Info. Solutions, Inc. v. Bridge Medical, Inc.,*
  487 F.3d 897 (Fed. Cir. 2007)......................................................2, 3, 5, 9

McZeal v. Spring Nextel Corp.,
  501 F.3d 1354 (Fed. Cir. 2007) ..............................................................23

*Medtronic, Inc. v. Lohr,*
  518 U.S. 470, 116 S. Ct. 2240, 135 L.Ed.2d 700 (1996) .......................12

*Miley v. Harper,*
  248 Cal. App. 2d 463 (1967) .....................................................................7

*Miller v. Lucas,*
  51 Cal. App. 3d 774 (1975) ......................................................................10

*Molins PLC  v. Textron, Inc.,*
  48 F.3d 1172 (Fed. Cir. 1995) .................................................................13

*Nathan Kimmel, Inc. v. DowElanco,*
  275 F. 3d 1199 (9th Cir. 2002).................................................................8

*Newcal Indus., Inc. v. Ikon Office Solution,*
  513 F.3d 1038 (9th Cir. 2008)....................................................................1

*Nobelpharma AB v. Implant Innovations, Inc.,*
  141 F.3d 1059 (Fed. Cir. 1998) ...............................................................12

v

*Northern Telecom, Inc. v. Datapoint Corp.*,
  908 F.2d 931 (Fed. Cir. 1990)................................................................19, 22

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,
  50 Cal.3d 1118 (1990)................................................................................17

*Patlex v. Mossinghoff*,
  771 F.2d 480 (Fed. Cir. 1985)......................................................................7

*Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*,
  324 U.S. 806, 65 S. Ct. 993, 89 L. Ed. 1381 (1945) ...................4, 6, 12, 20

*Purolite Int'l Ltd. v. Rohm & Haas Co.*,
  24 U.S.P.Q.2D 1857 (E.D. Pa. 1992).........................................................23

*Reeves v. Hanlon*,
  33 Cal. 4th 1140 (2004).........................................................................15, 16

*Rohm & Haas Co. v. Chrystal Chem. Co.*,
  722 F.2d 1556 (Fed. Cir. 1983)..............................................................18, 23

*Rothman v. Target Corp.*,
  556 F.3d 1310 (Fed. Cir. 2009)...................................................................14

*Sagonowsky v. More*,
  64 Cal. App. 4th 122 (1998)........................................................................17

*Select Creations, Inc. v. Paliafito America, Inc.*,
  828 F. Supp. 1301 (E.D. Wis. 1992)......................................................23, 25

*Small v. Fritz Companies, Inc.*,
  30 Cal. 4th 167 (2003) ................................................................................12

*Solin v. O'Melveny & Myers*,
  89 Cal. App. 4th 451 (2001)........................................................................20

*Stanwyck v. Horne*,
  146 Cal. App. 3d 450 (1983)..........................................................................7

*Stavropoulos v. Superior Court*,
  141 Cal. App. 4th 190 (2006)........................................................................6

*Tafas v. Doll*,
  559 F.3d 1345 (Fed. Cir. 2009)...................................................................10

*Ticor Title Ins. Co. v. Florida*,
  937 F. 2d 447 (9th Cir. 1991) .................................................................24, 25

*Transocean Offshore Deepwater Drilling, Inc., v. Globalsantafe Corp.*,
  2006 WL 2385293 (S.D. Tex., Aug. 17, 2006).........................................19

vi

1

*U.S. Aluminum Corp. v. Alumax,* Inc.,
   831 F.2d 878 (9th Cir.1987) ....................................................................... 8

2

3

*U.S. v. Alexander*,
   287 F. 3d 811 (9th Cir. 1992) .................................................................... 21

4

*Villa v. Cole*,
   4 Cal. App. 4th 1327 (1992) ....................................................................... 4

5

6

*Virtanen v O'Connell*,
   140 Cal. App. 4th 688 (2006) ................................................................... 20

7

*Visto Corp. v. Sproqit Tech.*,
   360 F. Supp. 2d 1064 (N.D. Cal. 2005) .................................................... 17

8

9

*Werner v. Hearst Publications, Inc.*,
   65 Cal. App. 2d 667 (1944) ........................................................................ 6

10

*Westside Center Assoc. v. Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507 (1996) ..................................................................... 16

11

12

*Wyeth v. Levine*, -- U.S. --;
   129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009) ........................................... passim

13

## STATUTES

14

35 U.S.C. § 302 ........................................................................................ 11, 19

15

Cal. Civ. Code §47(b) ............................................................................... 15, 17

16

Fed. R. Civ. P. 9(b) ....................................................................................... 13

17

Fed. R. Civ. P. 12(b)(6) ........................................................................... passim

18

## REGULATIONS

19

20

37 C.F.R. § 1.555 ............................................................................... 11, 12, 20

21

37 C.F.R. § 1.56(a) ................................................................................... 3, 12

## OTHER

22

Manual of Patent Examining Procedure § 2010 ............................................ 2

23

Manual of Patent Examining Procedure § 2246 ............................................ 7

24

25

26

27

28

## I.   SUMMARY OF ARGUMENT

In addition to moving to strike under the California Anti-SLAPP statute, Defendants move to dismiss the Complaint under Federal Rule Civil Procedure ("FRCP") 12(b) (6).[1]  A motion to dismiss under Rule 12(b)(6) must be denied if a plaintiff has averred "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* --- U.S. ---, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009).  Since the Anti-SLAPP standard does not apply to Plaintiffs' exclusively federal claims, the Court should review the complaint under the *Ashcroft* standard.  *See* Pl. Opp. to Def. Mot. to Strike.  All facts alleged in the Complaint should be accepted as true and all reasonable inferences drawn in favor of the Plaintiffs.  *See Newcal Indus., Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1043 n. 2 (9th Cir. 2008).[2]

Defendants argue the Complaint should be dismissed because:   (1) it does not aver facts sufficient to plead a claim under the Racketeering Influenced Corrupt Organizations Act ("RICO") or the other claims; (2) Plaintiffs' malicious prosecution and fraud claims are preempted by federal patent law; (3) Plaintiffs' claims are time-barred;[3] (4) the state independent investigation doctrine bars malicious prosecution; and (5) the California litigation privilege bars the fraud and interference claims.[4]  *See*

---

[1] Plaintiffs incorporate by reference their Opposition to Defendants' Anti-SLAPP Motion to Strike and the legal points and authorities therein which relate to the common issues in this Motion to Dismiss, filed currently.
[2] However, Plaintiffs can and do meet the evidentiary requirements for defeating a summary judgment or Anti-SLAPP Motion, and in addition to referring the Court to the relevant portions of the Complaint which support their claims, they have provided evidence on each element of each count sufficient to sustain a judgment in their favor.  *See Newcal Indus., Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1043 n. 2 (9th Cir.2008). *See also* Declarations of Lawrence B. Lockwood ("Lockwood Decl."), Professor John R. Thomas ("Thomas Decl.), Professor David G. Kay ("Kay Decl."), and David Drews ("Drews Decl.").
[3] Plaintiffs have addressed Defendants' argument that the malicious prosecution count is time barred and demonstrated that it is not. *See* Pl. Opp. to Mot. to Strike at Section VI.
[4] Plaintiffs have addressed Defendants' argument that the California litigation privilege and demonstrated that it does not apply.  *See* Pl. Opp. to Mot. to Strike at Section V.

PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS

1   Memo. in Supp. of Def. Mot. to Dismiss.("Def. 12(b)(6) Memo.") at 1-2.  Each of

2   these grounds fails as described in detail below.

3          First, whether applying the heightened standard of Anti-SLAPP or the federal

4   standard for Rule 12(b)(6) motions, the Complaint alleges with particularity and

5   Plaintiffs submit supporting evidence proving that Defendants, in violation of federal

6   patent law standards, orchestrated a scheme to defraud the USPTO and Plaintiffs by

7   submitting deceptive, false and fraudulent requests for reexamination without any

8   reasonable basis in law or fact, as a means for harming Plaintiffs' property interests in

9   Plaintiff Lockwood's two e-commerce patents (the "Patents").

10         Plaintiffs' claims for malicious prosecution and fraud before the USPTO,

11  which arise under federal patent law, are entirely consistent with express

12  congressional purposes that courts be the arbitrators of inequitable conduct and fraud

13  on the USPTO, and therefore are not preempted.  *See Wyeth v. Levine*, -- U.S. --; 129

14  S. Ct. 1187, 1194-1195, 173 L. Ed. 2d 51 (2009).  The *Buckman* case, which

15  addressed the preemption doctrine in the context of  Congress having expressly

16  provided the federal agency (the FDA) with a panoply of remedies to police fraud on

17  the agency which the court found conflicted with state remedies, is inapposite and

18  does not support Defendants' proposition that Plaintiffs' federal question claims

19  could be preempted by federal law.  *See Buckman Co. v. Plaintiffs' Legal Committee*,

20  531 U.S. 341, 121 S. Ct. 1012, 148 L.Ed.2d 854 (2001).[5]

21

22  ────────────────
    [5] Unlike the FDA in *Buckman*, the USPTO is not charged by Congress with policing
23  fraud; rather, the USPTO has expressly stated that the courts are to adjudicate fraud
    on the USPTO.  *See* MPEP § 2010 (stating that "[t]he Office [USPTO] is not the best
24  forum in which to determine whether there was an 'intent to mislead', such intent is
    best determined when the trier of fact can observe demeanor of witnesses subjected to
25  cross-examination.  A court, with subpoena power, is presently the best forum to
    consider duty of disclosure issues under the present evidentiary standard for finding
26  an intent to mislead").  *See also* Thomas Decl. ¶¶ 18-26.  Rather, with congressional
    acquiescence, courts have traditionally adjudicated fraud and misconduct before the
27  USPTO, including state law claims arising under federal patent law.  See e.g., *Air
    Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504
28  F.3d 1262 (Fed. Cir. 2007), *Immunocept LLC v. Fulbright & Jaworski, LLP*, 504 F.3d
    1281 (Fed. Cir. 2007).*McKesson Info. Solutions, Inc. v. Bridge Medical, Inc.*, 487

                                          2

## II.   STATEMENT OF FACTS

Defendants' characterization of the background facts and of the procedural history of the underlying cases is inaccurate.[6]  Plaintiffs have set forth the accurate facts in their Opposition to Defendants' Motion to Strike.  Additionally, evidence supporting the facts is set out in Declarations of Lawrence B. Lockwood ("Lockwood Decl."), Professor John R. Thomas of Georgetown University Law Center ("Thomas Decl."), Mr. David G. Kay of University of California Irvine Computer Science Department ("Kay Decl."), and Mr. David Drews, of Consor Intellectual Asset Management ("Drews Decl.") filed concurrently in support of Plaintiffs' Opposition to the Motion to Strike.

## III.   THE COMPLAINT ALLEGES AND EVIDENCE SUPPORTS A PRIMA FACIE CASE FOR MALICIOUS PROSECUTION

In order to prevail in a malicious prosecution action against an attorney who without reasonable basis in law or fact made misrepresentations to the USPTO in a request for reexamination challenging the Plaintiffs' Patents, Plaintiffs must plead and prove that (1) Defendants owed the USPTO a strict duty of absolute candor when making submissions; (2) Defendants violated that duty by submitting requests for reexamination of the patents without any reasonable basis under federal patent law; (3) with the intent to deceive and to use the USPTO for the purpose of causing economic harm to Plaintiffs, the patent holders; and that (4) the USPTO proceedings terminated in plaintiffs' favor.  *See McKesson Info. Solution v. Bridge Medical, Inc.*, 487 F.3d 897, 913(Fed. Cir. 2007), citing *Digital Control Inc. v. Charles Mach. Works,* 437 F.3d 1309, 1313 (Fed.Cir.2006); 37 C.F.R. § 1.56(a) ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the

---

F.3d 897 (Fed. Cir. 2007), *Hunter Douglas, Inc.  v. Harmonic Design, Inc.,* 153 F.3d 1318 (Fed. Cir. 2008), *Ball v. Xidex Corp.*, 967 F.2d 1440, 1447 (10th Cir. 1992).
[6] Defendants also make improper ad hominem attacks.

3

1    Office all information known to that individual to be material to patentability as

2    defined in this section."); *Precision Instrument Mfg. Co. v. Automotive Maintenance*

3    *Mach. Co.,* 324 U.S. 806, 818, 65 S. Ct. 993, 999, 89 L. Ed. 1381 (1945); *Ball v.*

4    *Xidex Corp.*, 967 F.2d 1440, 1447 (10th Cir. 1992); *Villa v. Cole*, 4 Cal. App. 4th

5    1327, 1335 (1992).  The California Court of Appeal in the state case set out these

6    elements:  "To prevail on any of his claims Lockwood at a minimum would have to

7    prove that:  (1) the prior art references Sheppard Mullin cited did not qualify as prior

8    art under the patent laws and/or did not disclose what Sheppard Mullin said they

9    disclosed; (2) Sheppard Mullin knew or should have known that its representations

10   regarding the prior art references were incorrect or misleading; and (3) but for

11   Sheppard Mullin's misrepresentations, the USPTO would not have granted the

12   request for reexamination." *Lockwood v. Sheppard Mullin Richter & Hampton*, 173

13   Cal. App. 4th 675, 687-88 (2009).

14        The Complaint states that Defendants are attorneys admitted USPTO

15   practitioners and that they were bound by the statutory duty of candor; those facts are

16   undisputed by Defendants.  *See* Compl. ¶¶ 38, 40-42, 44-48, 50-61, 89.  Plaintiffs

17   plead and demonstrate that Defendants violated their duty of candor by making false

18   submissions to the USPTO without any objectively reasonable basis under federal

19   patent law.  *See id.*; Thomas Decl. ¶¶ 27-55;   Kay Decl. (in its entirety).  Plaintiffs

20   plead and demonstrate that the USPTO relied on Defendants' misrepresentations and

21   would not have granted the Requests without those misrepresentations.  *See* Compl.

22   ¶¶13, 38, 40, 43, 46-47, 83, 138; Thomas Decl. ¶¶ 6, 43-44, 51.  Plaintiffs have

23   alleged and submitted evidence that Defendants' misrepresented and deceptively

24   characterized the date and public accessibility of irrelevant references which was

25   deceptive to the examiner, as well as mischaracterized the submitted prior art in order

26   to deceive the USPTO and cause reexamination to be granted.  *See* Compl.¶¶ 42, 48-

27   61; Kay Decl.; Thomas Decl. ¶¶ 6, 28-32, 34-43, 47, 51, 55.  Further, Plaintiffs have

28   submitted evidence that Defendants made numerous statements characterizing the

1  references in a deceptive way, which were factually false and inaccurate, and were

2  submitted in deceptive way (by, inter alia, attaching amounts of irrelevant data and

3  making broad statements of claim invalidation) that a reasonable examiner would

4  have relied on and would necessarily have had to grant reexamination to fully

5  investigate such unequivocal assertions.[7]  *See* Compl.¶¶ 42-43, 46-61, 83, 138; Kay

6  Decl.; Thomas Decl.¶¶ 35-44.  *See also McKesson.*, 487 F.3d at 913.  Plaintiffs plead

7  and show that the proceedings terminated in Plaintiffs' favor.  *See* Compl. ¶¶ 6, 77-

8  79; Lockwood Decl. ¶42, Exs. 54-55.  Plaintiffs plead and offer evidence that

9  Defendants' malicious instigation of reexamination before the USPTO caused

10  Plaintiffs the loss of valuable years of the use of the Patents resulting in severe

11  economic harm.  *See* Compl. ¶¶ 5, 43, 64, 93, 142, 162; Drews Decl. ¶¶ 6-8, 20-29,

12  59-66, 77-79; Lockwood Decl . ¶¶ 34, 38, 39 Ex. 49.[8]  Accordingly, the motion to

13  dismiss should be denied.

14      **A.    Plaintiffs' Claim for Malicious Prosecution Is Not Time-Barred**

15          Defendants also argue that Plaintiffs' claim for malicious prosecution is time-

16  barred because it was filed more than two years after the Fraudulent Request was

17  _____

18  [7] Under federal patent law which provides the rule of decision for Plaintiffs' claims, materiality is judged by the objective "reasonable examiner" standard.  See Thomas

19  Decl.¶¶ 12, 25.  *See also McKesson Info. Solution v. Bridge Medical, Inc.*, 487 F.3d 897, 913(Fed. Cir. 2007); *Akron Polymer Corp. v. Exxel Container, Inc.*, 148 F.3d

20  1380, 1382 (Fed. Cir. 1998); Thomas Decl. ¶¶ 23-26.  *See also Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426, 84 S. Ct. 923, 939, 11 L.Ed.2d 804

21  (1964)(holding that creation of federal rules of decision (federal common law) "necessary to protect uniquely federal interests").

22  [8] In the context of inequitable conduct before the USPTO, intent may be "proven by inferences drawn from facts, with the collection of inferences permitting a confident

23  judgment that deceit has occurred."  *McKesson*, 487 F. 3d at 913; *Akron Polymer*, 148 F.3d at 1382; Thomas Decl. ¶ 23-26.  Here, Plaintiffs have alleged and

24  submitted supporting evidence that prior to the *Markman* hearing at which time the Defendants knew the scope of the valid Patents would be adjudicated, Defendants

25  knowingly submitted references which they mischaracterized as prior art by manipulating the date of publication.  *See* Compl.¶¶ 135, 155; Thomas Decl.¶¶ 6, 28-

26  43, 47, 51, 55.  Defendants did not have a reasonable basis in fact or law that the references taught the patented claims, Plaintiffs have plead and offered evidence that

27  Defendants acted to deceive the USPTO in order to use the reexamination process to put Plaintiffs out of business -- not to legitimately challenge the Patents.  *See* Compl.

28  ¶¶ 82, 141; Lockwood Decl. ¶¶ 15, 18, 21-23, 25-34; Kay Decl.; Thomas Decl. ¶31. *See also McKesson*, 487 F.3d at 913.

1  granted.  The termination of the proceedings in favor of Plaintiffs confirming all

2  claims in the Patents occurred on July 17, 2007 and January 29, 2008.  *See* Compl. ¶¶

3  6, 77-79; Lockwood Decl. ¶42, Exs. 54-55.  The Complaint was filed within two

4  years of the termination of the proceedings in Plaintiffs' favor.  *See Stavropoulos v.*

5  *Superior Court*, 141 Cal. App. 4th 190, 197 (2006)).[9]

6  **B.    The USPTO's Grant of Reexamination is Dependent Upon the Duty**
7  **of Candor and the Independent Investigation Doctrine Does Not**
   **Apply**

8  Defendants argue that the Plaintiffs' claim for malicious prosecution fails as a

9  matter of law because the reexamination proceedings were subject to an "independent

10 examination" by the USPTO.  *See* Def. 12(b)(6) Memo at 11-12, 14.  In fact, no

11 independent investigation, as that term is defined in cases cited by Defendants or any

12 court, was conducted during the initial review of the Fraudulent Requests.  The

13 USPTO functions by relying upon the strict duty of candor required for practice

14 before the USPTO, and the USPTO examiners assume that representations made to

15 them will not be false or misleading.  *See* Thomas Decl. ¶¶18-22, 27.  *See also*

16 *Precision Instrument,* 324 U.S. 806, 818.

17 The initial decision to grant reexamination relies on the practitioner's duty of

18 candor and relies on the information given to the USPTO in the formal written

19 requests which are required by patent law.  *See e.g., Kingsland v. Dorsey*, 338 U.S.

20 318, 319, 70 S.Ct. 123, 94 L. Ed. 123 (1949) ("[T]he relationship of attorneys to the

21 Patent Office requires the highest degree of candor and good faith.") (cited with

22 approval in *Lipman v. Dickinson*, 174 F.3d 1363, 1371 (Fed. Cir. 1999)).  *See also*

23 Thomas Decl. ¶¶11, 18-22, 27.  Therefore, the initial USPTO review of the Requests

24 did not include investigation of the "probable truth of the charge" in the way that the

25 State Bar conducted investigations for the purpose of an order to show cause in

26 *Werner v. Hearst Publications, Inc.*, 65 Cal. App. 2d 667, 672 (1944).  *See* Def.

27

28 _____
[9] *See also* Pl. Opp. to Def. Anti-SLAPP Mot. to Strike at Section VI.

6

1   12(b)(6) Memo. at 16-18.  *See also* Thomas Decl.¶¶ 11-18, 48; *Stanwyck v. Horne*,

2   146 Cal. App. 3d 450 (1983).   In fact, the Manual of Patent Examining and Practice

3   ("MPEP") § 2246 instructs the examiner that he is "not [to] decide, and no statement

4   should be made as to, whether the claims are rejected over the patents and printed

5   publications" in the decision on the initial request for reexamination."  *See* MPEP §

6   2246.  *See also* Thomas Decl.¶48; *Patlex v. Mossinghoff*, 771 F.2d 480, 483 (Fed.

7   Cir. 1985) ("The PTO points up [sic] that the only purpose of this stage of the

8   proceeding is to decide whether reexamination should go forward at all, not to decide

9   how any new question of patentability ultimately will be answered.").

10      Thus, the examiner's initial review is wholly *dependent upon* the duty of

11   candor required by patent practitioners.  See *Patlex*, 771 F.2d at 483; Thomas Decl.

12   ¶¶18-22, 27, 48.  *See also Miley v. Harper*, 248 Cal. App. 2d 463 (1967)(requiring

13   administrative agency's investigation must be truly independent to bar a malicious

14   prosecution claim).

15      In *Fenters v. Yosemite Chevron*, Slip Op., 2006 WL 2016536 (E.D. Cal., July

16   17, 2006), the district court rejected the argument that plaintiffs failed to state a claim

17   for  malicious prosecution on the ground that the District Attorneys' Office conducted

18   an independent investigation of the Defendants' charges.  *Id*. at 18-19. The district

19   court relied on *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004),

20   wherein the Ninth Circuit, addressing a claim of malicious prosecution in violation of

21   Section 1983, held:

22      The presumption of prosecutorial independence does not bar a
        subsequent § 1983 claim against state or local officials who improperly
23      exerted pressure on the prosecutor, knowingly provided misinformation
        to him, concealed exculpatory evidence, or otherwise engaged in
24      wrongful or bad faith conduct that was actively instrumental in causing
        the initiation of legal proceedings.
25

26      *Awabdy*, 368 F.3d at 1067.

27      Because Plaintiffs have alleged and submitted evidence that the USPTO review

28   of the Fraudulent Requests was not independent, but rather depended upon the

7

1    wrongful and bad faith conduct of Defendants, the independent investigation doctrine

2    does not bar Plaintiffs' claims as a matter of law.

3    **IV.    PLAINTIFFS' CLAIMS ARE CONSISTENT WITH FEDERAL**
         **PATENT LAW AND ARE NOT PREEMPTED UNDER THE**
4        **SUPREMACY CLAUSE**

5           Defendants assert that Plaintiffs' malicious prosecution and fraud claims are

6    preempted by the federal reexamination statute.  *See* Def. 12(b)(6) Memo. at 18-2.

7    However, Plaintiffs' claims present no conflict with the federal patent statutes and

8    regulations.  Indeed, these causes of action turn on and are consistent with federal

9    patent law and policies.  *See Wyeth,* 129 S. Ct. 1187, 1194-1195 (2009)(reaffirming

10   that preemption requires a showing of an actual conflict between state and federal

11   law).

12          Where there is no express preemption clause in the federal statute, there is a

13   presumption against preemption, unless there is a showing that the state law stands as

14   an obstacle to the "clear and manifest" purpose of Congress.  *See Wyeth*, 129 S. Ct. at

15   1195.[10]  Defendants cite no case in any jurisdiction holding that the torts of malicious

16   prosecution or fraud[11] based on proceedings before the USPTO is preempted by

17   federal patent law.  Rather, the Ninth Circuit has held that federal patent law <u>does not</u>

18   conflict with or preempt malicious prosecution claims brought for bad faith

19   instigation of infringement suits by patentees.  For example, in *U.S. Aluminum Corp.*

20   *v. Alumax,* Inc., 831 F.2d 878, 881 (9th Cir.1987), the Ninth Circuit held that

21   "[p]atents do not create an exemption from state malicious prosecutions laws." (citing

22   *Handgards, Inc. v. Ethicon, Inc.,* 601 F.2d 986, 998 n. 17 (9th Cir.1979), and

23

24   ────────────────────
     [10] Defendants can point to no express preemption clause in the federal act, and the
25   *Nathan Kimmel, Inc. v. DowElanco,* 275 F. 3d 1199 (9th Cir. 2002), cited by
     Defendants is not on point.  In that case the federal statute, FIFRA expressly limited
26   state regulation of pesticides, and therefore plaintiffs' claims for interference based
     upon it could not go forward.  *Id.* at 1208.
27   [11] Defendants do not assert that interference with business advantage is barred by
     federal preemption.  *See Holiday Matinee, Inc. v. Rambus, Inc.,* 118 Cal. App. 4th
28   1413 (2004) (holding Plaintiffs' interference cause of action arose under federal
     patent law and was subject to the exclusive federal court jurisdiction);

8

1   *Hydranautics v. FilmTec Corp.,* 204 F.3d 880, 886 (9th Cir.2000) (approving a state

2   law malicious prosecution claim arising from patent infringement action).  *See also*

3   *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps*, 99 Cal. App. 4th 1179

4   (2002)(holding that the toy manufacturer's state claim against a law firm for

5   malicious prosecution was not preempted by federal patent law).

6        With the full acquiescence of Congress, courts routinely adjudicate the issue of

7   fraud on the USPTO (e.g., inequitable conduct) and even unreasonable attorney

8   negligence before the USPTO.  *See e.g., Immunocept*, 504 F. 3d 1281 (Fed. Cir.

9   2007); *Air Measurement*, 504 F.3d 1262, 1269 (Fed. Cir. 2007) (legal malpractice

10  arising out of submissions)*; McKesson*, 487 F.3d 897 (holding patent unenforceable

11  where patentee breached duty of candor before the USPTO).  *See also Ball*, 967 F.2d

12  1440 (10th Cir. date) (holding same duty of candor required before USPTO in

13  application process applies in reexamination proceedings before the USPTO);

14  Thomas Decl. ¶¶ 23-26.[12]

15       Well-established jurisprudence of state law claims that turn on issues of patent

16  law contradicts Defendants' assertion that the entire field of patent law preempts the

17  tort of malicious prosecution or fraud.  *See, e.g, Hunter Douglas, Inc. v. Harmonic*

18  *Design, Inc.,* 153 F.3d 1318, 1333 (Fed. Cir. 1998) (holding no field preemption of

19  state unfair competition claims that rely on a substantial question of federal patent

20  law); *Dow Chemical*, 139 F.3d at 1478 (stating "[s]tate law governs the maintenance

21  of orderly contractual relations and this function is not preempted merely because

22  patents and patent issues are presented in the substance of those contracts."); *Holiday*

23  *Matinee*, 118 Cal. App. 4th 1413 (holding Plaintiffs' interference cause of action

24

25  _____
    [12] Congressional acquiescence is "powerful evidence" that Congress did not intend
26  USPTO oversight to be an exclusive means of ensuring reexamination be instigated
    for means of harassment and protection of the duty of candor.  *See Wyeth*, 129 S. Ct.
27  at 1200 ("The case for federal preemption is particularly weak where Congress has
    indicated its awareness of the operation of state law in a field of federal interest, and
28  has nonetheless decided to stand by both concepts and to tolerate whatever tension
    there [is] between them.").

1 arose under federal patent law and was subject to the exclusive federal court

2 jurisdiction); *Miller v. Lucas*, 51 Cal. App. 3d 774, 776 (1975) (upholding state tort

3 claims based on interference with plaintiff's rights in a patent, stating "[a]lthough the

4 federal district courts have exclusive jurisdiction in patent and copyright cases (28

5 U.S.C. § 1338(a)), 'every action that involves, no matter how incidentally, a United

6 States Patent is not for that reason governed exclusively by federal law.").

7         Further, as is true in this case, in *Wyeth v. Levine*, the Supreme Court held that

8 because *there was no federal remedy* provided in legislation regulating the labeling of

9 drugs by the FDA, the state cause of action for failure to warn which enforced the

10 objectives of Congress's legislative scheme would not be preempted. [13]  *See Wyeth*,

11 129 S. Ct. at 1194-95.  Defendants cannot point to any conflict between state

12 remedies and federal patent law, because Congress has not provided the USPTO a

13 remedy to police fraud before it and relies on the courts to do so.  *See* Thomas Decl.

14 ¶26.  In fact, in 1988 the USPTO, with the acquiescence of Congress, eliminated its

15 power to police, enforce or monitor fraud before it, giving that responsibility to

16 private litigants bringing actions in court.  *See* Thomas Decl. ¶26.  *See also Tafas v.*

17 *Doll*, 559 F.3d 1345, 1358 (Fed. Cir. 2009), *vacated on other grounds*, 328 Fed.

18 Appx. 658 (Fed. Cir. 2009) ("The reach of inequitable conduct is solely within the

19 control of the courts . . . .").

20 _____

21 [13] The case of *Graber v. Fuqua*, 279 S.W.3d 608 (Tex. 2009) is also instructive.  The
   Defendants argued that Plaintiffs' malicious prosecution claim for initiating
22 proceedings in Bankruptcy Court was preempted by the Bankruptcy Code.  The court
   disagreed, stating:
23         "[t]he relevant inquiry is not whether Congress contemplated
           remedies for abuses of the bankruptcy process generally, for that
           kind of blanket analysis ignores relevant distinctions between
24         various bankruptcy processes, and it undervalues the presumption
           against preemption. Instead, we must determine the extent to which
25         Congress contemplated remedies for abuse of a bankruptcy
           adversary proceeding, the particular action on which Fuqua based
26         his malicious prosecution claim." *Id*. at 612.

27 The Texas Supreme Court concluded that "Congress said very little about remedies
   for abuse of an adversary proceeding." *Id.* at 613.  Likewise, here, Defendants cite to
28 no provision in the patent statutes providing remedies for abuse of the adversarial
   reexamination proceeding which would preempt malicious prosecution.

10

1  Further, in keeping with *Wyeth*, in the *Buckman* case (heavily relied upon by

2  Defendants), the Supreme Court held that only where the federal regulatory scheme is

3  charged with policing fraud can there be preemption of "fraud on the agency" claims.

4  *Buckman*, 531 U.S. 341.  In *Buckman*, the conflict with state remedies stemmed from

5  the fact that federal law "amply *empowers the FDA to punish and deter fraud against*

6  *the Administration*, and that this authority is used by the Administration to achieve a

7  somewhat delicate balance of statutory objectives. . . . various provisions aimed at

8  detecting, deterring, and punishing false statements made during this and related

9  approval processes." *Id*. at 349(emphasis added). [14]

10  Defendants cannot overcome the presumption against preemption because they

11  cannot show it is impossible to comply with both the state-law duties underlying the

12  malicious prosecution claim and their duties under federal patent law.  *See Wyeth*,

13  129 S. Ct. at 1198-1199; *Florida Lime & Avocado Growers, Inc. v. Paul,*  373 U.S.

14  132, 142-143 (1963).  According to Defendants, any person at any time may file a

15  request, so long as the threshold "substantial new question of patentability" standard

16  is met.  Def. 12(b)(6) Memo. at 19, citing 35 U.S.C. § 302; *In re Swanson,* 540 F. 3d

17  1368 (Fed. Cir 2008).  There is no showing by Defendants that these purposes would

18  be frustrated by the tort of malicious prosecution; indeed, the "quality check"

19  provided by the federal standard is reinforced while discouraging any requests that do

20  not meet that minimum threshold.  *See* Def. 12(b)(6) Memo at 19.

21  Nor do Defendants include in their analysis of congressional purposes the

22  federal rules and regulations requiring an "uncompromising duty of candor" before

23

---

24  [14] Likewise in *Abbott Labs. v. Brennan,* 952 F.2d 1346 (Fed. Cir. 1992) the Federal
    Circuit held that a state tort action for abuse of process was preempted because

25  federal patent law already provided a remedy -- inequitable conduct -- for those
    claims.  *See Abbott,* 952 F.2d at 1357.  Here, there is no remedy provided by the

26  USPTO for the *patent-holder* whose constitutional rights to exclusivity of his patent
    have been violated by a third-party petitioner during reexamination process.  37

27  C.F.R. § 1.555.  Nor is there any established regulatory mechanism for policing or
    enforcing fraud before the USPTO; that role is for the courts.  *See* Thomas Decl.¶¶

28  26.

11

1    the USPTO.  *See Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S. Ct. 2240, 135

2    L.Ed.2d 700 (1996).  *See also* 37 C.F.R. § 1.56(a) (1990); 37 C.F.R. § 1.555(a);

3    *Precision Instrument,* 324 U.S. 806, 818.  The federal regulations requiring a duty of

4    candor and the qualified immunity for statements made is consistent with, not in

5    conflict with, the tort remedies for malicious prosecution and fraud.  Defendants have

6    made no showing that state law and federal law can both be applied in the case

7    consistent with the purposes of Congress.

8         Accordingly, Plaintiffs' claim for malicious prosecution is "plausible on its

9    face," and the supporting evidence is sufficient to sustain a verdict in Plaintiffs favor.

10   *Ashcroft*, 129 S. Ct. at 1949.  Therefore, the motion to dismiss should be denied.

11   **V.    THE COMPLAINT SUFFICIENTLY PLEADS AND EVIDENCE
         SUPPORTS DEFENDANTS' FRAUD BEFORE THE USPTO**
12

13        A claim for fraud before the USPTO requires a showing that (1) Defendants

14   made misleading and false representations to the USPTO, (2) with knowledge of their

15   falsity, (3) intending to deceive the USPTO and Plaintiffs by inducing reliance, (4)

16   the USPTO and Plaintiff did in fact rely on the misrepresentations, (5) but for the

17   fraudulent requests, Plaintiffs would not have suffered the loss of the use of the

18   Patents during the four-year time of the proceedings.  *See Nobelpharma AB v.*

19   *Implant Innovations, Inc.*, 141 F.3d 1059, 1070 (Fed. Cir. 1998) (fraud claim

20   premised on "a knowing, willful and intentional act, misrepresentation or omission

21   before the [PTO]). [15] *See also Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173

22   (2003).

23   _____

24   [15] Here, Plaintiffs have alleged and submitted evidence that Defendants manipulated
     the date of a purported prior art, as well as mischaracterized the submitted prior art in
     order to deceive the USPTO and those misrepresentions were material to the
25   USPTO granting reexamination.  *See* Kay Decl.; Thomas Decl. ¶¶ 6, 18-22 28-32, 34-
     44, 47, 51, 55.  Further, Plaintiffs have submitted evidence that Defendants made
26   numerous statements characterizing the submitted in a deceptive manner references of
     purported "prior art" which were factually false and inaccurate, and were submitted in
27   deceptive way (by submitted large amounts of irrelevant data and making broad
     statements of claim invalidation) that a reasonable examiner would have relied on and
28   would necessarily have to grant reexamination to fully investigate such assertions.

                                          12

1   Plaintiffs plead with particularity under Federal Rule 9(b) the who, what, when,

2   where and how of Defendants' fraudulent misrepresentations before the USPTO and

3   offer evidence in support of each allegation.  *See* Compl. ¶¶ 42, 48-61; Kay Decl.;

4   Thomas Decl. ¶¶ 6, 28-55.  *See also Molins PLC  v. Textron, Inc.*, 48 F.3d 1172 (Fed.

5   Cir. 1995).  Defendants did make false statements to the USPTO about the prior art.

6   *See* Compl. ¶¶ 50-61; Kay Decl.; Thomas  Decl. ¶¶ 6,28-55.   Plaintiffs relied on the

7   misrepresentations.  Lockwood Decl. ¶¶ 24, 28, 31, 33.   The USPTO examiner relied

8   on the false statements.  Thomas Decl. ¶¶ 18-22, 27; Compl. ¶¶ 38, 40-41, 43, 46-47,

9   49, 64, 83, 127, 138.  *See also Kingsland*, 338 U.S. at 319, 70 S.Ct. 123, 94 L. Ed. 2d

10  123 (1949) ("[T]he relationship of attorneys to the Patent Office requires the highest

11  degree of candor and good faith.") (cited with approval in *Lipman v. Dickinson*, 174

12  F.3d 1363 (Fed. Cir. 1999)).  But for the Fraudulent Requests, Plaintiffs would not

13  have lost valuable licensing revenues.  Compl. ¶¶ 83, 94, 100, 109, 140, 144-146;

14  Drews Decl.¶¶ 6-31,59-66, 77; Thomas Decl.¶¶ 6, 43-44, 51.[16]

15      Plaintiffs have sufficiently pled with particularity under Fed. R. Civ. P. Rule

16  9(b), as well as set forth evidence which would sustain a judgment in their favor on

17  their cause of action for fraud.

18

19  *See* Compl. ¶¶ 45, 55, 61, 107; Kay Decl.; Thomas Decl. ¶¶ 6, 18-22, 27, 28-43, 47
    51, 55.  *See also KSR v. Teleflex*, 550 U.S. 398, 399, 127 S.Ct. 1727, 167 L. Ed. 2d 705

20  (2007) (confirming earlier holding in *Graham v. John Deere Co.*, 383 U.S. 1 (1966)
    that "[u]nder § 103, the scope and content of the prior art are to be determined;

21  differences between the prior art and the claims at issue are to be ascertained; and the
    level of ordinary skill in the pertinent art resolved . . . .  Such secondary considerations

22  as commercial success, long felt but unresolved needs, failure of others, etc., might be
    utilized to give light to the circumstances surrounding the origin of the subject matter

23  sought to be patented.  As indicia of obviousness or non-obviousness, these inquires
    may have relevancy.").

24  [16] Defendants improperly attempt to argue the facts alleged at the motion to dismiss
    stage.  *See* Def. Anti-SLAPP Memo. at 9 (arguing Plaintiffs' allegations of fraud fail

25  because "Complaint does not dispute that the application for the '319 patent was filed
    in 1994 and that it was only an "argument" before the PTO that the earliest priority

26  date was January 24, 1986.).  These "facts" are in dispute; and Defendants do not deal
    with the fact – not disclosed to the USPTO – that the Electronic Mall could not under

27  any reasonable set of circumstances be prior art by definition since it was an
    unpublished, confidential manual dated well after the date at which it might have

28  been available as prior art to the '319 Patent under any reasonable construction of
    federal patent law.  *See* Thomas Decl.¶¶ 35-44.

13

**A.     Plaintiffs' Fraud Claim is Timely**

The claim for fraud on the USPTO is not time-barred.  Defendants argue that the claim for fraud is time barred because the Complaint was filed more than four years after the USPTO granted their Fraudulent Requests.  Def. 12(b)(6) Memo. 25. However, the statute of limitations for fraud is tolled during any period where defendant's fraud conceals the cause of action and reliance on the fraud is reasonable. *See Bernson v. Browning-Ferris Industries*, 7 Cal. 4th 926, 931 (1994); *Lantzy v.Centex Homes*, 31 Cal. 4th 363, 370 (2003) (equitable tolling suspends statute of limitations as necessary to ensure fundamental practicality and fairness).  *See also Rothman v. Target Corp.*, 556 F.3d 1310, 1329 (Fed. Cir. 2009).[17]  The issue of the reasonableness of plaintiffs' reliance on false statements is a question of fact which cannot be resolved even on a motion for summary judgment.  *Gelow v. Central Pacific Mortg. Corp.*, 2009 WL 2777310 at 9 (E.D. Cal., August 28, 2009); *Guido v. Koopmans*, 1 Cal.App.4th 837, 843-44 (1991)(reasonableness of a plaintiff's reliance on false statements made by  defendant is typically a question of fact, informed by the plaintiff's knowledge, education, and experience.) .

Finally, even if the statute of limitations began to run at the time of filing, the Complaint was timely filed.  On June 4, 2007, within the four year period, Plaintiff Lockwood had filed his state court complaint alleging substantially the same facts supporting fraud as this action.  *See* Def. 12(b)(6) Memo. at 6; Lockwood Decl. ¶43 (tolling agreement with Defendants).  Therefore, the filing of the state action tolled the statute of limitations.  *See Hatfield v. Halifax*, 564 F.3d 1177 (9th Cir. 2009).

/ / /

---

[17] In *Rothman v. Target Corp.*, 556 F.3d 1310, 1329, cited by the Defendants, the evidence in support of deception and fraud on the USPTO actually went to jury on whether alleged prior art was material and was intentionally omitted by patentee to deceive. *Id.* Therefore, *Rothman* militates in favor of a fact-finder reviewing all the evidence presented to the USPTO or omitted in order to determine its materiality and whether it supports intent to deceive; it does not support dismissal as a matter of law at the motion to dismiss.

14

**B.    The California Litigation Privilege Is Inapplicable to the Fraud Claim Based on Misconduct Before the USPTO**

Plaintiffs have addressed the inapplicability of Cal. Civ. Code §47(b) the claims based on fraud on the USPTO in their Opposition to Defendants' Motion to Strike at Section V.

**C.    The Fraud Claim Based on Misconduct Before the USPTO Is Not Preempted by Federal Law**

Defendants' argument that Plaintiffs' claim for fraud on the USPTO is preempted by federal law is addressed above in Section IV.

**VI.    THE COMPLAINT SUFFICIENTLY PLEADS AND EVIDENCE SUPPORTS PLAINTIFFS' CLAIM FOR INTERFERENCE**

The five elements for intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *See Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152 (2004). *See also Holiday Matinee*, 118 Cal. App. 4th 1413 (holding Plaintiffs' interference cause of action arose under federal patent law and was subject to the exclusive federal court jurisdiction).

Plaintiffs have pled and offered supporting evidence that by presenting fraudulent and baseless reexamination requests to the USPTO, Defendants intentionally interfered with the economic relationship between Plaintiffs and licensors of his Patents, which has caused Plaintiffs serious economic harm. *See* Compl. ¶¶ 6, 72, 94, 100, 145; Lockwood Decl. ¶¶ 34, 38-39, Ex. 49; Drews Decl. ¶¶ 6-8, 20-29, 59-66, 77-79.  Plaintiffs have pled the existence and identity of the prospective licensors of the Patents (infringing e-commerce companies), which had

15

1  been identified Plaintiffs and their team of advisors prior to the original infringement

2  action before the Southern District of California.  *See* Compl. ¶27; Lockwood Decl.

3  ¶¶ 3, 5, Exs. 12-13.  *See also Reeves,* 33 Cal.4th 1140, 1152.  Defendants do not

4  dispute that that they knew that Plaintiffs were licensing the e-commerce Patents as a

5  result of the enforcement proceedings in which Defendants participated as counsel,

6  and that the Defendants induced a stay in the district court upon initiating the

7  Fraudulent Requests.  *See* Def. 12(b)(6) Memo at 1, 3.

8       Moreover, there were numerous similarly-situated infringers that had been

9  targeted as potential licensees and which would have licensed Patents but for the

10  "cloud" that was placed on the Patents' validity by the wrongful instigation of the

11  reexamination proceedings by Respondents.  *See* Lockwood Decl. ¶¶ 5, 32, 34, Ex.

12  49.  Therefore, Plaintiffs' showing of future economic benefit from licensors who

13  were actively utilizing Appellant's patented processes is far more than a mere

14  showing of a potentially untapped "general market."  *See Westside Center Assoc. v.*

15  *Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 529-530 (1996).

16       Further, Defendants' intent to interfere with Plaintiffs' business relationships is

17  evidenced by statements made by Defendant Jonathan Hangartner in the press that

18  they intended to put Plaintiff Lockwood out of business.  *See* Lockwood Decl. ¶¶ 12,

19  14-18, 33, Ex. 32.  Defendants also knew that Mr. Lockwood as well as the court

20  relied on the Defendants' duty of candor in initiating reexamination and moving to

21  stay the district court proceedings.  Compl. ¶¶ 13, 68, 70, 83, 134-135 ;  Lockwood

22  Decl. ¶¶ 24, 28, 36; Thomas Decl. ¶¶ 18-22, 27.  They also knew that reexamination

23  would be a death sentence for Plaintiffs' ability to continue licensing the Patents for

24  the duration of the reexaminations, because potential licensors would rely on the

25  Fraudulent Requests.  *See* Thomas Decl. ¶¶ 6, 47, 53-55; Lockwood Decl. ¶¶ 5, 32,

26  34, Ex. 49.  Plaintiffs plead and demonstrate that they were severely harmed by

27  Defendants' conduct and that but for the unlawful initiation of the reexamination

28  proceedings that placed a "cloud" on the validity of the Patents, Plaintiffs would have

1   continued the Enforcement Program and received great economic gain.  *See* Drews

2   Decl.¶¶ 6-8, 20-29, 59-66, 77-79; Lockwood Decl. ¶¶ 5, 32, 34, Ex. 49;    Thomas

3   Decl. ¶¶ 6, 47, 53-55

4   **A.    The California Litigation Privilege Is Inapplicable to the**
       **Interference Claim Based on Misconduct Before the USPTO**
5

6       Plaintiffs have addressed the inapplicability of Cal. Civ. Code Proc. §47(b) to

7   claims of interference based on misconduct before the USPTO in their Opposition to

8   Defendants' Special Motion to Strike at Section V.

9       **B.    Plaintiffs Claim for Interference Is Timely**

10      Defendants argue that the statute of limitation began to run when the

11  Fraudulent Requests were made.  *See* Def. 12(b)(6) Memo. 24.  "A plaintiff seeking

12  to state a claim for intentional interference with contract or prospective economic

13  advantage because defendant induced another to undertake litigation, must allege that

14  the litigation was brought without probable cause and that the litigation concluded in

15  plaintiff's favor."  *Visto Corp. v. Sproqit Tech.,* 360 F. Supp. 2d1064, 1072 (N.D. Cal.

16  2005), citing *Pacific Gas & Electric Co. v. Bear Stearns & Co.,* 50 Cal.3d 1118, 1137

17  (1990).  *See also Sagonowsky v. More*, 64 Cal. App. 4th 122, 131 (1998) (stating the

18  court in *Pacific Gas & Electric* held that a plaintiff who seeks to state a claim for

19  intentional interference with prospective economic advantage or intentional

20  interference with contract because defendant has induced another to undertake

21  litigation must allege the litigation was brought without probable cause and

22  concluded in favor of Plaintiff ).

23      Since the earliest USPTO proceedings did not terminate in Plaintiffs' favor

24  until July, 17, 2007, the Complaint filed on July 15, 2009 is not time-barred.  *See*

25  *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 341 (2004).

26  / / /

27  / / /

28  / / /

17

**VII.   DEFENDANTS, PATENT PRACTITIONERS, WERE NOT FREE TO MISCHARACTERIZE EVIDENCE PRESENTED TO THE USPTO**

Defendants state that it is "wholly immaterial" what they stated to the USPTO in their Requests because the examiner had the purported prior art references before him.  *See* Def. 12(b)(6) Memo. at 11; Def. Anti-SLAPP Memo. at 10.  The courts have concluded the opposite, rejecting arguments that patent practitioners merely "advocated, as they were entitled to do," for the patentability of the claimed inventions over prior art that it disclosed to the PTO.  *See Bristol Myers Squibb Co. v. Ben Venue Labs*, 90 F. Supp. 2d 522 (D.N.J. 2000).  Specifically, in *Bristol Myers*, the court rejected the use of the *Akzo* case (*see* Def. 12(b)(6) Memo. at 7, Def. Anti-SLAPP Memo. at 11-12) to support such a cavalier notion, stating: "It is worth noting that advocacy before the PTO is appropriate.  But, there is a line between legitimate advocacy in accordance with the duty of candor, and advocacy that the applicant surely knows has a propensity to mislead the examiner." *Id*. at 532-533.  *See also* Thomas Decl. ¶34.

In *Rohm & Haas Co. v. Chrystal Chem. Co.*, 722 F.2d 1556 (Fed. Cir. 1983), the Federal Circuit held that the applicant's presentation to the examiner of "a mountain of largely irrelevant data from which he [was] presumed to have been able, with his expertise and with adequate time, to have found the critical data" did not make the patent examiner "fully informed." *Id.* at 1573.  The Court characterized the district court's conclusion that the patent examiner was "fully informed" of all material factors relevant to patentability as "unrealistic". *Id*.

In yet another patent case, the district court rejected the exact contention made by Defendants that arguments to the USPTO advocating for an interpretation of prior art references disclosed to the USPTO and in the possession of the examiner were not material misrepresentations because the examiner is free to accept or reject the applicant's interpretation of the reference in question.  *See Transocean Offshore Deepwater Drilling, Inc., v. Globalsantafe Corp.*, 2006 WL 2385293 at7-8 (S.D.

18

1   Tex., Aug. 17, 2006).  Again, the district court refused to extend the *Akzo* case, relied

2   on by Defendants here, to shield unlawful deception of the USPTO by claiming

3   "attorney argument":  "In *Akzo*, 808 F.3d at 1482, the Federal Circuit held that a non-

4   patentee was not entitled to summary judgment that a patentee had engaged in

5   inequitable conduct where the non-patentee failed to prove the existence of either a

6   material misrepresentation or an intent to mislead.  The court did not hold that where,

7   as alleged here, material misrepresentations are made in a position advocated to the

8   PTO with intent to mislead, inequitable conduct does not exist."

9         Finally, as noted in *Advanced Cardiovascular Sys. v. Scimed Life Sys.*, 63 F.

10   Supp. 2d 1064, 1076-1077 (N.D. Cal. 1999), in cases of inequitable conduct, "the

11   Federal Circuit has declined to create a per se rule that there can be no inequitable

12   conduct if the misrepresented prior art is before the patent examiner...[and] if there is

13   evidence of an intent to deceive the patent examiner, there can be inequitable conduct

14   even if the misrepresented prior art is before the patent examiner... [Therefore,] even

15   though it is undisputed that...the prior art...[was presented] to the patent examiner,

16   ACS is not entitled to summary judgment as a matter of law on this basis."  *Id*. citing

17   *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 938 (Fed. Cir. 1990)

18   (holding that "lapse on the part of an examiner does not exculpate an applicant whose

19   acts are intentionally deceptive").[18]

20         Therefore, Defendants' suggestion that the Complaint fails because they were

21   at liberty to misstate fact, deceptively present irrelevant evidence, and have no

22   reasonable basis in fact or law with intent to deceive the USPTO, is incorrect as a

23   matter of law.  *Id*.  *See also* Thomas Decl. ¶¶ 18-26.

24   / / /

25   _____

26   [18] Further, federal regulations require a formal, written request for reexamination to
    be signed by the requestor, which sets forth the pertinency of prior art.  See 35 U.S.C.
27   § 302 (2006); Thomas Decl.¶11.  Reexamination requests are not made by merely
    placing alleged prior art reference before the examiner for him or her to consider
28   without the benefit of the written request.  Id.  It is therefore unreasonable to assume
    that the USPTO would not rely on that written document.

**VIII.  DEFENDANTS' CLAIM OF ATTORNEY-CLIENT PRIVILEGE DOES NOT IMMUNIZE THEM FROM SUIT**

Defendants argue they cannot prepare a defense without revealing communications protected by the attorney-client privilege.  *See* Anti-SLAPP Memo. at, 1, 14-15, citing *Solin v. O'Melveny & Myers*, 89 Cal. App. 4th 451 (2001).[19]  The issues in this case are the malicious  deception of the USPTO and  the lack of probable cause of the Defendants statements made in Fraudulent Request about the Patents' claims compared to the purported prior art references.  *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 529, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992) (fraud claims "rely only on a single, uniform standard: falsity.").

Defendants here have an independent duty of candor to the USPTO.  *See* C.F.R. § 1.555(a); *Precision Instrument*, 324 U.S. at 818; Thomas Decl. ¶¶ 18-26. They cannot hide behind anything that they communicated their clients or their clients communicated to them to excuse a violation of this duty and fraud on the USPTO.  *See Virtanen v O'Connell,* 140 Cal. App. 4th 688, 702 (2006) (holding that attorney defendant was "off base in arguing that the case should have been dismissed because, without a waiver of the attorney-client privilege and the ability to inform the court as to his confidential attorney-client communications, he was unable to put on a defense in the litigation.").[20]

---

[19] The *Solin* case involved a Plaintiff attorney (Solin) who retained law firm for advice about two clients who were involved in criminal conduct.  In seeking advice, Solin revealed secrets about clients.  He then sued the firm for giving  him bad advice  regarding representation of clients in criminal proceedings. *Solin v. O'Melveny & Myers*, 89 Cal. App. 4th 451 (2001).  This case has nothing to do with an attorney knowingly violating his duty to the USPTO in order to put a patent holder out of business.

[20] In *Virtanen*, the California Court of Appeal stated:
> It is true that an action against an attorney may be dismissed if the attorney cannot mount a defense without breaching the attorney-client privilege. (*Solin v. O'Melveny & Myers* (2001) 89 Cal.App.4th 451, 467, 107 Cal.Rptr.2d 456; see also *McDermott, Will & Emery v. Superior Court* (2000) 83 Cal.App.4th 378, 385, 99 Cal.Rptr.2d 622.)  However, in this case, no disclosure of privileged communications is required for O'Connell to address whether he owed a duty to Virtanen, whether he breached that

20

Finally, in the Ninth Circuit, "the attorney-client privilege does not extend to attorney-client communications which solicit or offer advice for the commission of a crime or fraud." *U.S. v. Alexander*, 287 F. 3d 811, 816 (9th Cir. 1992), citing *In re Grand Jury Investigation,* 974 F.2d 1068, 1070 (9th Cir.1992).  Accordingly, Defendants' reliance on attorney-client communications to defend against their fraud on the USPTO and on Plaintiffs is without merit.

## IX.   PLAINTIFFS SUFFICIENTLY PLED VIOLATIONS OF THE RICO STATUTE[21]

### A.   Attorneys and Law Firms are Accountable to Third Parties for Violations of the RICO Statute

Defendants' argue that mere violations of attorneys' ethical duties do not rise to the level of a scheme to defraud prohibited by the RICO statute.  *See* Def. 12(b)(6) Memo at 6.  However, the Complaint alleges that Defendants crossed the line from legitimate lawyering to unlawful conduct and breached each element of the RICO statute.  *See* Compl. ¶¶ 30-49, 65-76, 111-169.  *See also* RICO Case Statement. Pursuant to a scheme to defraud the USPTO, the Plaintiffs and the court, Defendants used the enterprise created by them, Panip Group Defense Fund("PGDF"), to send through the U.S. Mail  the Fraudulent Requests to the USPTO, as well as to Plaintiffs and their attorneys, in order to fraudulently induce Plaintiffs' reliance on the veracity of the requests for reexamination, and to wage an interstate internet campaign to further the scheme to defraud with intent to benefit themselves and to cause economic harm to Plaintiffs' property rights in the Patents.  *See* Compl. ¶¶ 12, 16, 21, 26-27, 30, 32-33, Exs. 29, 37, 41-43, 45-48.  *See also Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F. 3d 353,361 (9th Cir. 2005)(upholding RICO claims for fraudulent discovery conduct which induced plaintiff to settle underlying litigation,

---

duty, whether he converted Virtanen's stock certificates, and whether Virtanen suffered damages. As we have said, the communications O'Connell had with his clients were irrelevant to those issues." V*irtanen*, 140 Cal. App. 4th at 712.
[21] By order of the Court Plaintiffs' were required to file a RICO Case Statement. Plaintiffs incorporate by reference that Statement herein.

21

1   and setting forth elements of a civil RICO claim (1) conduct (2) of an enterprise (3)

2   through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing

3   injury to plaintiff's business or property).[22]

4          Defendants assert that attorney fraud during the course of representing a client

5   cannot constitute a RICO violation.  However, the Ninth Circuit has held the

6   opposite.   In *Kearney v. Foley & Lardner*, 566 F.3d 826 (9th Cir. 2009),[23] the Court

7   upheld plaintiff's RICO claims against the law firm defendant for fraud during the

8   representation of its client during trial, holding that the plaintiff was not required to

9   prove her case at the motion to dismiss stage and that the law firm's conduct during

10  trial fell within the *Noerr-Pennington* "sham litigation" exception to First

11  Amendment immunity.  *Id.* at 835-36.

12         In addition, in a virtually "four corners" case involving RICO claims based on

13  fraudulent misrepresentations before the USPTO, the district court in *Dow Chemical*

14  *Corp.  v. Exxon Corp.*, 30 F. Supp. 2d 673 (D. Del. 1998), held "the fact that the PTO

15  may review the underlying bases of Dow's fraud allegations does not necessarily

16  preclude this court's review of these allegations in the context of Dow's RICO claims.

17   Like state law unfair competition claims and federal antitrust claims*, civil RICO has*

18  *been considered an appropriate tool for addressing an alleged pattern of fraud on the*

19  *PTO*, provided the other elements necessary to establish a RICO case are present."

20  *Id.* at 693(emphasis added), citing *B.V. Optische Industrie de Oude Delft v. Hologic,*

21  *Inc.*, 909 F. Supp. 162, 168-171 (S.D.N.Y. 1996); *Heden v. Hill*, 937 F. Supp. 1230,

22  1241-1245 (S.D. Tex. 1996); *Hoffman v. Wisner Classic Mfg. Co.*, 927 F. Supp. 67,

23

_____

24  [22] In response to Defendants' Anti-SLAPP motion to strike, Plaintiffs have also
    submitted supporting evidence that the Defendants' actions went beyond mere
25  "attorney argument" and rose to the level of a fraud on the USPTO, and that the U.S.
    Mail and Internet were used to perpetrate that scheme. *See* Lockwood Decl. ¶¶ 12, 16,
26  21, 26-27, 30, 32-33, Exs. 29, 37, 41-43, 45-48; Kay Decl.  Thomas Decl. ¶¶ 6, 28-
    55.  *See also Northern Telecom*, 908 F.2d at 938(holding that "lapse on the part of an
27  examiner does not exculpate an applicant whose acts are intentionally deceptive").
    [23] Amended on other grounds at -- F.3d ---, 2009 WL 2973224 (9th Cir., Sept. 18,
28  2009).

1   74 (E.D.N.Y. 1996); *Purolite Int'l Ltd. v. Rohm & Haas Co.*, 24 U.S.P.Q.2D 1857

2   (E.D. Pa. 1992); *Rohm & Haas Co. v. Brotech Corp.*, 770 F. Supp. 928 (D. Del.

3   1991).  *See also Select Creations, Inc. v. Paliafito America, Inc.*, 828 F. Supp. 1301

4   (E.D. Wis. 1992)(holding fraud on the USPTO in violation of 37 C.F.R. 1.56(a) was

5   predicate act for purposes of RICO).

6          Accordingly, the motion to dismiss the RICO claims should be denied.

7          **B.     The RICO Claims Are Timely**

8           As set forth in Section III.B. above, the Complaint was filed within the four-

9   year statute of limitations because (1) the filing of the state court action in June 2007

10  and the tolling agreement signed by Defendants tolled the statute, and (2) the July 15,

11  2009 federal court complaint was filed within four years of the discovery of the fraud

12  by Plaintiffs.  *See Hatfield*, 564 F.3d 1177.  *See also* Lockwood Decl. ¶¶ 29-31, 40,

13  43 Exs. 51-53; *Bernson*, 7 Cal. 4th at 931 (defendant's fraud in concealing cause of

14  action will toll the statute of limitations in cause of action against him and tolling will

15  last as long as plaintiff's reliance on misrepresentations is reasonable); *Lantzy,*  31

16  Cal. 4th at 370 (equitable tolling suspends statute of limitations as necessary to ensure

17  fundamental practicality and fairness).  Moreover, questions of fact exist regarding

18  Plaintiffs' reliance on the fraud requests prior to 2005, and dismissal is premature.

19  *See Charcoal Companion, Inc. v. Target Corp.*, slip op, 2009 WL 3046020, at 2

20  (N.D. Cal. 2009), citing *McZeal v. Spring Nextel Corp.*, 501 F.3d 1354, 1358 (Fed.

21  Cir. 2007) ([T]he determination of "[] a question of fact" [] is not appropriate at this

22  stage of the case.)

23          **C.     Defendants' Unlawful Conduct Satisfies the "Pattern of**
24                 **Racketeering Activity" Element**

25           Defendants argue that the Complaint has not sufficiently pled a "pattern of

26  racketeering activity" because it alleges only five predicate acts during a twelve-day

27  period in May 2003.  *See* Def. 12(b)(6) Memo at 10-11.  Defendants mischaracterize

28  both the allegations in the Complaint and in the RICO Statement, both which set forth

                                              23

1   facts showing (1) related predicate acts of both mail and wire fraud lasting from May

2   2003 through December 2006, and (2) a continuous threat of repetition from

3   Defendants, lasting to the present.  *See* Compl. ¶¶ 42-45, 80-82; 111-146;  RICO

4   Case Statement at 12-26; Lockwood Decl.¶¶ 12, 16, 21, 26-27, 30, 32-33,48, 49, Exs.

5   16, 29, 37, 41-43, 45-48.  *See also H.J. Inc. v. Northwestern Bell Telephone Co.,* 492

6   U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).[24]   The complaint alleges that

7   Defendants' mailed fraudulent requests for reexamination to the USPTO, mailed

8   requests for stay of litigation to Plaintiffs, and maintained an Internet website through

9   2006 on which they solicited payments and accepted checks sent by U.S. Mail based

10  on fraudulent statements regarding the Patents and on the Fraudulent Requests; and

11  all actions were aimed at the Plaintiffs' Patents and designed to harm Plaintiffs'

12  property rights and to benefit themselves.  *See* Compl. ¶¶ 34, 42-45, 68, 73, 80-82;

13  111-146;  Lockwood Decl.¶¶ 12, 16, 21, 26-27, 30, 32-33,48, 49, Exs. 16, 29, 37, 41-

14  43, 45-48.

15       Further, the Complaint alleges that the fraudulent scheme based on making

16  specific false and fraudulent requests to the USPTO without a reasonable basis and

17  launching a campaign to solicit clients and to put patent-holder Plaintiffs out of

18  business had become a regular way of doing business for Defendants.  *See* Compl. ¶¶

19  82, 141; Lockwood Decl. ¶¶ 48-49.  *See also Ticor Title Ins. Co. v. Florida*, 937 F. 2d

20  447, 451 (9th Cir. 1991)(three forgeries in 13-month period posed a threat of

21  continued criminal activity); *Ikuno v. Yip*, 912 F.2d 306, 309 (9th Cir.1990) (holding

22  that the filing of two false annual reports posed a threat of continued criminal

23  activity).

24

---

25  [24] The relationship requirement is satisfied by a showing that the racketeering
    predicates "have the same or similar purposes, results, participants, victims, or
26  methods of commission, or otherwise are interrelated by distinguishing characteristics
    and are not isolated events. To satisfy the continuity prong of the test, one need only
27  show that the predicates pose a threat of continued criminal activity, such as when the
    illegal conduct is "a regular way of conducting [a] defendant's ongoing legitimate
28  business." *H.J. Inc.,* 429 U.S. at 243.

Case 2:09-cv-05157-JFW-AGR   Document 44   Filed 10/22/09   Page 33 of 33

Defendants do not cite one case in support of their assertion that because the fraudulent Internet postings were perpetrated on third parties cannot constitute predicate acts under the RICO statute. *See* Def. 12(b)(6) Memo at 11. In fact, RICO violations can be based on predicate acts of fraud on third parties, including fraud on government agencies. *See, e.g.*, *Select Creations,* 828 F. Supp. 1301 (fraud on USPTO); *Ticor Title Ins.*, 937 F. 2d 447(fraud on IRS).

### D. Defendants Conduct Proximately Caused Plaintiffs' Injury

Defendants' argue that the Complaint fails to adequately plead that Defendants' fraudulent scheme proximately caused economic harm to Plaintiffs because the USPTO conducted an "independent investigation" of the Fraudulent Requests. As set forth in detail in Section III.B. above, Plaintiffs' have alleged and submitted proof that the USPTO initial review was not independent as that term is defined in the cases upon which Defendants rely because the USPTO relied on the statutory duty of candor which Defendants' breached. *See* Section III.B., *supra*; Compl. ¶¶ 13, 38, 40, 43, 45, 47, 83, 138; Thomas Decl. ¶¶ 18-22, 27.

Accordingly, the motion to dismiss Plaintiffs' RICO claims should be denied.

### X. CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss must be denied and Plaintiffs' claims should be decided on the merits.

Dated: October 22, 2009                   Respectfully Submitted,

                                         HOWARTH & SMITH
                                         DON HOWARTH
                                         SUZELLE M. SMITH
                                         KATHRYN LEE BOYD


                              By:    _____/s/ Kathryn Lee Boyd_____
                                           KATHRYN LEE BOYD

                                     Attorneys for Plaintiffs
                                     LAWRENCE B. LOCKWOOD, PANIP, LLC

25

09:P2278332.doc                      PLAINTIFFS' OPP. TO DEFENDANTS' MOTION TO DISMISS