UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**PRIORITY SEND**

CIVIL MINUTES -- GENERAL

Case No.   **CV 09-5157-JFW (AGRx)**                            Date:  November 24, 2009

Title:   Lawrence B. Lockwood, et al. -v- Sheppard, Mullin, Richter & Hampton, LLP, et al.

**PRESENT:**   HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

Shannon Reilly                                    None Present
Courtroom Deputy                                  Court Reporter

**ATTORNEYS PRESENT FOR PLAINTIFFS:**            **ATTORNEYS PRESENT FOR DEFENDANTS:**
None                                              None

**PROCEEDINGS (IN CHAMBERS):**   **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [filed 9/11/09; Docket No. 28]; and**

**ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S STATE LAW CLAIMS PURSUANT TO CAL. CIV. PROC. CODE § 425.16 [filed 9/11/09; Docket No. 31]**

On September 11, 2009, Defendants Sheppard, Mullin, Richter & Hampton, LLP ("Sheppard Mullin"), Jonathan Hangartner ("Hangartner"), and Steve P. Hassid ("Hassid") (collectively, "Defendants") filed a Motion to Dismiss and a Motion to Strike Plaintiff's State Law Claims Pursuant to Cal. Civ. Proc. Code § 425.16 ("Motion to Strike").  On October 22, 2009, Plaintiffs Lawrence B. Lockwood ("Lockwood") and PanIP, LLC ("PanIP") (collectively, "Plaintiffs") filed their Oppositions.  On November 2, 2009, Defendants filed Replies.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument  The matter was, therefore, removed from the Court's November 9, 2009 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural Background**

Plaintiff Lockwood is the owner of two patents that are involved in this action: U.S. Patent No. 5,576,951 (the "'951 Patent"), entitled "Automated Sales and Service System"; and U.S. Patent No. 6,289,319 (the "'319 Patent"), entitled "Automatic Business and Financial Transaction Processing System."  Plaintiff Lockwood applied for both patents in 1994.  The '951 Patent was issued in 1996, and the '319 Patent was issued in 2001.

In 2002, Plaintiff Lockwood, through his company, Plaintiff PanIP, instituted a patent enforcement program in which he offered licenses to companies he believed were infringing his patents, and filed patent infringement lawsuits against those that declined. Plaintiff Lockwood believed that companies using e-commerce systems that included interactive, searchable computerized systems for finding, selecting, and ordering information, goods, or services infringed his patents. Plaintiff Lockwood's patent enforcement strategy resulted in dozens of patent infringement lawsuits filed in the federal district court for the Southern District of California. Defendant Sheppard Mullin, through Defendant Hangartner, an attorney at the firm, represented approximately 20 of the defendants in those lawsuits. In light of the numerous lawsuits filed by Plaintiff PanIP, the PanIP Group Defense Fund, Inc. ("PGDF") was formed to enable the defendants to coordinate their defense of these lawsuits and solicit donations to pay defense costs. One of the members of PGDF represented by Defendant Sheppard Mullin and Defendant Hangartner was Debrand Fine Chocolates of Indiana ("Debrand").

On May 5, 2003, Defendant Sheppard Mullin, on behalf of its clients in the patent infringement lawsuits, filed requests with the United States Patent and Trademark Office ("PTO") for reexamination of the '951 Patent and the '319 Patent.[1] These requests were signed by Defendant Hassid, an associate at Defendant Sheppard Mullin. The requests challenged the validity of the patents on the ground that the claims of the patents were anticipated by prior patents or publications (*i.e.,* prior art). The same day, Defendant Sheppard Mullin filed a motion to stay the patent infringement lawsuits that Plaintiff PanIP had filed in the federal district court for the Southern District of California, citing the reexamination requests.

On June 2, 2003, while the motion to stay the patent infringement suits was pending, Defendant PanIP entered into a stipulation to stay the lawsuits in the federal district court for the Southern District of California. On June 5, 2003, the court approved the stipulation. On July 7, 2003, the PTO granted the reexamination request for the '951 Patent. On July 29, 2003, the PTO granted the reexamination request for the '319 Patent. On August 26, 2003, the court denied without prejudice all pending motions in light of the fact that "the parties agreed to a Stipulation and Order staying all proceedings in this litigation pending the PTO's resolution of a request to reexamine the '951 and '319 Patents." After granting the reexamination requests, the PTO conducted a reexamination of the '951 Patent and the '319 Patent in accordance with the PTO's procedures.

On November 4, 2002, Plaintiffs Lockwood and PanIP sued PGDF, Debrand, Debrand's

---

[1] Under the patent laws, any person may file a request for reexamination. 35 U.S.C. § 302. Within three months after the request is filed, the PTO must determine whether the request raises "a substantial new question of patentability affecting any claim of the patent." 35 U.S.C. § 303. The patent owner is not permitted to file a statement or response to the request during this three month period. 37 C.F.R. § 1.530. If the PTO independently determines that a substantial new question of patentability has been raised, it conducts a reexamination of the patent. 35 U.S.C. § 304. At the conclusion of the reexamination, the PTO issues a certificate canceling any claim of the patent determined to be unpatentable, confirming any claim determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable. 35 U.S.C. § 307.

founder/president, and Debrand's secretary/treasurer in a case styled *PanIP LLC and Lawrence Lockwood v. PanIP Group Defense Fund, Inc., et al.*, bearing Case No. 3:02-cv–2173-B-JFS (S.D. Cal.), alleging a variety of federal and state law claims related to PGDF's website (the "PGDF action"). Defendant Sheppard Mullin represented the defendants in the PGDF action. On March 19, 2004, Plaintiffs Lockwood and PanIP settled the PGDF action, and entered into a Covenant Not to Sue and Release Agreement, which released PGDF from all claims, known and unknown, as of the effective date of the agreement. Covenant Not to Sue and Release Agreement, ¶ 2.2. Plaintiffs Lockwood and PanIP also agreed to dismiss with prejudice the pending but stayed patent cases in the federal district for the Southern District of California (¶ 1.2), agreed not to file any additional complaints alleging infringement of any patent that was subject to the ongoing reexamination proceedings (¶ 2.1), and agreed to inform third parties that they approached for licensing agreements about the reexamination proceedings (¶ 6.1).

On June 6, 2006, the PTO issued a "Notice of Intent to Issue Ex Parte Reexamination Certificate" that indicated the certificate would confirm the patentability of all claims of the '319 Patent. On July 17, 2007, the certificate was issued. On September 24, 2007, the PTO issued a similar notice of intent with respect to the '951 Patent. On January 29, 2008, the certificate was issued.

On June 4, 2007, Plaintiff Lockwood sued Defendants Sheppard Mullin and Hargartner in Los Angeles Superior Court for interference with prospective economic advantage. In response, Defendants Sheppard Mullin and Hargartner filed an Anti-SLAPP motion. Plaintiff Lockwood then filed a First Amended Complaint, adding claims for malicious prosecution and fraud. In response to the First Amended Complaint, Defendants Sheppard Mullin and Hargartner filed a second Anti-SLAPP motion. The trial court granted the Anti-SLAPP motions and entered judgment against Plaintiff Lockwood. However, the Court of Appeal subsequently vacated the judgment and remanded the case to the trial court, directing the trial court to dismiss the case for lack of subject matter jurisdiction.

In response, on July 15, 2009, Plaintiffs Lockwood and PanIP filed a Complaint in this Court, alleging claims for relief against Defendants Sheppard Mullin, Hargartner, and Hassid for: (1) malicious prosecution in connection with United States patent; (2) interference with prospective economic advantage; (3) fraud; and (4) violation of 18 U.S.C. §§ 1962, 1964 ("RICO"). In the Complaint, Plaintiffs allege that Defendants fraudulently mischaracterized the patents and publications submitted to the PTO with the requests for reexamination. For example, the Complaint alleges that Defendants represented to the PTO that a system described in a 1986 manual titled "Electronic Mail" was "available to the public" but did not disclose or explain that the manual itself was marked "confidential and proprietary." In addition, Plaintiffs allege that Defendants represented to the PTO that another patent contained "teachings not provided during the prosecution of the Lockwood '319 Patent" but that they failed to disclose or explain that this patent had been of record in the file of the "grandparent" patent application to the '319 Patent.

## II.     Legal Standard

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only

where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994). Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *See Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996).

## III. Discussion

### A. Plaintiffs' RICO Claim Must Be Dismissed.[2]

#### 1. Plaintiffs' RICO claim is barred by the statute of limitations.

Plaintiffs' RICO claim must be dismissed because it is time-barred by the four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Associates*, 483 U.S. 143, 156 (1987). A RICO claim accrues when the plaintiff has "actual or constructive knowledge of [the defendant's] fraud." *Living Designs, Inc., v. E.I. Dupont De Nemours & Co.*, 431 F.3d 353, 365 (9th Cir. 2005) ("The limitations period for civil RICO actions begins to run when a plaintiff knows or should know of the injury which is the basis for the action."). "The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent,

---

[2] In deciding Defendants' Motion to Dismiss the RICO claim, the Court has also considered the RICO Case Statement filed by Plaintiffs on August 10, 2009, pursuant to the Court's August 3, 2009 Order.

would have led to discovery of the fraud." *Id.* (internal citation omitted).

In this case, Plaintiffs knew of the alleged fraud and their alleged injuries by July 2003. In fact, Plaintiffs allege in the Complaint that their injuries began as early as June 2003 when "the district court granted [Defendants'] Motion to Stay immediately prior to the scheduled Markman hearing which would have adjudicated the infringement of the Patents on the merits."[3] Complaint, ¶ 135. In addition, by July 2003, the PTO had granted the reexamination requests that Defendants had filed in May 2003 for both the '951 Patent and the '319 Patent; Defendants had filed their motion to stay proceedings in the federal district court for the Southern District of California, which referred to the granting of the reexamination requests; and Defendants had filed other, allegedly fraudulent papers in the federal district court. Because Plaintiffs had received copies of these documents, Plaintiffs were fully aware of the alleged fraud and their alleged injuries more than six years before they filed the present action, and, thus, the RICO claim is time-barred.[4]

Plaintiffs attempt to plead around this obvious statute of limitations bar by claiming that "[f]rom May 5, 2003 through December 5, 2006, the Defendants continued their fraudulent scheme . . . through the continued use of the PGDF website . . ." Complaint, ¶ 136. However, Defendants' alleged "continuation" of their purported fraudulent scheme does not restart the statute of limitations. *See, e.g., Grimmett v. Brown*, 75 F.3d 506, 514 (9th Cir. 1996). To restart the statute of limitations under RICO, an overt act must: (1) be new and independent, and not merely a reaffirmation of a previous act; and (2) inflict new and accumulating injury on the plaintiff. *Id.* at 513. In this case, Plaintiffs allege merely a "continuation" of a previous act, and fail to allege that the continuation of that previous act inflicted any new injuries. Specifically, the Covenant Not to Sue and Release Agreement, ¶ 5.4, expressly permitted the continuation of the PGDF website on certain agreed upon terms and conditions, and Plaintiffs have failed to allege that Defendants did not comply with those terms and conditions. In the absence of a claim that Defendant somehow breached the provisions of the Covenant Not to Sue and Release Agreement relating to the operation of the PDGF website, Plaintiffs cannot claim that the continued use of the authorized PGDF website somehow restarted the RICO statute of limitations.

## 2. Plaintiffs' RICO claim fails to state a pattern of racketeering activity.

---

[3] While Defendants argue there are factual issues raised by this allegation – namely, that Judge Brewster did not grant the motion to stay but approved a stipulation signed by Plaintiff PanIP, and that a court does not adjudicate infringement at a *Markman* hearing – this allegation makes it clear that Plaintiffs' RICO claim had accrued by June 2003.

[4] Thus, Plaintiffs cannot allege equitable tolling applies because any delay in discovering Defendants' alleged fraud is due, not to misconduct on the part of Defendants, but on Plaintiffs' own failure to review the papers which were served upon them. *See, e.g., Hensley v. United States*, 531 F.3d 1052, 1057-58 (9th Cir. 2008) (doctrine of equitable tolling "is not available to avoid the consequence of one's own negligence, and does not apply when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights.")

In addition, Plaintiffs' RICO claim must be dismissed because Plaintiffs have failed to allege a sufficient pattern of racketeering activity. The elements of a RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Grimmett*, 75 F.3d at 510 (*citing* 18 U.S.C. §§ 1964(c), 1962(c)). A "pattern" requires (1) two predicate acts within ten years of each other; (2) a relationship between those two acts; and (3) a threat of continued activity. 18 U.S.C. § 1961(5). Continuity generally requires that the scheme has been in existence for at least one year. *Grimmett*, 75 F.3d at 512; *H.J., Inc., v. Northwestern Bell Tel.*, 492 U.S. 229, 239 (1989) (discussing that "Congress was concerned in RICO with longterm criminal conduct").

In this case, Plaintiffs have alleged a total of only six predicate acts, five of which occurred during a 12 day period in May 2003: (1) mailing the reexamination request for the '951 Patent on May 5, 2003; (2) mailing the reexamination request for the '319 Patent on May 5, 2003; (3) allegedly mailing the motion to stay on May 5, 2003; (4) mailing allegedly fraudulent papers to the federal district court for the Southern District of California on May 6, 2003; and (5) mailing allegedly fraudulent papers to the federal district court for the Southern District of California on May 16, 2003.[5] However, these five acts committed during a 12 day period in May 2003 do not represent a pattern of continuous racketeering activity. *Grimmett*, 75 F.3d at 512. Recognizing this, Plaintiffs also allege that "[t]he Patents are under a continuing threat of a similar fraud being perpetrated, given that patent laws and the USPTO rules and regulations allow multiple requests . . . , and given that Defendants through PGDF have repeatedly made statements that their goal is to put Plaintiffs out of business." Complaint, ¶ 141. However, these allegations fail to demonstrate a "threat of continuity." *H.J., Inc.*, 492 U.S. at 241-42. Plaintiffs cannot use the reexamination statutes, which allow "[a]ny person at any time" to file a reexamination request, to transform Defendants' two reexamination requests in May 2003 into an open-ended pattern of racketeering activity. In addition, Plaintiffs cannot allege that Defendants have represented any party adverse to Plaintiffs in a patent lawsuit in the past five years, or that the alleged undated, unspecific statements made by PGDF have ever been acted on (or, allege facts indicating that they may be). Therefore, Plaintiffs have failed to allege a sufficient pattern of racketeering injury.

### 3. Plaintiffs' RICO claim fails to allege that the RICO violation proximately caused Plaintiffs' injuries.

Moreover, Plaintiffs' RICO claim must be dismissed because Plaintiffs have failed to allege that Defendants' purported RICO violation proximately caused their injuries. *See, Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 265-66 (1992); *see, also, Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 456-57 (2006). Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.*

In this case, the PTO's duty to conduct an independent investigation into the merits of

---

[5] The sixth predicate act consists of the posting of allegedly fraudulent statement on the PDGF website. However, this cannot constitute a predicate act because the statements were posted by third parties, not Defendants. Moreover, Plaintiffs fail to allege with specificity what these allegedly fraudulent statement were, or when they were made. In any case, these statement were removed from the PDGF website once it was changed on March 22, 2004.

Defendants' reexamination requests negates proximate cause. *See,* 35 U.S.C. § 303(a) ("the Director [of the PTO] will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request with or without consideration of other patents or printed publications."). Reexamination is ordered only in those cases where a substantial new question of patentability is raised, which protects patentees from having to respond to, or participate in, unjustified reexaminations. *See,* Manual of Patent Examining Procedure (8th ed. Aug. 2001, rev. July 2008) ("MPEP") § 2244. Therefore, the PTO's decision, after its preliminary investigation, resulted in an "independent determination." *See, Patlex Corp., v. Mossignhoff*, 771 F.2d 480, 485 (Fed. Cir. 1985) (finding that the PTO bears the heavy responsibility of "making independent determinations" into whether there is a substantial new question of patentability); *see, also,* MPEP, § 2210 ("After the request for reexamination . . . is received in the Office, no abandonment, withdrawal, or striking of the request is possible, regardless of who requests the same."). Similarly, the stipulation to stay the proceedings and the Covenant Not to Sue and Release Agreement – both of which were signed by Plaintiffs – also negate proximate cause. Plaintiffs cannot allege that they were harmed by Defendants because of documents Plaintiffs voluntarily signed, even if they now regret their decision to sign those documents.

### 4. Plaintiffs' RICO claim does not allege the type of organized criminal activity RICO was designed to remedy.

Furthermore, Plaintiffs' RICO claim must be dismissed because the Defendants' alleged conduct does not rise to the level of organized criminal activity that RICO was designed to remedy. For attorney conduct to give rise to RICO liability, the attorneys must go "well beyond their capacities as legal representatives." *Morrow v. Blessing*, 2004 WL 2223311, *4-*5 (E.D. Pa. Sept. 29, 2004) (finding that attaching allegedly false letters to legal documents in state court proceedings "by a lawyer in the context of representing clients in litigation simply cannot constitute mail fraud under RICO and, therefore, cannot constitute a RICO predicate act"). In fact, "a scheme or artifice to defraud under the mail or wire fraud statutes is not satisfied by merely alleging unethical conduct by a lawyer." *Meier v. Musburger*, 588 F. Supp. 2d 883, 902 (N.D. Ill. 2008).

In this case, Plaintiffs do not allege that Defendants suborned perjury or falsified evidence; instead, Plaintiffs merely allege that Defendants breached their duty of candor to the PTO and the courts while defending their clients in actions brought by Plaintiffs. However, in *Dow Chemical Co., v. Exxon Corp.*, 30 F. Supp. 2d 673 (D. Del. 1998) – a case cited by Plaintiffs – the court found that similar alleged conduct could not support a RICO claim. *See, id.* (dismissing plaintiff's RICO claim where plaintiff had alleged that defendant made false representations to the PTO that resulted in the PTO wrongly issuing a variety of patents and commencing a number of reissue, reexamination, and interference proceedings, which allegedly damaged plaintiff through lost sales and opportunities to license its patent). In dismissing the RICO claim, the court found that the plaintiff's losses "do not stem directly from [defendant's] alleged misrepresentations to the PTO," but, instead, those losses "result from the intervening acts of the PTO as well as [plaintiff's] customers and business affiliates." *Id.* at 695. The court also found that the PTO has "discretion whether or not to grant patent property rights and declare interferences," and that "customers and business affiliates can choose whether or not to pursue business opportunities" with plaintiff. *Id.* The same is true of the reexamination proceedings and the purported impact on Plaintiff's ability to enforce or

license their patents in this action.  *See, e.g., Rothman v. Target Corp.*, 556 F.3d 1310, 1329 (Fed. Cir. 2009) ("this court recognizes that the Patent Act gives the examiner the discretion to reject or accept an applicant's arguments based on the examiner's own conclusions regarding the prosecution record.");  *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1348 (Fed. Cir. 2007).

Accordingly, for all the foregoing reasons, Plaintiff's RICO claim must be **DISMISSED without leave to amend**.

  **B.**  **Plaintiffs' Malicious Prosecution Claim Must Be Dismissed.**

    **1.**  **Plaintiffs' malicious prosecution claim is preempted.**

Plaintiffs' malicious prosecution claim must be dismissed because it is preempted under federal law.  In *Buckman*, the Supreme Court found that "[p]olicing fraud against federal agencies is hardly a field which the States have traditionally occupied, such as to warrant a presumption against finding federal pre-emption of a state-law cause of action." *Buckman Co., v. Plaintiffs' Legal Committee*, 531 U.S. 341, 347 (2001) (internal quotation omitted); *see, also, Nathan Kimmel, Inc., v. DowElanco*, 275 F.3d 1199, 1205 (9th Cir. 2002) ("Because Kimmel's state law claim hinges upon its contention that DowElanco committed fraud against the EPA – which is hardly a field which the States have traditionally occupied – we undertake our analysis in this case free from any presumption against preemption.").  Moreover, as the Federal Circuit found in the context of abuse of process claims, "the federal administrative process of examining and issuing patents . . . is not subject to collateral review."  *Abbot Labs., v. Brennan*, 952 F.2d 1346, 1357 (Fed. Cir. 1991) (plaintiff's abuse of process claim based on allegations that a patent applicant had backdated a request for an extension of time and falsely averred that the request had been timely made).  Therefore, federal patent law preempts state law malicious prosecution claims such as the one in this case that is based on Defendants' filing reexamination requests before the PTO because such claims are "no more than [claims alleging] bad faith misconduct before the PTO."  *Dow*, 139 F.3d at 1477.  To allow such a malicious prosecution claim to go forward would be "contrary to Congress' preemptive regulation in the area of patent law."  *Abbott,* 952 F.2d at 1357.

    **2.**  **Plaintiffs' malicious prosecution claim is barred by the statute of limitations**.

In addition, even if it is not preempted, Plaintiffs' malicious prosecution claim must be dismissed because it is time-barred by the two year statute of limitations.  Cal. Code Civ. Proc. § 339(1); *Stavropoulous v. Sup. Ct.*, 141 Cal. App. 4th 190, 194 (2006).  For malicious prosecution claims, as with other claims, the statute of limitations begins to run on the occurrence of the last element essential to the claim.  *See, Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 389 (1999).  For *ex parte* proceedings, favorable termination is not a necessary element of a malicious prosecution claim.  *See, e.g., Stolz v. Wong Communications Ltd.*, 25 Cal. App. 4th 1811, 1820 (1994).  In this case, Plaintiffs' malicious prosecution claim is not based on the federal court proceedings, but on the patent reexamination requests made by Defendants to the PTO.  These reexamination requests were *ex parte*.  *See,* Complaint, ¶ 19 ("Defendants requested *ex parte* reexamination in May of 2003.");  Restatement (Second) of Torts § 674, comment k ("[p]roceedings are *ex parte* when relief is granted without an opportunity for the person against whom the relief sought to be heard.").  Therefore, the statute of limitations on Plaintiffs' malicious prosecution claim commenced

running in July 2003 when the reexamination requests were granted, and, according to Plaintiffs, they were damaged.  *See,* Complaint, ¶ 23.

Defendants' attempt to toll the statute of limitations by alleging that "due to the deceitful and misleading nature of the Fraudulent Requests, Plaintiffs were prevented from discovering or realizing the full extent of Defendant's [*sic*] fradulent use of the reexamination proceedings for improper purposes until approximately three years after the Fraudulent Requests were filed" (Complaint, ¶ 83), is unpersuasive because Plaintiffs received copies of the reexamination requests when they were filed in May 2003, and, based on the reexamination requests, Plaintiffs agreed to  stay the cases pending in the federal district court for the Southern District of California in a stipulation signed by Plaintiffs' counsel on June 2, 2003.  Therefore, Plaintiffs were fully aware of the reexamination requests from almost the moment they were filed.  In addition, Plaintiffs' argument that the statute of limitations should not begin to run until the conclusion of the reexamination proceedings in 2007 is also unpersuasive.  The reexaminations themselves are separate proceedings independently conducted by the PTO without the involvement or participation of Defendants.  Thus, although Defendants were responsible for initiating the request for reexamination of the '319 Patent and '915 Patent, Defendants involvement terminated when the PTO independently decided to grant those requests and reexamine the patents.  Moreover, Plaintiffs themselves admit that they were immediately harmed by the PTO's decision to grant the reexamination requests.  Specifically, Plaintiffs allege that as soon as the PTO granted the reexamination requests, they sustained damage to their business reputation, and incurred expenses and attorneys' fees in defending their patents in the reexamination proceedings.  In addition, Plaintiffs admit that the PTO's decision to reexamine the '319 Patent and '915 Patent created a cloud over the validity of their patents, which substantially interfered with their ability to continue their patent enforcement program.  *See,* Complaint, ¶¶ 27, 70, 96-99.  Therefore, the statute of limitations began to run on Plaintiffs' malicious prosecution claim in July 2003, and, thus, that claim is time-barred.

### 3. Plaintiffs' malicious prosecution claim cannot survive the independent investigation doctrine.

Moreover, Plaintiffs' malicious prosecution claim also must be dismissed because of the independent investigation doctrine.  A party may not sue for malicious prosecution where the proceeding at issue was initiated after an independent investigation of the defendant's charges by the responsible authorities.  *See, Werner v. Hearst Publ., Inc.*, 65 Cal. App. 2d 667, 672 (1944) (affirming dismissal of malicious prosecution claim on demurrer where plaintiff had claimed that defendants, without probable cause and with malice, instigated disbarment proceedings against him before the State Bar by sending a letter to its special investigator because there was no allegation that the State Bar had not performed the prescribed independent investigation). Moreover, "[a]bsent an allegation in [the] complaint that an investigation did not in fact occur, we must presume as did *Werner*, that one did occur."  *Stanwyck v. Horne*, 146 Cal. App. 3d 450, 459 (1983).  In this case, Plaintiffs allege only that "[i]n reliance on the deceptive mischaracterization of alleged pieces of prior art submitted by Defendants in their Fraudulent Requests for reexamination, the USPTO did grant the Requests."  Complaint, ¶ 30.  As in *Werner*, these allegations are insufficient to establish that the PTO did not rely on its own independent investigation in deciding to institute the formal reexamination proceedings.  *Werner*, 65 Cal. App. 2d at 672.  In their

Opposition, Plaintiffs argue that "no independent investigation . . . was conducted during the initial review of the Fraudulent Requests." Opposition, p. 6. However, Plaintiffs have not and cannot allege any facts to support this argument because PTO rules bar patent examiners from discussing the review process. MPEP § 1701.01. Instead, Plaintiffs simply speculate that an independent investigation must not have been conducted because the PTO apparently merely relied on Defendants' duty of candor. However, such speculation is insufficient under *Werner* and *Twombly*. *See, Twombly,* 550 U.S. 544 (2007) (holding that factual allegations must rise above the speculative level).

Accordingly, for all the foregoing reasons, Plaintiff's malicious prosecution claim is **DISMISSED without leave to amend**.

### C. Plaintiffs' Interference with Prospective Economic Advantage Claim Must Be Dismissed.

#### 1. Plaintiffs' interference with prospective economic advantage claim is barred by the statute of limitations.

Plaintiffs' interference with prospective economic advantage claim must be dismissed because it is time-barred by the two-year statute of limitations. Cal. Code Civ. Proc. § 339(1); *see, also, Knoell v. Petrovich*, 76 Cal. App. 4th 164, 168 (1999). As with Plaintiff's malicious prosecution claim, the statute of limitations begins to run upon the occurrence of the last element essential to the claim, which, in this case, occurred in July 2003 when the reexamination requests were granted. *See, Sole Energy Co., v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 241 (2005). Plaintiffs allege that they suffered economic harm when their patent enforcement program, which began in 2002, was purportedly interfered with in July 2003 when the PTO granted the reexamination requests. *See,* Complaint, ¶¶ 27, 70, 96-99. Plaintiffs argue that their interference with prospective economic advantage claim did not accrue until the reexamination proceedings ended on July 17, 2007. However, once the reexamination requests were granted, Defendants had no right to participate and did not participate in the reexamination process. *See,* 37 C.F.R. § 1.550(g). Therefore, as discussed with respect to Plaintiffs' malicious prosecution claims, Plaintiffs' attempts to toll the statute of limitations are unpersuasive.

#### 2. Plaintiffs' interference with prospective economic advantage claim is subject to absolute immunity under California Civil Code, section 47(b).

In addition, even if Plaintiffs' interference with prospective economic advantage claim is not barred by the statute of limitations, it must be dismissed because California Civil Code, section 47(b) provides immunity for Defendants' actions. *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1140 (1996) (holding that only malicious prosecution claims are exempt from section 47(b)); *see, also, Picton v. Anderson Union High School District*, 50 Cal. App. 4th 726, 737 (1996) ("The phrase 'in any other official proceeding authorized by law' embraced in section 47, subdivision 2 [now section 47(b)] has been interpreted to encompass those proceedings which resemble judicial and legislative proceedings, such as transactions of administrative boards and quasi-judicial and quasi-legislative proceedings."). As the California Supreme Court recently explained, "[t]he usual formulation is that the [litigation] privilege applies to any communication (1) made in judicial or

quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006).

In this case, the litigation privilege clearly applies to Defendants' requests for reexamination of the '319 Patent and '915 Patent.  First, the reexamination proceedings in the PTO are quasi-judicial proceedings because patent examiners have been found to be quasi-judicial officials that exercise quasi-judicial functions in their decisions regarding patentability.  *See, e.g., United States v. American Bell Tel. Co.,* 128 U.S. 315, 363 (1888) ("The patent . . . is the result of a course of proceeding, *quasi* judicial in its character."); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 986 (Fed. Cir. 1995) ("Patent applications, unlike contracts, are reviewed by patent examiners, quasi-judicial officials trained in the law and presumed to have some expertise in interpreting the [prior art] reference . . .") (internal quotation omitted).  Second, Defendants were authorized by law to file the reexamination requests, because Section 302 of the Patent Act allows "[a]ny person at any time" to file a reexamination request.  Third, Defendants filed the requests for reexamination to achieve the object of having the '319 Patent and '915 Patent reexamined, and that reexamination was also important to Defendants' defense of their clients in the patent litigation brought by Plaintiffs.  Fourth, the reexamination request was logically related to both Defendants' objectives of having the '319 Patent and '915 Patent reexamined and defending their clients in the patent litigation.[6]  Therefore, because all four factors of the litigation privilege are met, Defendants' filing of the reexamination requests is absolutely privileged.

### 3.  Plaintiffs' interference with prospective economic advantage claim fails to state a claim upon which relief can be given.

Moreover, even if Plaintiffs' interference with prospective economic advantage claim was not time-barred by the statute of limitations and subject to the litigation privilege, Plaintiffs would still not be able to state a claim for interference with prospective economic advantage.  In *Pacific Gas*, the court found that "the only common law tort claim that treats the instigation or bringing of a lawsuit as an actionable injury is the action of malicious prosecution.  *Pacific Gas & Electric Co., v. Bear Stearns*, 50 Cal. 3d 1118, 1131 (1990).  The court went on to recognize that "[o]ther jurisdictions have perceived the same danger in allowing a petition for judicial or administrative relief to be the basis for a claim of interference with contract or prospective economic advantage." *Id.*  Therefore, in this case, Plaintiffs are limited to, at most, a malicious prosecution claim, and cannot attempt to transform a malicious prosecution claim into an interference with prospective economic advantage claim.

Accordingly, for all the foregoing reasons, Plaintiffs' claim for interference with prospective

---

[6] Plaintiffs argument that "federal courts do not apply state court privileges" is simply incorrect.  *See, e.g., Dealtrack, Inc., v. Huber*, 460 F.Supp. 2d 1177, 1181 (C.D. Cal. 2006) (striking libel claim because statement was protected by litigation privilege); *Visto Corp., v. Sproqit Techs., Inc.*, 360 F.Supp. 2d 1064, 1069 (N.D. Cal. 2005) (finding that litigation privilege could apply to counterclaims for interference with prospective economic advantage and defamation).

economic advantage is **DISMISSED without leave to amend**.

### D. Plaintiffs' Fraud Claim Must Be Dismissed.

#### 1. Plaintiffs' fraud claim is preempted.

Plaintiffs' fraud claim must be dismissed because it is preempted by federal law. For the same reasons discussed above with respect to Plaintiffs' malicious prosecution claim, federal patent law preempts Plaintiffs' fraud claim based on Defendants' filing reexamination requests before the PTO because such claims are "no more than [claims alleging] bad faith misconduct before the PTO." *Dow*, 139 F.3d at 1477.

#### 2. Plaintiffs' fraud claim is barred by the statute of limitations.

In addition, even if Plaintiffs' fraud claim is not preempted, Plaintiffs' fraud claim must be dismissed because it is time-barred by the three year statute of limitations. Cal. Code Civ. Proc. § 338(d); *E-Fab, Inc., v. Accountants, Inc. Servs.,* 153 Cal. App. 4th 1308, 1316 (2007) ("A cause of action for fraud or mistake is governed by a three-year statute of limitations."). "The elements of fraud, which give rise to the tort action for deceit, are (1) misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." *Conroy v. Regents of Univ. Of Cal.*, 45 Cal. 4th 1244, 1255 (2009). According to Plaintiffs' Complaint, the first three of these elements occurred on May 5, 2003, when Defendants' filed the reexamination requests. The last two elements occurred in July 2003, when the PTO granted the reexamination requests. Therefore, Plaintiffs' fraud cause of action accrued more than three years before the filing of their Complaint in this action. In addition, Plaintiffs' argument that the statute of limitations should be tolled because the fraud was concealed is not persuasive. As discussed above, Plaintiffs were provided with copies of Defendants' filings with the PTO and the federal district court for the Southern District of California, as well as the PTO's Notices and the federal district court's orders. Thus, any delay in discovering the fraud was solely the result of Plaintiffs' own negligence, which is not a basis for tolling the statute of limitations.

#### 3. Plaintiffs' fraud claim is subject to absolute immunity under California Civil Code, section 47(b).

Moreover, even if Plaintiffs' fraud claim is not preempted or barred by the statute of limitations, Plaintiffs' fraud claim must be dismissed because the California litigation privilege provides immunity. For the same reasons discussed above with respect to Plaintiffs' interference with prospective economic advantage claim, Section 47(b) of the California Civil Code applies and gives absolute immunity to Defendants' filing of the reexamination requests.

Accordingly, for all the foregoing reasons, Plaintiffs' fraud claim must be **DISMISSED without leave to amend**.

### IV. Conclusion

      For all the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED without leave to amend**. Accordingly, Plaintiffs' action is **DISMISSED with prejudice**. Defendants' Motion to Strike is **DENIED as moot**.

      IT IS SO ORDERED.